UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROOSEVELT ROAD RE, LTD., et al.,

             Plaintiffs,

     - against -

WILLIAM SCHWITZER & ASSOCIATES, P.C., et
al.,

             Defendants.
-------------------------------------------------------------------X

Case No. 25-CV-03386-BMC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT



RUSKINMOSCOUFALTISCHEK P.C.
*Counselors at Law*

East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556
(516) 663-6600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

PART I: JOINT BRIEF ................................................................................................. 1

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

    A.  The First Amended Complaint ........................................................................ 3

    B.  Procedural History ......................................................................................... 6

ARGUMENT ................................................................................................................ 7

POINT I       PLAINTIFFS LACK STANDING UNDER THE RICO
               STATUTE ............................................................................................... 7

    A.  Plaintiffs Cannot Establish Standing Based on Their "Primary Insurer"
        Argument ..................................................................................................... 14

    B.  The Issue Preclusion Doctrine Bars Plaintiffs from Pursuing Their
        RICO Claims ............................................................................................... 18

POINT II      PLAINTIFFS FAIL TO STATE A RICO CLAIM ......................................... 20

    A.  Plaintiffs Fail to Sufficiently Allege the Defendants Engaged in
        Predicate Acts of Racketeering Activity ........................................................ 20

        1.  Plaintiffs Fail to Allege, with the Heightened Particularity
            Required by Rule 9(b), that the Defendants Engaged in Mail or
            Wire Fraud .......................................................................................... 21

        2.  Plaintiffs Fail to Allege that the Defendants Engaged in
            Bribery ................................................................................................ 26

        3.  Plaintiffs Fail to Allege that the Defendants Violated the Travel
            Act ....................................................................................................... 27

    B.  Plaintiffs Fail to Allege a Pattern of Racketeering Activity .......................... 28

        1.  Plaintiffs Fail to Adequately Plead "Relatedness" ............................... 28

            a.  The Alleged Predicate Acts Are Not Horizontally
               Related ......................................................................................... 29

i

          b.   The Alleged Predicate Acts Are Not Vertically Related ....................................................................31

     2.  Plaintiffs Fail to Adequately Plead "Continuity"...............................................31

          a.   Plaintiffs Fail to Plead Open-Ended Continuity ..............................32

          b.   Plaintiffs Fail to Plead Closed-Ended Continuity............................33

  C.  Plaintiffs Do Not Plausibly Allege a RICO Enterprise....................................35

     1.  Plaintiffs Fail to Allege a Common Purpose ....................................35

     2.  Plaintiffs Fail to Plead that Defendants Operated as a Continuing Unit ..............................................................................37

     3.  Plaintiffs Fail to Allege an Enterprise Separate and Apart from the Pattern of Racketeering Activity................................40

  D.  Plaintiffs Fail to Allege a RICO Conspiracy ..................................................41

  E.  Plaintiffs' RICO Claims are Barred by the Statute of Limitations ..............................42

**POINT III**   **THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF**....................................................44

**POINT IV**   **THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**....................................................46

**POINT V**   **PLAINTIFFS' STATE LAW CLAIMS MUST FAIL**......................................47

  A.  Plaintiffs Fail to Plead the Requisite Elements of Common Law Fraud ...................47

  B.  Plaintiffs Fail to Allege a Cognizable GBL 349 Claim ................................49

  C.  The Unjust Enrichment Claim Must be Dismissed.......................................51

**POINT VI**   **THE McCARRAN-FERGUSON ACT REQUIRES DISMISSAL OF ALL RICO COUNTS**....................................................52

**POINT VII**   **THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION BASED ON THE *BURFORD* DOCTRINE**........................59

**CONCLUSION** ....................................................................60

**WORD COUNT CERTIFICATION**................................................................63

**PART II:      INDIVIDUAL DEFENDANTS' SUPPLEMENTAL
             ARGUMENTS**................................................................64

INDIVIDUAL SECTION I – THE KOLB DEFENDANTS................................64

INDIVIDUAL SECTION II – THE NYC MNO DEFENDANTS ....................71

INDIVIDUAL SECTION III – KATZMAN ORTHO ..........................................78

INDIVIDUAL SECTION IV – THE PAIN DEFENDANTS ..............................84

INDIVIDUAL SECTION V – THE SCHWITZER
DEFENDANTS ................................................................91

INDIVIDUAL SECTION VI – THE McCULLOCH
DEFENDANTS ................................................................97

INDIVIDUAL SECTION VII – THE NYSI DEFENDANTS ...........................104

INDIVIDUAL SECTION VIII – THE INTERVENTIONAL
DEFENDANTS ................................................................111

INDIVIDUAL SECTION IX – THE TOTAL ORTHO
DEFENDANTS ................................................................117

INDIVIDUAL SECTION X – THE PERSICH DEFENDANTS.......................124

**WORD COUNT CERTIFICATION**................................................................130

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Abbott Lab'ys v. Adelphia Supply USA*,
No. 15-CV-5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...................................... 64, 65, 120

*Agency Holding Corp. v. Malley-Duff & Associates. Inc.*,
483 U.S. 143 (1987) ................................................................................................... 18, 19, 42

*Aghaeepour v. Northern Leasing Sys., Inc.*,
763 F. Supp. 3d 580 (S.D.N.Y. 2025) ................................................................................. 41

*Alliance Network, LLC v. Sidley Austin LLP*,
987 N.Y.S. 2d 794 (Sup. Ct., N.Y. Cnty. 2014) .................................................................. 49

*Allstate Ins. Co. v. Advanced Health Pros., P.C.*,
256 F.R.D. 49 (D. Conn. 2008)...................................................................................... *passim*

*Allstate Ins. Co. v. Donovan*,
No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012) .................................... 21, 81, 88

*Allstate Ins. Co. v. Passaro-Henry*,
660 F. Supp. 2d 317 (D. Conn. 2009)....................................................................... 67, 92, 101

*Am. Disposal Servs., Inc. v. O'Brien*,
839 F.2d 84 (2d Cir.1988)..................................................................................................... 59

*Anctil v. Ally Fin., Inc.*,
998 F. Supp. 2d 127 (S.D.N.Y. 2014)................................................................................... 36

*Anderson v. Nat'l Grid, PLC*,
93 F. Supp. 3d 120 (E.D.N.Y. 2015) .................................................................................... 46

*Anguisaca-Morales v. St. Paul & St. Andrew United Methodist Church*,
238 A.D.3d 439 (1st Dep't 2025)........................................................................................... 94

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)............................................................................................... 10, 13, 125

*Bandler v. Town of Woodstock*,
832 F. App'x 733 (2d Cir. 2020) .......................................................................................... 12

*Bankers Tr. Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988)................................................................................................ 10

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
   57 F.3d 146 (2d Cir. 1995) ........................................................................... 48

*BAT, LLC v. TD Bank, N.A.*,
   No. 15-CV-5839 (RRM) (CLP), 2018 WL 4693644 (E.D.N.Y. Sept. 28, 2018) ................... 17

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
   667 F. Supp. 3d 83 (S.D.N.Y. 2023) ................................................................. 33

*Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*,
   No. 23-CV-03842 (JMA) (ST), 2025 WL 458224 (E.D.N.Y. Feb. 11, 2025) ................. *passim*

*Benedict v. Amaducci*,
   No. 92-CV-5239 (KMW), 1995 WL 413206 (S.D.N.Y. July 12, 1995) ................................ 26

*Benetech, Inc. v. Omni Fin. Group, Inc.*,
   116 A.D.3d 1190 (3d Dep't 2014) ..................................................................... 50

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006) .......................................................................... 51

*Bethpage Lutheran Serv., Inc. v. Weicker*,
   965 F.2d 1239 (2d Cir. 1992) ......................................................................... 59

*Black Radio Network, Inc. v. NYNEX Corp.*,
   44 F. Supp. 2d 565 (S.D.N.Y. 1999) ................................................................. 40

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022) ......................................................... *passim*

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   3 N.Y.3d 200 (2004) ................................................................................. 109

*Botwinick v. Ogden*,
   59 N.Y.2d 909 (1983) ................................................................................. 55

*Boyle v. U.S.*,
   556 U.S. 938 (2009) ........................................................................... 35, 72, 98

*Breton v. Dishi*,
   234 A.D.3d 432 (1st Dep't 2025) .................................................................. 94, 95

*Broughton v. 553 Marcy Avenue Owners, LLC*,
   238 A.D.3d 536 ........................................................................................ 94

v

*Brownback v. King*,
   592 U.S. 209 (2021) ................................................................................... 19

*Bryant v. Silverman*,
   284 F. Supp. 3d 458 (S.D.N.Y. 2018) ....................................................... 25

*Buechel v. Bain*,
   97 N.Y.2d 295 (2001) ....................................................................... 112, 113

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ................................................................................... 59

*Burke v. Dowling*,
   944 F. Supp. 1036 (E.D.N.Y. 1995) ......................................................... 41

*Burlew v. American Mut. Ins. Co.*,
   63 N.Y.2d 412 (1984) ................................................................................ 56

*Burton v. Wells Fargo Bank, N.A.*,
   738 F. Supp. 3d 272 (E.D.N.Y. 2024) ............................................. 113, 114

*Bustamante v. KIND, LLC*,
   100 F.4th 419 (2d Cir. 2024) .................................................................... 50

*Butcher v. Wendt*,
   975 F.3d 236 (2d Cir. 2020) .................................................................... 127

*Campos v. Lavinsky*,
   2022 WL 16950054 (E.D.N.Y. Nov. 14, 2022) ....................................... 77

*Cao v. Flushing Paris Wedding Ctr. LLC*,
   No. 20-CV-2336 (RPK) (RLM), 2022 WL 219565 (E.D.N.Y. Jan. 25, 2022) ...................... 35

*Capasso v. CIGNA Ins. Co.*,
   765 F. Supp. 839 (S.D.N.Y. 1991) ........................................................... 12

*Caronia v. American Reliable Ins. Co.*,
   999 F. Supp. 299 (E.D.N.Y. 1999) ........................................................... 15

*Carroll v. U.S. Equities Corp.*,
   No. 118-CV-667 (TJM) (CFH), 2019 WL 4643786 (N.D.N.Y. Sept. 24, 2019) ................... 114

*Cedar Swamp Holdings*,
   487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) .............................................. 39

*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*,
    148 F.3d 194 (2d Cir. 1998) ................................................................. 103

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
    56 F.3d 359 (2d Cir. 1995) ..................................................................... 19

*Century Prop. & Cas. Ins. Corp. v. McManus & Richter, P.C*,
    226 A.D.3d 1 (1st Dep't 2024) .......................................................... 18, 19

*Charles Schwab & Co. v. Retrophin, Inc.*,
    14-CV-4294 (ER), 2015 WL 5729498 (S.D.N.Y. Sept. 30, 2015) ....................................... 109

*Chester Park View, LLC v. Schlesinger*,
    No. 23-CV-5432 (CS), 2024 WL 278514 (S.D.N.Y. May 29, 2024) ....................................... 34

*City of N.Y. v. Chavez*,
    944 F. Supp. 2d 260 (E.D.N.Y. 2013) .................................................... 39

*City of New York v. Cyco.Net, Inc.*,
    383 F. Supp. 2d 526 (S.D.N.Y. 2005) ................................................. 119

*City of New York v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) ................................................................. 103

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229 (2d Cir. 1999) .......................................................... 33, 105

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ................................................................... 42

*Colony at Holbrook, Inc. v. Strata G.C., Inc.*,
    928 F. Supp. 1224 (E.D.N.Y. 1996) ..................................................... 115

*Com–Tech Assocs. v. Comput. Assocs. Int'l Inc.*,
    753 F. Supp. 1078 (E.D.N.Y. 1990) ............................................... *passim*

*Contract Transp. Svcs., Inc. v. New Era Landing LLC*,
    No. 17-CV-8224, 2018 WL 11226077 (S.D.N.Y. Oct. 26, 2018) ................................... *passim*

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,
    442 F.3d 767 (2d Cir. 2006) ................................................................... 45

*Corsello v. Verizon New York, Inc.*,
    18 N.Y. 3d 777 (2012) ................................................................ 52, 108

*CP III Rincon Towers, LLC v. Cohen*,
No. 10-CV-4638 (JMF), 2021 WL 5771878 (S.D.N.Y. Dec. 6, 2021) ................................ 113

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
418 F. Supp. 2d 193 (E.D.N.Y. 2006) ................................................................. 128

*Crawford v. Franklin Credit Mgmt. Corp.*,
758 F.3d 473 (2d Cir. 2014) ........................................................................ *passim*

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ......................................................... 21, 114

*Curtis v. Greenberg*,
2023 WL 6324324 (2d Cir. 2023) ................................................................... 126

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) ............................................................................ 126

*De Falco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ......................................................................... *passim*

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......................................................................... 125

*Dodds v. Cigna Secs., Inc.*,
12 F.3d 346 (2d Cir. 1993) ................................................................... 42, 43, 44

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) ............................................................................ 45

*Dumervil v. Port Auth. of N.Y. & N.J.*,
163 A.D.3d 628 (2d Dep't 2018) ...................................................................... 55

*Dynarex Corp. v. Farah*,
No. 18-CV-7072, 2019 WL2269838 (S.D.N.Y. May 28, 2019) ............................... 128

*Eastman Kodak Co. v. Blackmore*,
277 F. 694 (2d Cir. 1921) ............................................................................... 17

*Edmonson v. Ranier*,
751 F. Supp. 3d 136 (E.D.N.Y. 2024) ............................................................. 125

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
223 F.3d 12 (1st Cir. 2000) ............................................................................. 21

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010) ................................................ 72

*Empire Ins. Co. v. Workers' Comp. Bd*,
    607 N.Y.S. 2d 675 (1st Dep't 1994) .................................................. 54

*Empire Merchs., LLC v. Reliable Churchill,
    LLP*, 902 F.3d 132 (2d Cir. 2018) .................................................... 13

*Equinox Gallery Ltd. v. Dorfman*,
    306 F. Supp. 3d 560 (S.D.N.Y. 2018) ................................................ 34

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004) ............................................................... 49

*Farag v XYZ Two Way Radio Serv., Inc.*,
    No. 22-1795, 2023 WL 2770219, at *1-3 (2d Cir. Apr. 4, 2023) .......... 128

*Fidelity Bank Nat'l Ass'n. v. Avrutick*,
    740 F. Supp. 222 (S.D.N.Y. 1990) ..................................................... 17

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015) ............................................................. 107

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ....................................................... *passim*

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ...................................................... 104, 126

*First Nationwide Bank v. Gelt Funding Corp.*,
    820 F. Supp. 89 (S.D.N.Y. 1993) ...................................................... 39

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................ 41

*Fossil Grp., Inc. v. Angel Seller LLC*,
    627 F. Supp. 3d 180 (E.D.N.Y. 2022) .............................................. 128

*Franklin D. Nastasi Trust v. Bloomberg, L.P.*,
    224 A.D.3d 804 (2d Dep't 2024) ....................................................... 95

*Friedman v. Ariz. World Nurseries Ltd. P'ship*,
    730 F. Supp. 521 (S.D.N.Y. 1990) .............................................. 25, 120

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    640 F. Supp. 2d 300 (S.D.N.Y. 2009) ............................................................... 26, 27

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    96 N.Y.2d 201 (2001) .............................................................................. 49, 84, 117

*Gibbs & Sterrett Mfg. Co. v. Brucker*,
    111 U.S. 597 (1884) ....................................................................................... 17, 112

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
    67 F.3d 463 (2d Cir.1995) ............................................................................... 31, 34

*Goldberg v. KSDL Building Group, LLC*,
    236 A.D.3d 995 (2d Dep't 2025) ............................................................................ 95

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 ................................................................................................ 40

*Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab*,
    2020 WL 7042648 (E.D.N.Y. Dec. 1, 2020) ......................................................... 23

*Grace Int'l Assembly of God v. Festa*,
    797 F. App'x 603 (2d Cir. 2019) ............................................................... 21, 32, 69

*Gutterman v. Herzog*,
    No. 20-CV-1081, 2020 WL 6728787 (E.D.N.Y. Nov. 16, 2020) ......................... 128

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ............................................................................... 28, 29, 105

*Hagigi v. Yukhananov*,
    2024 WL 4028333 (E.D.N.Y. Sept. 3, 2024) ...................................................... 106

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993) ............................................................................................... 13

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997*)* ...................................................................... 98

*Hecht v. Com. Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990) ............................................................................ *passim*

*Heisler v. Advanced Dermatology of N.Y., P.C.*,
    No. 805326/2017, 2023 WL 1795729 (Sup. Ct., N.Y. Cnty. 2023) ....................... 51

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ................................................................................................ *passim*

*Himmelstein, McConnell, Gribben, Donohue & Joseph, LLP v. Matthew Bender & Co.*,
    37 N.Y.3d 169 (2021) ........................................................................... 50, 51, 109

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    331 F.Supp. 3d 130 (S.D.N.Y. 2018) ................................................................ 34

*Hollander v. Flash Dancers Topless Club*,
    173 F. App'x 15 (2d Cir. 2006) ......................................................................... 8

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ................................................................................. *passim*

*Humana Inc. v. Forsyth*,
    525 U.S. 299 (1999) ........................................................................... 53, 54, 55

*In re Am. Express Co. S'holder Litig.*,
    39 F.3d 395 (2d Cir. 1994) ................................................................................ 8

*In re AOL Time Warner Sec. & ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................. 14

*In re Blech Sec. Litig.*,
    928 F. Supp. 1279 (S.D.N.Y. 1996) ................................................................ 21

*In re Colonial Realty Co.*,
    209 B.R. 819 (Bankr. D. Conn. 1997) ..................................................... 17, 112

*In re Integrated Res., Inc. v. Integrated Res. Equity Corp.*,
    851 F. Supp. 556 (S.D.N.Y. 1994) .................................................................. 43

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) .............................................................................. 42

*In re Shanda Games Ltd. Sec. Litig.*,
    128 F.4th 26 (2d Cir. 2025) ................................................................ 22, 79, 86

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ............................................................. 9, 10

*In re Trilegiant Corp., Inc.*,
    11 F. Supp. 3d 82 (D. Conn. 2014) ......................................................... 83, 90, 123

*ITG Brands, LLC v. Yellowstone Cap., LLC*,
    No. 2024 WL 4008230 (S.D.N.Y. Aug. 29, 2924) ................................................... 82, 89, 122

*J.T. v. de Blasio*,
    500 F. Supp. 3d 137 (S.D.N.Y. 2020) ....................................................................... 8

*JGIAP RH 160 LLC v. CRI Holding Corp.*,
    No. 21-CV-02489 (DG) (JRC), 2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023) ..................... 41

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
    30 F. Supp. 2d 626 (S.D.N.Y. 1998) ......................................................................... 72

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013) ....................................................................... 115

*Karlin v. IVF Am. Inc.*,
    93 N.Y.2d 282 (1999) .......................................................................................... 51, 109

*Katsorhis v. 718 West Beech Street, LLC*,
    234 A.D.3d 744 (2d Dep't 2025) .............................................................................. 95

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) .................................................................................... 105

*Kinsella v. Bureau of Ocean Energy Mgmt.*,
    No. 23-CV-2915, 2024 WL 4266278 (E.D.N.Y. Sept. 23, 2024) ..................................... 70

*Kirkup v. American Int'l Adjustment Co.*,
    160 A.D.2d 676 (2d Dep't 1990) .............................................................................. 56

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012) .................................................................................. 42, 117

*Koch v. Rodenstock*,
    No. 06-CV-6586 (BSJ) (DF), 2012 WL 5844187 (S.D.N.Y. May 9, 2012) ...................... 45, 109

*Kolari v. New York-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006) .................................................................................. 46

*Kriss v. Bayrock Grp. LLC*,
    No. 10-CV-3959, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ....................................... 98

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999) .................................................................................. 10

*Lopez v. Micalizzi*,
    232 A.D.3d 779 (2d Dep't 2024) ........................................................................... 65

*Lorber v. Winston*,
    962 F. Supp. 2d 419 (E.D.N.Y. 2013) .................................................................... 43

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 14

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ........................................................................ 105, 126

*Macari Park S. Assocs. v. Fischbein*,
    626 F. Supp. 1108 (S.D.N.Y. 1986) ...................................................................... 26

*Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*,
    No. 13-CV-291 (CM), 2014 WL 3728591 (S.D.N.Y. July 28, 2014) ..................... 77

*Makhnevitch v. Board of Mgrs.*,
    217 A.D.3d 630 (1st Dep't 2023) .......................................................................... 95

*Malek v. AXA Equitable Life Ins. Co.*,
    No. 20-CV-04885 (DG) (AYS), 2023 WL 2682408 (E.D.N.Y. Mar. 29, 2023) ............. 37, 105

*Mann v. Okere*,
    195 A.D.3d 910 (2d Dep't 2021) ........................................................................... 65

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 430 (S.D.N.Y. 2015) .................................................................. 107

*Matter of Kigin v. State of N.Y. Workers' Compensation Bd.*,
    24 N.Y.3d 459 (2014) ........................................................................................... 55

*McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-392(FB)(CLP),
    2009 WL 2132439(E.D.N.Y. Jul. 10, 2009) ........................................................ 127

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ................................................................................ 104

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992) .................................................................................. 21

*Med. Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025) ......................................................................................... 7, 125

*Merrill Lynch*,
154 F.3d 56 (2d Cir. 1998)................................................................. 47

*Mid Atl. Framing, LLC v. Varish Const., Inc.*,
117 F. Supp. 3d 145 (N.D.N.Y. 2015) ............................................... 48

*MinedMap, Inc. v. Northway Mining, LLC*,
No. 21-1480-CV, 2022 WL 570082 (2d Cir. Feb. 25, 2022) ................ 21

*Morson v. Kreindler & Kreindler, LLP*,
814 F. Supp. 2d 220 (E.D.N.Y. 2011) ............................................... 49

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) ......................................... *passim*

*Nadler v. Samadi*,
188 A.D.3d 537 (1st Dep't 2020) ............................................. 51, 109

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
710 F.3d 71 (2d Cir. 2013)................................................................. 12

*Nathel v. Siegal*,
592 F. Supp. 2d 452 (S.D.N.Y. 2008)................................................ 43

*Nat'l Union Fire Ins. Co. v. Archway Ins.*,
2012 U.S. Dist. LEXIS 48735 (S.D.N.Y. Mar. 23, 2012) ................... 107

*Nat'l Union Fire Ins. Co. v. Seneca Family of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017)................................................ 57

*Negrete v. Citibank, N.A.*,
187 F. Supp. 3d 454 (S.D.N.Y. 2016).......................................... 25, 120

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) .......................................... 77, 95

*New York v. Smokes-Spirits.com, Inc.*,
12 N.Y.3d 616 (2009) ..................................................................... 109

*Nygård v. Bacon*,
No. 19-CV-1559, 2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021)............ 13

*O'Brien v. Nat'l Prop. Analysts Partners*,
936 F.2d 674 (2d Cir. 1991).............................................................. 22

*One World, LLC v. Onoufriadis*,
   No. 21-374-cv, 2021 WL 4452070 (2d Cir. Sep. 29, 2021) .................................................. 33

*Oneida Indian Nation of N.Y. v. Madison County*,
   665 F.3d 408 (2d Cir. 2021)............................................................................................ 96

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ............................................................................................... 76, 95

*Pasternack v. Laboratory Corp. of Am. Holdings*,
   27 N.Y.3d 817 (2016) ..................................................................................................... 48

*People v. British & Am. Casualty Co.*,
   133 Misc. 2d 352 (Sup. Ct., N.Y. Cnty. 1986) ......................................................... 16

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   No. 19-CV-1861 (MKB) (RML), 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021)............. 37, 105

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ......................................... 11

*Poindexter v. Cash Money Recs*,
   No. 13-CV-1155, 2014 WL 818955 (S.D.N.Y. Mar. 3, 2014) ................................. 20

*Pope v. Saget*,
   29 A.D.3d 437 (1st Dep't 2006) ................................................................................ 48

*Puchtler v. Barclays PLC*,
   25-CV-1872 (LJL), 2025 WL 887502 (S.D.N.Y. Mar. 21, 2025)........................... 70

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ...................................................... 28, 29, 74

*Rao v. B P. Prods. N. Am., Inc.*,
   589 F.3d 389 (7th Cir. 2009) ...................................................................................... 38

*Red Mt. Med. Holdings, Inc. v. Brill*,
   563 F. Supp. 3d 159 (S.D.N.Y. 2021).................................................................... 49

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017)................................................................................ *passim*

*Reliance Ins. Co. v. Aerodyne Engineers, Inc.*,
   204 A.D.2d 944 (3d Dep't 1994) ............................................................................. 20

*Republic of Colombia v. Diageo N. Am. Inc.*,
   531 F. Supp. 2d 365 (E.D.N.Y. 2007) ................................................. 27

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ........................................................... 64, 72, 73

*Roberto's Fruit Mkt., Inc. v. Schaffer*,
   13 F. Supp. 2d 390 (E.D.N.Y. 1998) ................................................. 27

*Roosevelt Rd. Re, Ltd. v. Subin*,
   No. 24-CV-05033 (HG), 2025 WL 1713109 (E.D.N.Y. June 19, 2025) ........................ *passim*

*Rosenshein v. Meshel*,
   688 F. App'x 60 (2d Cir. 2017) ................................................. 42

*Rosenson v. Mordowitz*,
   No. 11-CV-6145 (JPO), 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) ................................ 31

*Roumi v. Guardian Life Ins. Co.*,
   191 A.D.3d 911 (2d Dep't 2021) ................................................. 95

*Sabo v. Met. Life Ins. Co.*,
   137 F.3d 185 (3d Cir. 1998) ................................................. 57

*Sammy v. Haupel*,
   170 A.D.3d 1224 (2d Dep't 2019) ................................................. 94

*Santana v. Adler*,
   No. 17-CV-06147, 2018 WL 2172699 (S.D.N.Y. Mar. 26, 2018) ................................ 128

*Sayles v. Ferone*,
   137 A.D.3d 486 (1st Dep't 2016) ................................................. 108

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) ................................................. 29, 32

*Seaz v. Excellent Bus Service, Inc.*,
   No. 21-CV-6967, 2025 WL 990247 (E.D.N.Y. 2025) ................................ 94

*Sehgal v. Aggarwal*,
   No. 20-CV-4577, 2021 WL 3617479 (E.D.N.Y. Aug. 18, 2021) ................................ 129

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
   17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................. 24

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................. 124

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ......................................................... *passim*

*Star Ins. Co. v. At-Saf, Inc.*,
    No. 22-CV-7968 (EK) (TAM), 2024 WL 4333842 (E.D.N.Y. 2024) .................... 20

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009) ............................................. 23

*State Farm Mut. Auto Ins. Co. v. Malella*,
    175 F. Supp. 2d 401 (E.D.N.Y. 2001) ............................................. 95

*State Farm Mut. Ins. Co. v. Metro Pain Specialists, P.C.*,
    2025 WL 1166982 (E.D.N.Y. 2025) ................................................. 95

*Stephens v. American International Insurance Co.*,
    66 F.3d 41 (2d Cir. 1995) ........................................................... 57

*Stochastic Decisions v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993) ....................................................... 13

*Superb Motors Inc. v. Deo*,
    776 F. Supp. 3d 21 (E.D.N.Y. 2025) .............................................. 73

*Surowitz v. N.Y.C Emp. Ret. Sys.*,
    376 F. Supp. 369 (S.D.N.Y. 1974) ................................................. 59

*Tang Cap. Partners, LP v. BRC Inc.*,
    661 F. Supp. 3d 48 (S.D.N.Y. 2023) .............................................. 45

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................... 22

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020) .................................................................. 124

*Trump v. Simon & Schuster, Inc.*,
    791 F. Supp. 3d 470 (S.D.N.Y. 2025) ........................................... 112

*U.N.F. Servs. v. Ins. Co. of N. Am.*,
    236 A.D.2d 388 (2d Dep't 1997) .................................................. 15

*U.S. v. Burden*,
   600 F.3d 204 (2d Cir. 2010)................................................................. 31

*U.S. v. Coppola*,
   671 F.3d 220 (2d Cir. 2012)................................................................. 29

*U.S. v. Indelicato*,
   865 F.2d 1370 (2d Cir. 1989)............................................................... 28

*U.S. v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................. 39

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
   79 N.Y.2d 576 (N.Y. 1992) ................................................................. 12

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)............................................................................ 46

*United States v. Dinome*,
   86 F.3d 277 (2d Cir. 1996)................................................ 119, 120, 121

*United States v. McKesson Corp.*,
   2024 WL 4635494 (S.D.N.Y. 2024)..................................................... 96

*United States v. Muni*,
   668 F.2d 87 (2d Cir. 1981)................................................................ 114

*United States v. Prevezon Holdings LTD.*,
   122 F. Supp. 3d 57 (S.D.N.Y. 2015)................................................. 114

*United States v. Strock*,
   982 F.3d 51 (2d Cir. 2020)........................................................ *passim*

*United States v. Walker*,
   239 F. Supp. 3d 738 (S.D.N.Y. 2017)................................................. 20

*Vaccaro v. Bank of Am., N.A.*,
   No. 13-CV-2484, 2016 WL 4926201 (S.D.N.Y. Sept. 15, 2016)........... 19

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
   395 B.R. 520 (E.D.N.Y. 2008) ............................................................ 32

*Wade Park Land Holdings, LLC v. Kalikow*,
   589 F. Supp. 3d 335 (S.D.N.Y. 2022)............................................... 127

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002)..................................................................35, 121

*Westchester Cty. Indep. Party v. Astorino*,
   137 F. Supp. 3d 586 (S.D.N.Y. 2015).........................................................................33

*Wexner v. First Manhattan Co.,*
   902 F.2d 169 (2d Cir. 1990).....................................................................................127

*Wildenstein v. 5H&Co. Inc.*,
   97 A.D.3d 488 (1st Dep't 2012) ................................................................................48

*William Doyle Galleries, Inc. v. Stettner*,
   167 A.D.3d 501 (1st Dep't 2018) .............................................................................108

*Williams v. Affinion Grp., LLC*,
   889 F.3d 116 (2d Cir. 2018)..............................................................................*passim*

*Zigman v. Giacobbe*,
   944 F. Supp. 147 (E.D.N.Y. 1996) .............................................................................27

*Zuhovitzky v. UBS AG*,
   No. 23-CV-1184, 2024 WL 2130838 (2d Cir. May 13, 2024) ...................................47

## **Statutes**

9 U.S.C. § 1 ........................................................................................................................57

15 U.S.C. § 1012 ...............................................................................................................52

18 U.S.C. § 1341 ...............................................................................................................20

18 U.S.C. § 1343 ...............................................................................................................20

18 U.S.C. § 1964 .............................................................................................................104

18 U.S.C. § 1952 ......................................................................................................20, 107

18 U.S.C. § 1961 ...............................................................................................................28

28 U.S.C. § 1367 ......................................................................................................46, 129

28 U.S.C. § 2201 ...............................................................................................................44

42 U.S.C.§ 1395 ...............................................................................................................121

N.Y. Gen. Bus. Law § 349..........................................................................................*passim*

N.Y. Ins. Law § 1101 ...........................................................................................14, 15, 16

N.Y. Ins. Law § 1102 .......................................................................................................17

N.Y. Ins. Law § 2101 .......................................................................................................18

N.Y. Penal Law § 215 ............................................................................................ 20, 26, 75

N.Y. Work. Comp. L. § 13-a(3) .......................................................................................... 56

N.Y. Work. Comp. L. § 18 .................................................................................................. 54

N.Y. Work. Comp. L. § 20 .................................................................................................. 53

N.Y. Work. Comp. L. § 23 .................................................................................................. 54

N.Y. Work. Comp. L. § 140 ................................................................................................ 53

N.Y. Work. Comp. L. § 141 ................................................................................................ 54

N.Y. Work. Comp. L. § 142 ................................................................................................ 54

**Rules**

CPLR § 214 ........................................................................................................................ 84

CPLR § 3016 ...................................................................................................................... 49

Fed. R. Civ. P. 9(b) ................................................................................................... 127, 128

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 71

Local Civil Rule 7.1(c) .............................................................................................. 63, 130

**Regulations**

8 NYCRR § 29.2 ............................................................................................................... 101

11 NYCRR § 33.2 ............................................................................................................... 17

11 NYCRR § 33.3 ............................................................................................................... 18

12 NYCRR § 300 ................................................................................................................ 54

12 NYCRR § 324.3 ............................................................................................................. 68

12 NYCRR § 325 ................................................................................................................ 54

12 NYCRR § 328 ................................................................................................................ 54

12 NYCRR § 329 ................................................................................................................ 54

12 NYCRR § 332 ................................................................................................................ 54

42 C.F.R. § 410.32 ............................................................................................................. 68

In Part I, Defendants[1] respectfully submit a joint memorandum of law in support of their motions to dismiss the First Amended Complaint (ECF 68) (the "FAC") of plaintiffs Roosevelt Road Re., Ltd. (as the purported subrogee of Accredited Casualty and Surety Company ("Accredited")) ("Roosevelt") and Tradesman Program Managers, LLC ("Tradesman," and, collectively with Roosevelt, "Plaintiffs"). In Part II, Defendants also provide individual supplemental arguments for dismissal applicable to those Defendants.

## PART I: JOINT BRIEF

### PRELIMINARY STATEMENT

Plaintiffs bring seven claims: violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, common-law fraud, aiding and abetting fraud, unjust enrichment, a violation of New York General Business Law ("GBL") § 349, and a claim for declaratory relief. FAC ¶¶ 536–581. All seven should be dismissed, on multiple grounds.

First, Plaintiffs lack RICO standing for several reasons, but chiefly because they do not (and cannot) adequately allege direct RICO damages. The original complaint made this deficiency clear by alleging that Roosevelt and Tradesman are an offshore reinsurer and its "management services" affiliate, respectively, and by failing to identify direct harm to either Plaintiff because of any act allegedly committed by any Defendant. Desperate to overcome this glaring deficiency, and

---

[1] Pursuant to the Court's October 10, 2025 and October 24, 2025 Orders, Part I of this brief is respectfully submitted jointly on behalf of defendants Kolb Radiology, P.C. and Thomas M. Kolb, M.D. (the "Kolb Defendants"); Interventional Pain Management & Rehab., P.C. and Vadim Abramov, M.D. (the "Interventional Defendants"); McCulloch Orthopaedic Surgical Services, PLLC and Kevin Wright, M.D. (the "McCulloch Defendants"); Brooklyn Medical Practice, P.C., Todd Lawrence Lebson, D.C., North Shore Family Chiropractic, P.C., Sayeedus S. Salehin, M.D., Unicorn Acupuncture, P.C., Dekun Wang, L.Ac., Richard Apple, M.D. and Big Apple Pain Management P.L.L.C., (the "GTPC Defendants"); BL Pain Management, PLLC, Pain Physicians NY PLLC, LR Medical, PLLC, Boleslav Kosharsky, M.D., and Demetrios Koutsospyrous, M.D. (the "Pain Defendants"); Alexandre B. de Moura, M.D. and Alexandre B. de Moura, P.C. d/b/a New York Spine Institute (the "NYSI Defendants"); All County Foot and Ankle LLP, and Gianni Persich, M.D. (the "Persich Defendants"); Dr. Mehrdad Golzad and NYC Medical & Neurological Offices, P.C. (the "NYC MNO Defendants"); Katzman Orthopedics, P.C., and Barry Katzman, M.D. (the "Katzman Ortho Defendants"); and Orthopaedics Spine & Sports Medicine, LLC d/b/a Total Orthopaedics & Sports Medicine and Vadim Lerman, D.O. (the "Total Ortho Defendants") (collectively, "Defendants").

1

equally desperate to overcome Judge Gonzalez's recent dismissal of a near-identical case filed in this district,[2] Plaintiffs preemptively filed the FAC. But the FAC fares no better than the original complaint.

The FAC tries to manufacture standing by recasting certain core allegations from Plaintiffs' original complaint and by adopting an entirely new theory—namely, that Plaintiffs somehow function as primary insurers. This new theory not only directly contradicts the original complaint, but also includes a series of eye-opening admissions about Plaintiffs' unlicensed insurance operations. The *Subin* court rejected a similar attempt by Plaintiffs to recast their pleading, before ultimately dismissing that case with prejudice, and this Court should do the same. But even if this Court considers Plaintiffs' new theory, Plaintiffs still fail to plausibly allege standing.

As a mere reinsurer (which Roosevelt clearly is, notwithstanding the new theory advanced by the FAC), Roosevelt's purported "injuries" are wholly dependent upon multiple, alleged predicate injuries to other entities—including various unidentified non-party primary insurers and their insureds. Tradesman, a mere management services affiliate of Roosevelt, is even further removed from the effects of the alleged "fraud scheme." Such derivative injuries are insufficient, as a matter of law, to support a RICO claim. Even if the Court considers the far-fetched "joint primary insurer" theory alleged in the FAC, Plaintiffs' purported injuries remain several steps removed from the alleged fraud scheme and thus insufficient for RICO standing. *Subin I*, 2025 WL 1713109, at *6 (finding Plaintiffs' alleged injuries "derivative" and "too attenuated to survive dismissal"). On these grounds, Plaintiffs have no business bringing this lawsuit—a conclusion firmly supported by *Subin*.

---

[2] The court's decisions dismissing the case of *Roosevelt Rd. Re, Ltd. v. Subin* ("*Subin*") will be referred to as "*Subin* I" and "*Subin* II." *See* No. 24-CV-05033 (HG), 2025 WL 1713109, at *9 (E.D.N.Y. June 19, 2025) (hereafter "*Subin* I") and No. 24-CV-05033 (HG) (E.D.N.Y. Sept. 16, 2025) (ECF 68) (hereafter "*Subin* II").

Standing is hardly the sole deficiency in the FAC; it should also be dismissed because it (i) relies on a damages theory that is legally foreclosed by the *Subin* decision (*i.e.*, that Plaintiffs somehow function as primary insurers); (ii) fails to adequately plead RICO predicate acts; (iii) fails to adequately plead the existence of a RICO "enterprise"; (iv) fails to adequately plead the requisite "pattern" of racketeering activity; (v) fails to adequately plead a RICO "conspiracy;" (vi) fails to adequately plead any state-law claims; (vii) fails to identify "exceptional circumstances" justifying the exercise of supplemental jurisdiction upon dismissal of the RICO claims; (viii) is preempted by the McCarran-Ferguson Act, and (ix) should be dismissed under the *Burford* abstention doctrine. As to certain Defendants, Plaintiffs' claims are also (x) barred by the applicable statutes of limitations.

For all the reasons below, the Court should dismiss this action with prejudice.

## STATEMENT OF FACTS

### A.  The First Amended Complaint

Roosevelt, a Bermuda-based reinsurer, underwrites policies and provides reinsurance covering various workers' compensation claims and personal injury lawsuits. FAC ¶¶ 3, 512. Tradesman, Roosevelt's managing general agent, provides management services "including general liability and workers' compensation services from underwriting through claims handling and subsequent administrative and legal actions." *Id.* ¶ 530. The FAC asserts claims against forty four (44) defendants, including individual lawyers, doctors, medical professionals, law firms, and medical facilities; 25 unidentified "XYZ Corporations" (the "Funding Defendants"); and 25 unidentified "John Does" (the "Runner Defendants"). *See id.* ¶¶ 5–55.

The FAC advances a vague, wide ranging and conclusory theory of an "enterprise" operated by Defendants for the purpose of defrauding insurance carriers. Plaintiffs allege, in

conclusory terms, that the Medical Provider Defendants rendered "unnecessary, excessive, unwarranted" medical treatment to Claimants that were "not causally related to the alleged workplace accident[s]." *Id.* at ¶¶ 61, 97, 99, 111, 175, 186, 203. But the FAC lacks any factual basis to infer that any medical provider intentionally misrepresented a patient's condition, falsified medical findings, concealed clinical data, directed a claimant to file a false claim, or communicated with alleged runners to recruit bogus patients. In other words, the FAC fails to allege with particularity that the Medical Provider Defendants actually engaged in conduct constituting intentional fraud.

Given the complete failure to allege this conduct with particularity, the allegations against the parties are shocking and defamatory. Nevertheless, by making these serious accusations against long-time professionals named as Defendants, the Plaintiffs continue to pursue their strategy of using the RICO statute as a cudgel to undermine the ability of injured workers to bring valid claims pursuant to New York law against their negligent employers.

Plaintiffs seek to recover for indirect expenses they allegedly incurred in their roles as reinsurer and program manager, including general liability claim adjustment costs and investigative expenses arising from the administration and contesting of claims submitted by primary insurers. *See id.* at ¶¶ 512-518, 530-533. The FAC alleges that Roosevelt was contractually obligated to reimburse primary insurers for costs incurred in connection with Claimants' injuries. *See id.* at ¶ 512. But Plaintiffs merely cite general increases in Roosevelt's general liability claim adjustment expenses and net outstanding reinsurance liability, and do not link these increases to any Defendant or any fraudulent act. *Id.* at ¶¶ 518-519.

Similarly, the FAC does not identify any specific policy, claim, or payment associated with any named Defendant that caused Tradesman to incur increased costs. Plaintiffs speculate that

"numerous insurance carriers have ceased to write" certain policies in New York due to the Defendants' alleged conduct, but fail to provide any non-conclusory allegations to demonstrate how this alleged market shift caused concrete injury to Tradesman's business. *See id.* at ¶ 534.

The FAC is part of a growing series of nearly identical, legally baseless civil RICO actions that one or both of the Plaintiffs have filed in this District, using the same counsel. Since March 2024, Plaintiffs have commenced at least four (4) other lawsuits,[3] each premised on the same overarching narrative: That a group of law firms, medical providers, and unidentified "runners" allegedly collaborated to recruit construction workers, fabricate or exaggerate injuries, and pursue inflated settlements from primary insurers. Although the named Defendants vary from case to case, the structure, content, and legal theories asserted are materially indistinguishable. Moreover, despite the naming of different Defendants in each of the cases, the RICO lawsuits consistently fail to demonstrate any agreement, common enterprise or coordination that would actually establish the existence of all the elements necessary for Plaintiffs to maintain a RICO claim.

Extensive portions of the filings in these actions are copied verbatim in the FAC, including the descriptions of the purported scheme, the allegations concerning mail and wire fraud, and the amorphous damages theory. In each case, Plaintiffs rely on schematic flowcharts to depict an alleged association-in-fact enterprise and reproduce the same speculative conclusions regarding the Defendants' intent and coordination. Rather than develop case-specific factual narratives, Plaintiffs largely substitute one set of law firms and healthcare providers for another, while repeating virtually identical, non-particularized assertions across pleadings.

---

[3] *See Roosevelt Road Re, Ltd. v. William Schwitzer & Assocs.*, P.C., No. 1:25-cv-03386 (E.D.N.Y. June 16, 2025); *Roosevelt Road Re, Ltd. v. Liakas Law*, P.C., No. 1:25-cv-00300 (E.D.N.Y. Jan. 17, 2025); *Roosevelt Road Re, Ltd. v. Subin*, No. 1:24-cv-05033 (E.D.N.Y. July 19, 2024); *Roosevelt Road Re, Ltd. v. Hajjar*, No. 1:24-cv-01549 (E.D.N.Y. Mar. 1, 2024).

The generalized and formulaic nature of Plaintiffs' allegations, combined with the absence of specific factual support, reflects a litigation campaign that is untethered to individualized harm and improperly targets experienced, licensed professionals engaged in the lawful treatment of injured workers throughout New York State and attorneys seeking to obtain redress for them under the law.

### B. Procedural History

Plaintiffs filed their first complaint in this action on June 16, 2025. *See* ECF 1.  The matter was originally assigned to Magistrate Judge Lara K. Eshkenazi on June 17, 2025. *See* ECF Order entered on June 17, 2025. Thereafter, on August 14, 2025, a pre-motion letter was filed by Kolb Radiology, P.C. and Thomas M. Kolb, MD (hereinafter, the "Kolb Defendants") stating their intent to file a motion to dismiss. *See* ECF 8. Thereafter, the Eastern District Clerk assigned this matter to this Honorable Court. See ECF Order entered on August 22, 2025. Thereafter, multiple Defendants submitted letter motions requesting extensions of time and the Kolb Defendants filed a pre-motion letter outlining their anticipated motion to dismiss, which this Honorable Court deemed to be equivalent to a filed motion to dismiss on September 8, 2025. *See* ECF 46; ECF Order entered on September 8, 2025.

On September 23, 2025, the Plaintiffs filed their First Amended Complaint (hereinafter "FAC") but the deficiencies in the pleadings were not cured by their amendment and thus the action is subject to dismissal. *See* ECF 68. Accordingly, the Kolb Defendants renewed their pre-motion letter and multiple other Defendants filed pre-motion letters requesting permission to file a motion to dismiss. On October 10, 2025, an initial status conference was held before this Honorable Court wherein discovery was stayed until further notice, and the Court denied without prejudice the letter motions but set the  following briefing schedule for an omnibus motion to

dismiss: Defendants to file a combined omnibus motion to dismiss by November 7, 2025 with Plaintiffs to file their opposition by November 28, 2025 with a reply to be filed by December 19, 2025. *See* ECF Order entered on October 10, 2025. On October 24, 2025, this Honorable Court extended the time for the Defendants to file the omnibus brief in support of their motion to dismiss until November 14, 2025 and provided directives regarding the length of the parties' briefs. *See* ECF Order entered on October 24, 2025.

## ARGUMENT

## POINT I

## PLAINTIFFS LACK STANDING UNDER THE RICO STATUTE

The FAC does not plausibly plead RICO standing and, in any event, the doctrine of claim preclusion bars Plaintiffs from pursuing the RICO claims.

Although under Section 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue," the Supreme Court has made clear that the RICO statute has a "direct-relationship requirement." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025). "[B]y reason of" in the statute means "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). Thus, a plaintiff "is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268). As a result, "whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Horn*, 604 U.S. at 612 (quoting *Hemi*, 559 U.S. at 10).

Here, standing is absent because the damages alleged by the FAC move "well beyond the first step." Specifically, the damages asserted from the pleaded conduct—civil actions against

insured premises owners and general contractors and claims filed with the Workers Compensation Fund ("WC Board"), based on allegedly fabricated workplace injuries—led the sued parties and WC Board to seek or consider seeking coverage from insurance carrier(s). Those carriers, in turn, allegedly may have contracted with reinsurers such as Roosevelt, which worked with Tradesman, a service provider. But in this scenario, as recently determined in *Subin I*, a case decided on a motion to dismiss and involving the same Plaintiffs and Plaintiffs' counsel and the same or substantially the same claims and defendant types as here, the Court dismissed the RICO claims on the ground that the reinsurer and its agent lack RICO standing.[4]

First, as to Tradesman, as *Subin I* explained, three grounds rooted in Supreme Court caselaw defeated standing. First, "the [FAC] alleges no flow of money from Tradesman to Defendants. Rather, Tradesman vaguely assert[ed] that it 'made substantial payments and sustained significant damage in connection with its management of the policies that cover the various claims and lawsuits filed and prosecuted by the Schwitzer Defendants as part of the Fraud Scheme.'" *Subin I*, 2025 WL 1713109, at *5. Such increased costs could not be considered the "'preconceived purpose'" or the "'specifically-intended consequence'" of Defendants' conduct. *Id.* (quoting *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994)); *see also Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 17 (2d Cir. 2006) (cost of plaintiff's acts insufficiently direct). As a "derivative result of a 'fraudulent scheme' targeting construction employers or perhaps the Workers' Compensation Board," the alleged scheme there fell outside of "RICO's remit." *Subin I*, 2025 WL 1713109, at *5 (citing *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 166 (S.D.N.Y. 2020)).

---

[4] The Court dismissed the complaint in *Subin I* without prejudice; the Plaintiffs then filed a further amended complaint, which was struck by the Court, leaving the complaint addressed in *Subin I* as the operative complaint. *See* Point I (B), *infra*.

Second, Tradesman's injury fell "'well beyond the first step.'" *Id.* at *5 (quoting *Hemi*, 559 U.S. at 10). It was only "after Defendants allegedly directed construction workers to fake accidents and fraudulently inflated the size of their claims so that expensive litigation could be initiated against their construction employers" that the "employers, now confronted with lawsuits and/or workers' compensation claims, apparently contacted their insurers." *Id*. The insurers then "contacted Tradesman, who processed and investigated the claims for the insurers." *Id.* By analogy, the Court noted, if the Securities Investor Protection Corporation ("SIPC") was unable to adequately plead causation against the defendant in *Holmes* because "'the link [was] too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers,' [] then Tradesman's claim must similarly fail as contingent on harms suffered by insurers, which are themselves contingent on the harms suffered by the construction employers." *Id*.

Third, the Court rejected as a basis for standing "Tradesman's assertion that construction insurance frauds have caused premiums to rise, resulting in 'numerous insurance carriers . . . ceas[ing] to write Workers' Compensation and/or general liability policies in . . . New York, which has resulted in damage to Tradesman's business.'" *Id.* (alterations in original). Such a causation chain "plausibly pled would be to engage in an 'intricate, uncertain inquir[y]' into the extent of [Defendants'] responsibility for the loss," an approach foreclosed by precedent. *Id.* (alterations in original) (internal quotation marks omitted) (citing *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116 (S.D.N.Y. 2021)).

With respect to Roosevelt, the Court found that as a reinsurer, its pleaded damages— "expenses paid as reimbursement to primary insurers providing coverage for the claims and lawsuits filed and/or prosecuted by the Legal Defendants on behalf of Claimants[,]" *id.* at *6, and

"mandatory reimbursement for payments made directly to the Subin Firm, medical providers, or to others due to Defendants' pattern of fraudulent conduct in connection with claims made under New York's Workers' Compensation Laws and New York's Labor Laws[,]" *id.*—were multiple steps away from the alleged RICO injury and "derivative of an injury to a third party." *Id.* (quoting *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 238-39 (2d Cir. 1999)). As the Court explained:

> Roosevelt looks a lot like SIPC in *Holmes.* Just as the directly injured parties in that case were the brokerages, the directly injured parties here are the construction employers faced with fraudulent lawsuits. *See* 503 U.S. at 271. When those brokerages went bust, their customers were harmed; here, too, because the construction employers were sued, the primary insurers faced losses. *See id.* Ultimately, SIPC, which had statutory obligations to brokerage customers analogous to Roosevelt's contractual obligations to primary insurers, could not bring a RICO claim against the defendant because 'the link [was] too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers.' *See id.* at 261-62, 271. That rationale compels the same conclusion here, and perhaps more so, as the harm to Roosevelt is doubly contingent on the losses to the construction employers and their insurers. So, as *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)], *Hemi*, and *Holmes* all make clear, a party like Roosevelt may not sue under RICO merely because it ultimately 'absorb[s] the financial impact' of the fraud experienced by others.

*Id.*

Notably, the Court rejected Roosevelt's reliance on cases in which legal fees were held to constitute RICO damages, explaining that, in the cases cited by Roosevelt—unlike in *Subin*—legal fees paid for "frivolous lawsuits" were the target of the scheme in the cases cited by Roosevelt. *Id.* at *7 (citing *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir. 1988)). The *Subin* complaint's FAC's theory of injury was not analogous and effectively merely restated the standing problem: "Roosevelt's argument really collapses into a remix of the argument just rejected, and

10

further highlights the attenuated nature of its injury. Because construction employers faced unnecessary legal fees, their insurers had to pay out larger claims, which also dented reinsurers' coffers. That kind of downstream, market-wide injury is insufficiently direct to withstand dismissal." *Id.*

The standing analysis of *Subin I* applies in full to this case. First, the FAC here fails to particularize payment of a single dollar by Plaintiffs to any Defendant in reliance on the scheme the FAC alleges. Second, the FAC acknowledges that Roosevelt allegedly has exposure to accident claims under a Quota Sharing Reinsurance Agreement, FAC ¶ 512, a contract that confirms Roosevelt as a tertiary "link in the chain" of alleged damages causation and Tradesman, a servicer, a fourth link: that is, Defendants allegedly (1) defrauded construction employers and/or the WC Board, which (2) caused the primary insurance carrier additional insurance expenses, which (3) caused reinsurers like Roosevelt to incur expenses, which (4) caused Tradesman additional management expenses (although, to be clear, the FAC does not even assert that Tradesman was not compensated by its principal for administering claims regardless of the validity of the claims, calling into question whether Tradesman lacks even quaternary injury status).

Third, as in *Subin I*, the FAC alleges damages in the form of industry trends causing rising costs to reinsurers due to fraud and, as to Tradesman, lost business due to the writing of less insurance, reducing claims to be managed. FAC ¶¶ 518-19, 526-28. Such generalized damage allegations cannot satisfy the Supreme Court's RICO standing test. *See Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (alleged loss of commissions "too speculative to confer standing, because [the plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet"); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022) (similar). And, general administrative and investigative

11

expenses have long been held unrecoverable under RICO. *See, e.g.*, *Subin I*, 2025 WL 1713109, at \*5 (citation omitted); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842 (S.D.N.Y. 1991). Furthermore, Tradesman, as the managing agent for insurers and reinsurers, is not obligated to conduct these investigations; the primary insurer is. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 583 (N.Y. 1992). Any Tradesmen expenses were thus self-inflicted and/or reimbursable by the reinsurers or primary insurers, and therefore cannot constitute injuries for RICO standing purposes. *See Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as amended* (Mar. 21, 2013); *Bandler v. Town of Woodstock*, 832 F. App'x 733, 734-35 (2d Cir. 2020) (injury not fairly traceable to defendant where plaintiff was eligible to be fully reimbursed but failed to seek reimbursement); *see also Subin I*, 2025 WL 1713109, at \*5 (Tradesman "never alleges that the excess costs of investigating fraudulent claims exceeded the money it made from processing them" because Tradesman is paid to "sort[] the wheat from the chaff in that way").

Fourth, Plaintiffs assert, as they did in *Subin I*, that the alleged scheme "inflate[d] [the] settlement value" of Workers' Compensation claims and personal injury lawsuits. FAC ¶ 56; *see Subin I*, 2025 WL 1713109, at \*1. But the FAC does not allege that Plaintiffs paid settlements in amounts greater than they otherwise would have absent any fraud. Nor do Plaintiffs allege that any differences in their subjective evaluation of a Claimant's personal injury lawsuit attributable to the alleged scheme caused any extensions of those lawsuits, resulting in increased litigation spend. These hypothetical litigation expenses are insufficient to confer standing. *See Hecht*, 897 F.2d at 24 (speculative injuries insufficient to confer standing). In any event, any alleged legal fees are not cognizable – they are contingent on (1) construction employers facing unnecessary legal fees, which (2) required primary carriers to pay out larger claims, which (3) allegedly "dented [the]

reinsurer's coffers." *Subin I*, 2025 WL 1713109, at *7; *Stochastic Decisions v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993) (plaintiff's litigation expenses were not a cognizable RICO injury because the alleged violation did not proximately cause the expenses); *Nygård v. Bacon*, No. 19-CV-1559, 2021 WL 3721347, at *6 (S.D.N.Y. Aug. 20, 2021) (alleged legal fees unrecoverable under RICO).

The FAC cites *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 806 (1993), arguing that reinsurance and primary insurance are "so closely tied that one of the two categories of reinsurance (assumption reinsurance) substitutes the reinsurer for the primary or 'ceding' insurer and places the reinsurer into contractual privity with the primary insurer's policyholders." FAC ¶ 520. *Hartford* is inapposite, as it explained the term "boycott" in the McCarran-Ferguson Act for purposes of determining whether the alleged conduct of reinsurers constituted a "boycott" exempt from McCarran-Ferguson (and thus a violation of the Sherman Act). That context has no bearing on the separate proximate cause RICO standing requirement. Roosevelt's relationship with primary insurer Accredited is contractual, an additional "link in the chain" for purposes of proximate cause. Its injuries remain "purely contingent" on injuries to its contracting insurers, which themselves are contingent on injuries to the actual insureds. *Hemi Grp.*, 559 U.S. at 9.

The FAC further alleges that Roosevelt's injury was a foreseeable consequence of the alleged scheme. *See* FAC ¶¶ 523-24. But "foreseeability and intention have little to no import for RICO's proximate cause test." *Empire Merchs., LLC v. Reliable Churchill LLP*, 902 F.3d 132, 145 (2d Cir. 2018). Instead, the "central question" is "whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. Here, it did not. And, even if foreseeability and intention were relevant, Plaintiffs have not plausibly alleged that they were the foreseeable and intended target of Defendants' conduct; rather, the only plausible reading of the FAC is that

13

construction employers or the WC Board were the intended targets of the purported scheme. *Subin I*, 2025 WL 1713109, at \*4-6. Recall that the FAC, in its Claimant narratives and otherwise, does not allege *any* flow of money from them to Defendants. *Id.* at \*4, \*7 (holding that neither Roosevelt nor Tradesman were the intended targets of the alleged conduct). Indeed, the FAC is so devoid of payment particulars that it is mere conjecture whether Claimants' injuries and claims resulted in any actual losses to Roosevelt or Tradesman.

### A. Plaintiffs Cannot Establish Standing Based on Their "Primary Insurer" Argument

"The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To meet this burden, a plaintiff must clearly "alleg[e] facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute." *In re AOL Time Warner Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 245 (S.D.N.Y. 2004).

In *Subin I*, Justice Gonzalez held that Plaintiffs lacked standing to assert RICO claims like those at issue here because, as a reinsurer and managing agent, they were not the "intended target[s] of the RICO violation." *Subin I*, 2025 WL 1713109, at \*4. Accordingly, their alleged injuries were "too attenuated" and "multiple steps away from the alleged fraud." *Id.* at \*6-8.

To avoid dismissal of this action on the same grounds, Plaintiffs amended their original complaint to allege that they have standing because they were "substituted" as primary insurers in place of Accredited. If true, the only thing this allegation establishes is that Plaintiffs have violated the New York Insurance Law because they are not licensed to act as primary insurers.[5]

---

[5] Publicly available DFS licensing records reflect that neither Roosevelt nor Tradesman is authorized to issue policies or assume risk, nor do they possess a certificate of authority under Article 11. *See* N.Y. Ins. Law §§ 1101(b)(1), 1102; *Insurance License Search*, N.Y. Dep't of Fin. Servs., https://myportal.dfs.ny.gov/nylinxext/elprsmain.alice (last visited Nov. 5, 2025).

According to Plaintiffs, the New York Department of Financial Services' Office of General Counsel ("OGC") Opinion No. 05-01-11 supports their contention that they may be considered primary insurers based upon the "allocation of duties and responsibilities" among them and Accredited. (FAC ¶¶ 130, 133). The question presented to OGC in connection with that opinion, though, was whether New York Insurance Law "restrict[s] or prohibit[s] 'fronting' by authorized insurers for unauthorized insurers?" N.Y. Dep't of Fin. Servs., Off. of Gen. Counsel (Op. No. 05-01-11) (Jan. 14, 2005). OGC concluded that "[i]f under the guise of reinsurance, an unauthorized insurer engages in activities that would otherwise require a license under New York Law, the unauthorized insurer must obtain the required licenses." *Id.* OGC explained that an unauthorized insurer may reinsure 100% of an authorized insurer's risks "so long as the unauthorized insurer does not engage in any activities that would otherwise require it to obtain a license" and that each case "would have to be evaluated on its own facts." *Id.* OGC cautioned that "any unauthorized insurer that did any business in substance equivalent to one of the specified types of insurance business in § 1101(b)(1) in a manner designed to evade the provisions of the Insurance Law would be in violation of § 1102." *Id.*

The FAC alleges that Plaintiffs have engaged in the precise acts that constitute the transacting of "insurance business" under Insurance Law § 1101(b)(1). With respect to Tradesman, Plaintiffs allege that the company engaged in two enumerated "insurance business" acts by "issuing policies" and "calculating and collecting premiums." FAC ¶ 141; *see* N.Y. Ins. Law § 1101(b)(1)(A), (C) (transacting insurance business includes issuing policies and collecting premiums); *Caronia v. American Reliable Ins. Co.*, 999 F. Supp. 299, 303 (E.D.N.Y. 1999) (sending policies and collecting premiums amounts to doing an insurance business); *U.N.F. Servs. v. Ins. Co. of N. Am.*, 236 A.D.2d 388, 389 (2d Dep't 1997) (issuing policies constitutes doing

15

insurance business); *People v. British & Am. Casualty Co.*, 133 Misc. 2d 352, 360 (Sup. Ct., N.Y. Cnty. 1986) (foreign insurance company engaged in insurance business by, *inter alia*, collecting premiums from and sending policies to New York).

With respect to Roosevelt, the FAC unabashedly states that the company's relationship with Accredited is "not a standard insurer-reinsurer relationship." Plaintiffs claim that Accredited is a "fronting company" that merely "allowed its name to be used on paper, *i.e.*, the policies were issued in Accredited's name in exchange for a percentage of the premiums earned on such paper." FAC ¶ 134. Only Roosevelt "directly fulfilled and continued to fulfill the obligations of a primary carrier, such as issuing policies, administering claims, posting reserves, defending claims [and]…resolving claims." *Id.* at ¶ 135.

In short, Roosevelt alleges that it used Accredited as a shell company to enter contracts with New York insureds under which Roosevelt has all the obligations of an insurer while Accredited has none. If Roosevelt, rather than Accredited, were the signatory on these contracts, this would clearly constitute the "doing of an insurance business" under New York law. N.Y. Ins. Law § 1101(b)(1)(A) (insurance business includes "making, or proposing to make, as insurer, any insurance contract, including either issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein, or solicitation of applications for any such policies or contracts"). By using Accredited to enter agreements to which Roosevelt cannot permissibly be a party, Roosevelt is transacting insurance business pursuant to Insurance Law § 1101(b)(1)(E), which includes "doing or proposing to do any business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of this chapter." N.Y. Ins. Law § 1101(b)(1)(E).

Insurance Law § 1102 explicitly prohibits an entity from "transact[ing] insurance business in New York" in any of the foregoing ways without "a license issued by the Superintendent." N.Y. Ins. Law § 1102(a). As Plaintiffs do not have the required licenses, their claims of standing fail because "one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *In re Colonial Realty Co.*, 209 B.R. 819, 823 (Bankr. D. Conn. 1997) (citing *Gibbs & Sterrett Mfg. Co. v. Brucker*, 111 U.S. 597, 501 (1884)); *see Eastman Kodak Co. v. Blackmore*, 277 F. 694, 698 (2d Cir. 1921) ("Courts of justice will not assist a person who has participated in a transaction forbidden by statute to assert rights growing out of it, or to relieve himself from the consequences of his own illegal act …."); *BAT, LLC v. TD Bank, N.A.*, No. 15-CV-5839 (RRM) (CLP), 2018 WL 4693644, at *12 (E.D.N.Y. Sept. 28, 2018) ("It is the settled law of New York (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object."); *Fidelity Bank Nat'l Ass'n. v. Avrutick*, 740 F. Supp. 222 (S.D.N.Y. 1990) ("[c]ourts will not aid a person who founds his cause of action upon his own immoral or illegal act").

Defendants anticipate that Plaintiffs will try to argue, as they do in a footnote of the FAC, that they somehow are and have been "operating in compliance with all applicable New York State laws and regulations." (FAC ¶ 130, n. 4). However, it is impossible that Plaintiffs are acting as primary insurers and simultaneously complying with the law without the proper licenses. The only way Plaintiffs may not be in violation of the Insurance Law is if they are *not* acting as primary insurers—in other words, if Tradesman is acting as a managing agent[6] under its New York

---

[6] A managing general agent (MGA) means any person or entity that, among other things "manages all or part of the insurance business of an insurer" and "acts as an insurance agent as defined in section 2101(a) of the Insurance Law for such insurer." 11 NYCRR § 33.2. No insurer may use the services of a MGA in New York "unless the MGA has

insurance producer license[7] and Roosevelt is acting as an ordinary reinsurer. But, if that is the case, Plaintiffs are right back where they started, and they lack standing for the reasons stated in *Subin I*.

For these reasons, there is no universe in which Plaintiffs have standing under RICO.[8]

### B.  The Issue Preclusion Doctrine Bars Plaintiffs from Pursuing Their RICO Claims.

The complaint in *Subin I* pleaded RICO claims on all fours with those in the FAC but against different attorney and medical provider defendants. *Subin I* dismissed Plaintiffs' claims without prejudice for failure to plead RICO standing, expressing skepticism that the standing defects could be cured. *Subin I,* 2025 WL 1713109, at *8 (the injury issues "do not appear to stem from mere pleading deficiencies that can be fixed with additional facts but rather from Plaintiffs' commercial positions vis-à-vis Defendants"). Nevertheless, Plaintiffs amended the complaint. But "rather than confining their amendment to the narrow proximate-cause defect" the Court had identified, Plaintiffs filed a second amended complaint that added "84 pages, 262 paragraphs, four new counts, and five new defendants [while also] advanc[ing] new legal theories." *See Subin II*, at 5. Explaining that leave to amend "was not a license to recast the case," the Court deemed the FAC the operative complaint and dismissed it for its failure to plausibly allege RICO standing. *Id.* at 5-9.

---

an insurance agent's license issued by this State to represent said insurer for the appropriate kinds of insurance." 11 NYCRR § 33.3.

[7] Publicly available DFS licensing records reflect that Tradesman is licensed only as an "insurance producer" (as defined by N.Y. Ins. Law § 2101(k) to mean an insurance agent, insurance broker, reinsurance intermediary, excess line broker, or any other person required to be licensed under this article to sell, solicit or negotiate insurance). *See Insurance License Search*, N.Y. Dep't of Fin. Servs., https://myportal.dfs.ny.gov/nylinxext/elprsmain.alice (last visited Nov. 5, 2025).

[8] Plaintiffs also attempt to base this argument on a theory of equitable subrogation, FAC ¶ 522, but under the case it cites, *Century Prop. & Cas. Ins. Corp. v. McManus & Richter, P.C.,* 226 A.D.3d 1 (1st Dep't 2024), its rights, if any, would run against the insured Claimants, the parties with whom as an alleged subrogee it is in privity, not Defendants. Nor does the FAC's citation to *Agency Holding Corp. v. Malley-Duff & Associates. Inc.*, 483 U.S. 143 (1987) aid Plaintiffs; that case did not hold, as the FAC implies, that tertiary or quaternary victims of alleged predicate acts have standing to sue under RICO. *See* FAC ¶ 523.

*Subin I* has preclusive effect here. The doctrine of collateral estoppel or issue preclusion prevents parties from relitigating an issue "actually litigated and decided in [a] prior proceeding, as long as that determination was essential to that judgment." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *see also Brownback v. King*, 592 U.S. 209, 215 n.3 (2021) ("[I]ssue preclusion, also known as collateral estoppel[,] precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment."). The doctrine has four required elements: (1) the issue raised in both proceedings "must be identical"; (2) the relevant issue was "actually litigated and decided in the prior proceeding"; (3) the party to be estopped must have had a "full and fair opportunity" to litigate the issue in the prior proceeding; and (4) the issue was "necessary to support a valid and final judgment on the merits." *Cent. Hudson Gas & Elec. Corp.*, 56 F.3d at 368. "[C]ourts in the Second Circuit routinely apply collateral estoppel to the issue of standing." *Vaccaro v. Bank of Am., N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *5 (S.D.N.Y. Sept. 15, 2016) (collecting cases).

These elements are satisfied here. First, the issue here and in *Subin I* are identical: whether Plaintiffs have plausibly alleged RICO standing based on materially identical allegations. Second, this issue was actually litigated and decided in *Subin I*—the parties fully briefed the issue on a motion to dismiss, and Judge Gonzalez ruled that Plaintiffs had failed to plausibly allege RICO standing. *See Subin I*, 2025 WL 1713109, at *4-7. Third, the Plaintiffs here are the same plaintiffs had in *Subin I*, are represented by the same counsel, and availed themselves of the opportunity to fully litigate their allegations of RICO standing.[9] Finally, the issue of Plaintiffs' standing was the

---

[9] Plaintiffs also attempt to base this argument on a theory of equitable subrogation, FAC ¶ 522, but under the case it cites, *Century Prop. & Cas. Ins. Corp. v. McManus & Richter, P.C.*, 226 A.D.3d 1 (1st Dep't 2024), its rights, if any, would run against the insured Claimants, the parties with whom as an alleged subrogee it is in privity, not Defendants. Nor does the FAC's citation to *Agency Holding Corp. v. Malley-Duff & Associates. Inc.*, 483 U.S. 143 (1987) aid Plaintiffs; that case did not hold, as the FAC implies, that tertiary or quaternary victims of alleged predicate acts have standing to sue under RICO. *See* FAC ¶ 523. In any event, New York law does not universally support reinsurers being entitled to subrogation under *any* circumstances. *See Reliance Ins. Co. v. Aerodyne Engineers, Inc.*, 204 A.D.2d

necessary issue, indeed, the basis of dismissal. Moreover, that Plaintiffs may appeal does not impact the preclusive effect of the *Subin* decisions. *See United States v. Walker*, 239 F. Supp. 3d 738, 742 (S.D.N.Y. 2017) (rejecting argument that order subject to appellate review lacks preclusive effect under federal law because "[t]hat is not the law in this Circuit") (internal quotation marks omitted).

Accordingly, Plaintiffs are barred from pursuing the FAC's RICO claims both for the reasons set forth in *Subin I and II* and as a matter of issue preclusion. *See Poindexter v. Cash Money Recs.*, No. 13-CV-1155, 2014 WL 818955, at *3-7 (S.D.N.Y. Mar. 3, 2014) (motion to dismiss granted on issue preclusion grounds where prior determination found that plaintiff lacked standing to sue).

## POINT II

### PLAINTIFFS FAIL TO STATE A RICO CLAIM

#### A.  Plaintiffs Fail to Sufficiently Allege the Defendants Engaged in Predicate Acts of Racketeering Activity.

To state a viable civil RICO claim, Plaintiffs must plead that each defendant engaged in two or more acts constituting "racketeering activity." 18 U.S.C. § 1961(1). Here, Plaintiffs' civil RICO claim relies on alleged acts of :(1) mail and wire fraud (18 U.S.C. §§ 1341 and 1343); (2) bribery (N.Y. Penal Law § 215); and (3) Travel Act violations (18 U.S.C. § 1952). But Plaintiffs utterly fail to adequately allege that the Defendants committed any of these predicate acts. Rather, Plaintiffs' pleading is little more than an unwarranted attack on the professional judgments of experienced medical providers and attorneys.

---

944, 944-45 (3d Dep't 1994); *see also Star Ins. Co. v. At-Saf, Inc.*, No. 22-CV-7968 (EK) (TAM), 2024 WL 4333842, *3-4 (E.D.N.Y. 2024) (citing *Reliance*).

1. **Plaintiffs Fail to Allege, with the Heightened Particularity Required by Rule 9(b), that the Defendants Engaged in Mail or Wire Fraud.**

The Second Circuit has repeatedly warned that civil RICO claims relying on predicate acts of mail and wire fraud must be "particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 489 (2d Cir. 2014) (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)); *see MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022); *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019); *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). With good reason: the court has a "particular imperative" to weed out meritless civil RICO cases early "[b]ecause of [the] likely powerful effect on potentially innocent defendants who face the threat of treble damages, and the concomitant potential for abuse of RICO's potent provisions." *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011).

In civil RICO cases based on allegations of fraud, the law provides an extra layer of protection against groundless claims: the heightened pleading standard of Rule 9(b). *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). A plaintiff "must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent[,]" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018), and cannot merely "clump" defendants together, *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996). *See also Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at *8 (S.D. Tex. July 3, 2012) (dismissing "conclusory, vague, and non-specific [RICO] allegations" against doctors that "[left] the court

21

. . . to wonder" about details, including "what facts [led] the plaintiffs to believe that any . . . statements [were] fraudulent misrepresentations" and "when the defendants who ordered or provided the allegedly unnecessary medical tests and procedures received payment for those tests and procedures").

This heightened 9(b) pleading standard applies to Defendants' intent. To establish that a defendant participated in intentionally fraudulent conduct, Plaintiffs must provide "the factual basis which gives rise to a *strong inference* of fraudulent intent"—by each defendant, for each predicate act. *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)) (emphasis added). The possibility of fraudulent intent will not suffice: "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 51 (2d Cir. 2025) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

Plaintiffs' fraud claim does not come close to meeting this exacting pleading standard. Despite a 586-paragraph FAC replete with the words "false" and "fraudulent," the core of Plaintiffs' claim is that the Defendants provided "unnecessary and excessive treatment unrelated to" the Claimants' accidents. FAC ¶ 149. But medical treatment is not fraudulent merely because Plaintiffs disagree with a medical provider's professional assessment and course of treatment. This is not the grist of a treble-damages civil RICO claim.

Case law demonstrates how far afield from a legitimate civil RICO claim the FAC strays. In *State Farm Mut. Auto. Ins. Co. v. Grafman*, the court found the complaint sufficient because it specifically alleged how each fraudulent medical supplies invoice misrepresented the kind of products provided, grossly inflated prices, and listed supplies "not actually provided or . . .

provided but not prescribed." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 218 (E.D.N.Y. 2009). The complaint included records of the prices *actually* paid and the supplies *actually* provided to substantiate its allegations of fraud. *Id.* at 228. Here, in contrast, Plaintiffs do not allege that the Defendants' writings, which enumerated the treatments they provided, were factually false. *See Allstate Ins. Co. v. Advanced Health Pros., P.C.*, 256 F.R.D. 49, 61 (D. Conn. 2008) ("There are no allegations that Defendants did not perform particular tests, or did not make a particular diagnosis, or did not render any particular service or treatment"). Indeed, Plaintiffs acknowledge that the treatments the Defendants billed for were, in fact, administered. *See* FAC ¶ 61 (stating claimants "undergo" medical treatments). Instead, Plaintiffs assert that each Defendant provided unnecessary medical treatment to patients who reported injuries corresponding to that treatment. That is not a particularized allegation of fraud.

This case is strikingly similar to *Allstate Ins. Co.*, in which an insurer alleged that a medical provider created supposedly "fraudulent" invoices. The court granted the defendants' motion to dismiss plaintiff's civil RICO claim, finding that even a highly specific list of supposedly unnecessary medical treatments did not support the requisite inference of fraudulent intent, as the plaintiff did not explain "why seeking payment for unnecessary (or worthless) treatment actually rendered is fraudulent, or why Defendants' submission of bills listing such treatment[] constitutes fraud.*" Allstate Ins. Co.*, 256 F.R.D. at 59-60.

To assert such a claim against a medical provider, a plaintiff must do more than merely re-characterize a subjective difference in medical opinion as fraud. For instance, in *Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab., LLC*, plaintiffs pleaded fraud by pointing to evidence that the tests required *before* a medical procedure were not even administrated until *after* the procedure. *See Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab., LLC*, No. 20-CV-2391 (KAM), 2020

23

WL 7042648, at *6-7 (E.D.N.Y. Dec. 1, 2020). And in *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, plaintiffs adequately alleged that it was impossible for the medical providers to have actually created the "thousands of medical records they claim[ed] to have prepared[.]" *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 228-29 (E.D.N.Y. 2014).

Here, in contrast, Plaintiffs allege misrepresentations by *Claimants*—whom Plaintiffs assert were lying to the Defendants about their injuries—and then contend the doctors were somehow committing fraud by treating Claimants for the injuries they themselves reported. *See, e.g.*, FAC ¶ 158 (Claimant A); ¶ 187 (Claimant B); ¶ 225 (Claimant C); ¶ 250 (Claimant D). Not so. Simply put, the fact that medical providers took the word of their patients is not fraud.

Plaintiffs speculate that because initial emergency room trips didn't happen to catch the same injuries as Claimants' subsequent visits with medical specialists—hardly a shocking occurrence—the specialists must have known Claimants' injuries were fraudulent and their treatments unnecessary. *See, e.g.*, FAC ¶ 158. But Plaintiffs' argument is patently unreasonable on its face, for the logical implication of this position is that a doctor must refuse to treat a patient merely because the record of a single prior hospital visit did not capture all their subsequently-reported injuries or symptoms—or else face a civil RICO lawsuit for treble damages.

Plaintiffs also claim that doctors cannot rely on reports of prior treatment by other medical providers, suggesting that each subsequent doctor should have to redo prior providers' work and assess all prior treatments themselves, regardless of its relevance to their specialty. *See, e.g.*, FAC ¶ 93 (suggesting the Defendants were required to "consult the MRI films themselves" and were not entitled to "rely upon reports" from prior doctors). Plaintiffs' attack on medical providers' reliance on the reports of their professional colleagues makes no sense—and in no way supports their allegation of knowing and intentional fraud.

Plaintiffs' allegation that the Defendants "serially filed incomplete or inaccurate billing records and reports" is also accompanied only by rank speculation of fraudulent intent. *Id.* at ¶¶ 112-14. Plaintiffs merely assert that certain workers' compensation forms contained omissions or inconsistent entries, such as the failure to identify prior treating providers on C-4.0 forms or to list referring sources on CMS-1500 forms. *See id.* These types of non-substantive form errors, even if they occurred, fall far short of establishing fraud.

Plaintiffs also claim that each Defendant "knowingly profited" from payment for their medical services and from an "increased number of patients" who were referred to their practices for treatment. *See, e.g.*, FAC ¶¶ 299-300, 307-08, 346-47. But it is well-established that a "generalized profit motive . . . does not create the requisite 'strong inference' of fraudulent intent." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016); *see Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018) ("General allegations that a defendant engaged in misconduct in order to maximize his profit do not adequately allege scienter"). Indeed, it "would defy common sense" to find the requirement of a strong inference of fraudulent intent "satisfied merely by alleging the receipt of normal compensation for professional services rendered." *Friedman v. Ariz. World Nurseries Ltd. P'ship*, 730 F. Supp. 521, 532 (S.D.N.Y. 1990), *aff'd*, 927 F.2d 594 (2d Cir. 1991). Plaintiffs' effort to mischaracterize ordinary payments and business functions as evidence of fraud highlights the lack of particularized support for their claims.

At bottom, Plaintiffs' theory is reduced to the suggestion that because the medical care provided to Claimants was allegedly unnecessary, it was also intentionally fraudulent. This syllogism is specious: as one court has aptly stated, a civil RICO plaintiff cannot succeed by arguing that a medical provider's actions "constitute 'fraud' because they constitute 'fraud,' with no underlying facts on which such a conclusion could be based." *Allstate Ins. Co.*, 256 F.R.D. at

61. Stripped of boilerplate incantations and improper group pleading, Plaintiffs' allegations essentially amount to differences in medical opinion between Plaintiffs—a reinsurance company and its administrative management agency—and licensed medical specialists, about what medical treatment was appropriate under the circumstances. This is not fraud.

### 2. Plaintiffs Fail to Allege that the Defendants Engaged in Bribery.

Plaintiffs also fail to adequately allege that a single Defendant committed the predicate act of bribery. A conclusory allegation of bribery without "any facts regarding how much was paid, when [the bribe] was paid, or how it was delivered," and which fails to allege all the requisite elements of the relevant statute, is legally insufficient. *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 318 (S.D.N.Y. 2009) (civil RICO predicate acts of bribery insufficiently pled); *Benedict v. Amaducci*, No. 92-CV-5239 (KMW), 1995 WL 413206, at *10 (S.D.N.Y. July 12, 1995) (dismissing civil RICO claim because plaintiffs "fail[ed] to identify which defendant or defendants offered the alleged bribes, which defendant or defendants received them, or what other 'fiduciaries and agents' were allegedly involved").

Plaintiffs come nowhere near sufficiently pleading predicate acts of bribery. Plaintiffs do not even attempt to address the Penal Law requirement that a bribe be conferred to "a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced, or (b) such witness will absent himself from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding." N.Y. Penal Law § 215; *see also Macari Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1113 (S.D.N.Y. 1986), *aff'd sub nom.* 800 F.2d 1128 (2d Cir. 1986) (dismissing civil RICO claim based on alleged bribery where complaint failed to allege bribe was paid to influence testimony). At most, Plaintiffs state that, "upon information and belief," "at least some"

26

Defendants "received under the guise of payment for providing courtroom testimony a portion of the loan proceeds." FAC ¶ 119.

Such bare-bones pleading cannot survive a motion to dismiss. The insufficiencies are many: Plaintiffs fail to allege which Defendants were actually involved, who was paid, how much they were paid, when they were paid, what court case was involved, or what testimony was provided—among other salient facts. A complaint is deficient where "there is no indication of who paid the bribes, how the bribes were furnished, when and where the bribes were paid, and the approximate value of the bribes[.]" *Roberto's Fruit Mkt., Inc. v. Schaffer*, 13 F. Supp. 2d 390, 399 (E.D.N.Y. 1998). Merely inserting the word "bribery" into a boilerplate list of alleged predicate acts is insufficient. *See Fuji Photo Film U.S.A, Inc.*, 640 F. Supp. 2d at 318; *Zigman v. Giacobbe*, 944 F. Supp. 147, 156 (E.D.N.Y. 1996) (dismissing civil RICO claim based on commercial bribery where the complaint lacked "one single factual allegation of a specific bribe").

### 3. Plaintiffs Fail to Allege that the Defendants Violated the Travel Act

Plaintiffs' cursory attempt to allege that the Defendants violated the Travel Act does not even get out of the starting gate. That statute prohibits "travel[.] in interstate or foreign commerce or use [of] the mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate ... any unlawful activity." 18 U.S.C. § 1952(a). But Plaintiffs do not even specify what the allegedly "unlawful activity" is. While the FAC accuses the Defendants of "arranging and coordinating out of state surgeries," FAC ¶ 538, it fails to identify any particular out-of-state surgery, much less any specific travel or use of interstate facilities, or how it might relate to the broader alleged scheme. *Cf. Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 441 (E.D.N.Y. 2007) (upholding civil RICO claim based on Travel Act where the complaint "adequately allege[d] specific foreign travel" that was "essential to the overall

27

scheme"). More to the point, Plaintiffs do not explain how coordinating out-of-state surgery constitutes promoting an "unlawful activity" within the meaning of the statute. In fact, it doesn't.

### B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity.

RICO requires a "pattern" consisting of "at least two acts of racketeering activity … the last of which occurred within ten years … after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court has interpreted a "pattern" to require "both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich*, 858 F.3d at 59 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). This element prevents the application of RICO to "isolated or sporadic" acts. *Reich*, 858 F.3d at 60 (quoting *U.S. v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)). The alleged predicate acts in the FAC are insufficient, as a matter of law, to satisfy the "relatedness" or "continuity" requirements. This is particularly so because Plaintiffs must establish a pattern as to each individual Defendant. *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant").

### 1.    Plaintiffs Fail to Adequately Plead "Relatedness."

"Relatedness" demands that the alleged "[p]redicate crimes must be related both to each other ('horizontal relatedness') and to the enterprise as a whole ('vertical relatedness')." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (citing *Reich*, 88 F.3d at 60-61). Predicate acts are "vertically related" only when "the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." *Reich*, 858 F.3d at 60-61. Predicate acts are "horizontally related" only when they "have the same or similar purposes, results, participants, victims or methods of commission or otherwise are

28

interrelated by distinguishing characteristics and are not isolated events." *Id*. (quoting *H.J. Inc.*, 492 U.S. at 240. Further, where the alleged enterprise involves legitimate professionals, "relatedness" is not satisfied by merely alleging that ordinary professional services relate to some alleged scheme. *Reich*, 858 F.3d at 61 (citing *U.S. v. Coppola*, 671 F.3d 220, 243 (2d Cir. 2012) (distinguishing between primarily legitimate businesses and wholly illegitimate businesses "such as an organized crime family")).

### a. The Alleged Predicate Acts Are Not Horizontally Related.

Plaintiffs fail to plead that "there is a relationship between the predicate crimes themselves," which is an essential element of "horizontal relatedness." *Reich*, 858 F.3d at 61. The Second Circuit's decision in *Reich* is instructive on this point. In *Reich*, plaintiffs alleged that the defendant corporation committed two types of predicate acts, bribery and wire fraud, with the goal of securing energy contracts at inflated rates. *See Reich*, 858 F.3d at 58. Applying the factors set forth in Point II (B)(1) above (*i.e.*, purpose, results, participants, victims, and/or methods of commission), the court held that "horizontal relatedness" was lacking. Specifically, the court noted that the predicate acts were accomplished by different methods, produced different results, and affected different victims. *See id.,* 63. In fact, the *Reich* court found that "[t]he only horizontal link … is the overlap of participants" and "[in] [a] case, where the enterprise in question is not primarily in the business of racketeering, that is insufficient." *Id.; see Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (holding that predicate acts were unrelated despite overlapping participants); *Rajaratnam*, 449 F. Supp. 3d at 64-65 (similar). *Reich* also emphasized the need to take a narrow approach with respect to primarily-legitimate businesses, because "[i]f every crime done by an employee of a large, ramified corporation was deemed horizontally related, it would be child's play to plead RICO actions against those companies notwithstanding that the

crimes themselves might be isolated and otherwise unrelated." *Reich*, 858 F.3d at 61-62 (citation omitted).

In this case—which centers on the routine business activities of legitimate physicians, medical practices, health care facilities, and a law firm—there is virtually no overlap between the alleged predicate acts themselves. Although *some* of the underlying personal injury and workers compensation cases are alleged to share *some* (but not all) common participants, there is no allegation otherwise linking them. *See Reich*, 858 F.3d at 62 (finding no horizontal relatedness where, as here, "there [was] little else" apart from common participants, and finding a common "purpose" to help the company insufficient because "to engage purpose at that level of generality would make the factor meaningless: virtually all crimes committed on behalf of an enterprise are done to help it"). Here, as in *Reich*, the predicate acts and methods of commission alleged against the various Medical Provider Defendants (primarily mail and/or wire fraud stemming from the alleged transmission of fraudulent medical records) do not sufficiently overlap with the alleged predicate acts of the Schwitzer Defendants or the unknown litigation funding Defendants (purportedly fraudulent legal filings and alleged bribery of a victim or witness). *See* FAC, ¶¶ 496, 536. Further, the purported victims of the alleged predicate acts differ (*i.e.*, the WC Board, as opposed to various general liability insurers, general contractors, property owners, and/or the Claimants themselves). *See, e.g.*, FAC ¶¶ 70, 149, 177.

Because (1) Plaintiffs have pled nothing more than *partial* overlap among participants in *some* aspects of the alleged scheme, (2) those participants are not primarily in the business of racketeering, and (3) the alleged predicate acts are dissimilar, "horizontal relatedness" is plainly lacking.

**b.  The Alleged Predicate Acts Are Not Vertically Related.**

Nowhere in the FAC do Plaintiffs allege—nor can they—that any of the Defendants were "enable[d] to commit the [purported] offense[s] solely because of [their] position in the [alleged] enterprise." *Reich*, 858 F.3d at 60-61; *U.S. v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010) (same). The crux of Plaintiffs' allegations is that Defendants—a collection of independent lawyers, health care providers, and medical facilities—performed certain acts associated with the routine operation of their respective businesses (such as scheduling medical procedures, rendering medical treatment, generating medical records, and submitting medical documentation to the WC Board). Thus, it is clear that Defendants would have had the ability to commit each of the alleged predicate acts wholly independent and irrespective of their positions within the alleged enterprise. Nowhere does the FAC allege otherwise, and Plaintiffs' failure to connect the alleged predicate acts with the purported enterprise forecloses a finding of "vertical relatedness." *Rosenson v. Mordowitz*, No. 11-CV-6145 (JPO), 2012 WL 3631308, at *11 (S.D.N.Y. Aug. 23, 2012) (dismissing RICO claim and finding no vertical relatedness because "[t]here is no suggestion that [defendant] was able to commit the mail and wire fraud 'solely' by virtue of his position at [the enterprise]").

**2.  Plaintiffs Fail to Adequately Plead "Continuity."**

Even if Plaintiffs could overcome the "relatedness" element—and they cannot—Plaintiffs must also plead "continuity." Continuity requires (a) a series of related predicate acts extended over a substantial period of time ("closed-ended continuity"); or (b) a pattern of racketeering activity that poses a threat of continued criminal conduct beyond the period during which the predicate acts were performed ("open-ended continuity"). *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008); *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir.1995); *Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*, No.

23-CV-03842 (JMA) (ST), 2025 WL 458224, at *4 (E.D.N.Y. Feb. 11, 2025). Here, as with "relatedness," the law distinguishes between entities that are primarily engaged in racketeering, on the one hand, and legitimate businesspersons and entities, such as the Defendants, on the other. *See Reich*, 858 F.3d at 62 ("We have explicitly drawn that same distinction—between enterprises that are and are not primarily legitimate—in the context of the 'continuity' requirement for a RICO pattern"). An entity that is primarily engaged in racketeering is one that, unlike Defendants, "exists for criminal purposes (as is the case with organized crime syndicates)" or whose "objectives are primarily or inherently unlawful." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520, 551 (E.D.N.Y. 2008). Applying these standards, Plaintiffs fail to meet their burden.

### a. Plaintiffs Fail to Plead Open-Ended Continuity.

"Open-ended" continuity requires an examination of either: "(1) the predicate acts alleged; or (2) the enterprise at whose behest the predicate acts were performed." *Schlaifer Nance & Co.*, 119 F.3d at 97. Where, as here, the "enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts … were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014). In making this determination, the Court should consider that "[t]he allegation of a scheme that [is] inherently terminable does not plausibly imply a threat of continued racketeering activity." *Festa*, 797 F. App'x at 606.

Because the Defendants are engaged in legitimate businesses, there is no implied threat of future criminal conduct. Indeed, the FAC is clear that the Defendants are primarily engaged in the legitimate practice of law or medicine. FAC ¶¶ 5-48. Nowhere does the FAC plausibly allege that the predicate acts were Defendants' "regular way" of operating their businesses. Thus, to suggest,

as Plaintiffs do, that the alleged scheme will repeat with respect to future patients and/or clients (FAC ¶¶ 498, 536) is rank speculation. *See One World, LLC v. Onoufriadis*, No. 21-CV-374, 2021 WL 4452070, at *3 (2d Cir. Sept. 29, 2021) (rejecting, as "purely speculative," argument that the "nature of the enterprise's course of dealing implies that it would have continued" the alleged fraud).

Further, while Plaintiffs broadly allege that the "scheme" extends beyond the handful of Claimants identified in the FAC, they plead no facts supporting this conclusory assertion, let alone particularized facts satisfying Rule 9(b). Moreover, "it is well established law that fraud does not fall within the 'inherently unlawful' category of predicate acts so as to imply a threat of continued criminal activity." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.,* 667 F. Supp. 3d 83, 136 (S.D.N.Y. 2023) (citing *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 611 (S.D.N.Y. 2015) (collecting cases)). As a result, the alleged scheme is "inherently terminable" once the Defendants cease treating and/or representing the Claimants. *See Spool*, 520 F.3d at 186 (holding a scheme that is "inherently terminable … cannot be said to pose a threat of continuing conduct"); *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999) (similar). Plaintiffs' allegation of "open-ended" continuity boils down to two paragraphs alleging, in conclusory fashion, that the alleged scheme will continue. *See* FAC ¶¶ 498, 536. But absent facts plausibly suggesting a credible threat of continuation, this speculative claim alone is insufficient as a matter of law.

**b.  Plaintiffs Fail to Plead Closed-Ended Continuity.**

"Closed-ended" continuity is "primarily a temporal concept." *Bayside Wellness*, 2025 WL 458224, at *4. That said, courts will consider certain other "non-dispositive factors," including "the number and variety of acts, the number of participants, the number of victims, and the

presence of separate schemes." *Id.* (citing *GICC Capital Corp.*, 67 F.3d at 467). Although the alleged predicate acts must occur over a minimum of two years, that alone will not carry Plaintiffs' burden of establishing continuity. *Chester Park View, LLC v. Schlesinger*, No. 23-cv-5432 (CS), 2024 WL 278514, at *10 (S.D.N.Y. May 29, 2024) ("The mere fact … that [alleged] predicate acts span two years is insufficient, without more, to establish a pattern of racketeering activity") (quoting *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 571-72 (S.D.N.Y. 2018)). Crucially, the relevant period of time "is measured with reference to 'the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 146 (S.D.N.Y. 2018) (quoting *Spool*, 520 F.3d at 184)).

The FAC does not adequately plead that each of the Defendants engaged in a series of predicate acts over a substantial time period. While the purported "scheme" is alleged to have commenced sometime in 2018, the FAC makes clear that the alleged involvement of certain Defendants is limited to much shorter periods of time.[10] Further, the FAC does not allege that each Defendant participated in the representation and/or treatment of each individual Claimant throughout the duration of the alleged scheme, but only that certain Defendants participated in the alleged scheme, only with respect to certain individual Claimants, and only at certain times since 2018. By lumping Defendants together and fails to specify their individual roles, Plaintiffs artificially "stretch" the alleged predicate acts over several years. In reality, the alleged scheme is merely a collection of isolated, temporally-unrelated occurrences cobbled together by Plaintiffs for pleading purposes. This is insufficient to plead "closed-ended" continuity under RICO. *See,*

---

[10] For further discussion of this point, the Court is respectfully referred to the individual Defendants' supplemental portions of this brief.

*e.g.*, *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (dismissing for lack of closed-ended continuity despite seven-year duration of alleged scheme).

### C.    Plaintiffs Do Not Plausibly Allege a RICO Enterprise.

The term "enterprise" is defined in 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." At its core, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009) (quotations omitted). A plaintiff alleging such an enterprise must plead an "ongoing organization…function[ing] as a continuing unit" with "at least three structural features: a purpose, relationship among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 945-46 (cleaned up). The plaintiff must also allege that "the enterprise [is] separate from the pattern of racketeering activity" that forms the basis of the RICO claim. *Cao v. Flushing Paris Wedding Ctr. LLC*, No. 20-CV-2336 (RPK) (RLM), 2022 WL 219565, at *4 (E.D.N.Y. Jan. 25, 2022).

Plaintiffs' RICO claim should be dismissed because they fail to plausibly allege that defendants: (1) acted with a common purpose; (2) were a continuing unit; and/or (3) constituted an enterprise separate from the alleged pattern of racketeering activity.

### 1.    Plaintiffs Fail to Allege a Common Purpose.

The "common purpose" element requires a showing of a "common purpose to engage in a particular fraudulent course of conduct" which the individuals "work together to achieve" and a "common intent to violate RICO or to act unlawfully." *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *see also Black v. Ganieva*, 619 F. Supp. 3d 309, 331

35

(S.D.N.Y. 2022). "Individuals or entities that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law." *Id.* (cleaned up).

The FAC fails on this front, as it alleges only that the members of the alleged RICO enterprise were acting to promote their own "independent interests" and "discrete pecuniary objectives." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017). According to Plaintiffs: (a) the Schwitzer Defendants allegedly sought to obtain "higher settlement values (FAC ¶¶ 71, 278); (b) the Runner Defendants allegedly sought to receive "a portion of the proceeds from the high-interest loans provided by the Funding Defendants" (FAC ¶ 288); (c) the Medical Provider Defendants allegedly "profited from the increased number of patients who were referred to them … and received compensation for [their] services" (FAC ¶¶ 300, 308, 318, 345, 332, 340, 347, 255, 365, 372, 379, 386, 394, 401, 408); and (d) the Funding Defendants received renumeration from settlement proceeds (FAC ¶ 293).

There can be no association-in-fact enterprise where, as here, the alleged enterprise members each acted toward their own independent goals. *See Black*, 619 F. Supp. 3d at 331-32; *Moss*, 258 F. Supp. 3d at 300 (dismissing RICO claim where there were "no alleged facts that support an inference that the ACH Network entities were acting in any way but in their own independent interests") (cleaned up); *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 141-42 (S.D.N.Y. 2014) (no association-in-fact enterprise where plaintiff alleged that each defendant's participation was "to further its own business goals"), *aff'd in part, rev'd in part on other grounds*, *Babb v. Capitalsource, Inc.*, 588 Fed. Appx. 66 (2d Cir. 2015); *Contract Transp. Svcs., Inc. v. New Era Landing LLC*, No. 17-CV-8224, 2018 WL 11226077, at *4 (S.D.N.Y. Oct. 26, 2018) (no RICO enterprise "without claims that the alleged conspirators acted for the benefit of one another").

36

### 2. Plaintiffs Fail to Plead that Defendants Operated as a Continuing Unit.

To plead the existence of a RICO enterprise, "[i]t is not enough to include a laundry list of the individuals and entities that were connected…and somehow involved in…alleged schemes." *Contract Transp. Svcs.*, 2018 WL 11226077, at *4 (quotations omitted). Rather, a RICO plaintiff must provide the court with "solid information regarding the hierarchy, organization and activities of an alleged association-in-fact enterprise." *Moss*, 258 F. Supp. 3d at 301. In deciding a motion to dismiss, courts consider, among other things, whether the complaint describes "interpersonal relationships" among the enterprise members and "explains how they came to an agreement to act together or how they knew one another." *Black*, 619 F. Supp. 3d at 334 (quotation omitted).

The FAC is inadequate because Plaintiffs make absolutely no factual allegation that that Defendants ever spoke directly to or communicated with each other.[11] *Id.* (dismissing claim where "[t]here is no allegation of any meeting or communication among all [of the] enterprise members…[and]…scant allegations of any contact of any kind between" many of the alleged members). Nor do Plaintiffs show how, or even whether, the defendants even knew one another, much less that they worked together to advance a collective goal. *Id.*; *see, e.g.*, *Malek v. AXA Equitable Life Ins. Co.*, No. 20-CV-04885 (DG) (AYS), 2023 WL 2682408, at *15 (E.D.N.Y. Mar. 29, 2023) (dismissing RICO claim where plaintiff failed to plead how Defendants "communicated with one another, coordinated with one another or maintained interpersonal relationships"); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861 (MKB) (RML), 2021 WL 960394, at *9

---

[11] Plaintiffs' attempt to plead a relationship among the forty-two Defendants by alleging that ten Defendants occupy office space in the same building (FAC ¶74) is unavailing. First, Plaintiffs artificially inflate that number as, in each instance, Plaintiffs included in their analysis not only the named medical service practice but also the individually named defendant associated with that practice. Obviously, an owner/operator of an entity is going to work out of that entity's office. Second, the fact that five out of forty-two named Defendants occupy separate offices in the same building hardly rises to the level of a RICO enterprise. Finally, there is nothing inappropriate about multiple medical service providers operating out of different offices in the same building.

(E.D.N.Y. Mar. 15, 2021) (no enterprise absent allegations that Defendants "were aware of each other's existence, let alone that they agreed to participate with each other in a criminal enterprise"); *Contract Transp. Servs.*, 2018 WL 11226077, at *4 (no enterprise where "Plaintiffs make no allegations to suggest that Defendants have ever met or communicated with each other").

The FAC is also fatally flawed because the alleged enterprise structure is nothing more than a "hub and spokes…that other courts have consistently and correctly rejected." *Moss*, 258 F. Supp. 3d at 302 (cleaned up). The treatment of each of the "claimants" referenced in the FAC involves a different combination and subset of Medical Provider Defendants and, in some instances, other individuals who are not alleged to be part of the scheme. *See, e.g.*, FAC ¶ 156 (Aronova & Associates PLLC; Mr. Jared Rosenberg M.D.),[12] ¶ 166 (Dr. Krosowski), ¶ 187 (gatekeeper clinic), ¶ 222 (gatekeeper facility; Stand-Up MRI of the Bronx, P.C.; orthopedist, podiatrist, pain management specialist, spinal surgeon), ¶ 223 (Dr. Siddhartha Sharma), ¶ 258 (Dr. Jey Amohan), and ¶ 262 (gatekeeper clinics).

Critically, not one of the Medical Provider Defendants treated all four of the claimants at issue. The only defendants allegedly involved with all four claimants are the Schwitzer Defendants (or some subset of them). Thus, at best, Plaintiffs plead a hub (the Schwitzer Defendants) and spokes (the Medical Provider Defendants) enterprise without a unifying rim (a relationship or agreement among the Medical Provider Defendants). This is not a legally sufficient RICO enterprise. *See, e.g.*, *Rao v. B P. Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (allegations that involve "different actors for each event…[without indicating] how the different actors are associated … do not suggest a group of persons acting together for a common purpose or course

---

[12] Notably, after the accident at issue, Claimant A first consulted Aronova & Associates, who initiated Claimant A's Worker's Compensation Form, and first presented to Dr. Rosenberg—neither of whom are Defendants. FAC ¶156. Claimant A did not even consult with the Schwitzer Defendants until one month after the accident and after his Workers Compensation proceeding had been commenced.

of conduct"); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 275 (E.D.N.Y. 2013) ("when all the evidence shows is a series of similar but essentially separate frauds carried out by related entities— when those frauds are independent of one another; can be effective without the perpetration of any of the other frauds proven; provide no benefit or assistance to the perpetration of any of the other frauds proven; and in no way require coordination or collaboration among the actors perpetuating the fraud—then no RICO enterprise exists"); *Cedar Swamp Holdings*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) (describing "hub and spokes structure" as "allegations that a common defendant perpetrated various frauds, each with the aid of a different co-defendant" and noting that such allegations "do not satisfy the enterprise element of a RICO claim"); *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (enterprise not established where "it appears at worst that several borrowers each committed a similar but independent fraud with the aid of a particular lender, and that each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower").

Plaintiffs' "inclusion of non-defendants in the alleged [enterprise] is [further] emblematic of a 'hub and spokes' enterprise structure …." *Moss*, 258 F. Supp. 3d at 302. The FAC alleges that unidentified "Runner Defendants" and "Funding Defendants" were critical to the purported enterprise in that the former recruited the "claimants" and the latter secured funding for the legal proceedings brought by the Schwitzer Defendants. FAC ¶¶ 49-55. Allegations of an enterprise are insufficient where, as here, they involve a "host of unspecified individuals", thereby leaving "a plethora of unanswered questions regarding the membership, purpose, and structure of that entity." *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 474-76 (E.D.N.Y. 2007).

**3.    Plaintiffs Fail to Allege an Enterprise Separate and Apart from the Pattern of Racketeering Activity.**

Even assuming, *arguendo*, that Plaintiffs adequately pled the existence of an enterprise (they did not), their RICO claim fails because they did not allege that the enterprise is "separate from the pattern of racketeering activity." *First Capital*, 385 F.3d at 173; *see Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999). It is well-settled that:

> [t]he enterprise cannot simply be the minimal association which surrounds the pattern racketeering acts.…[T]he members of the group as a whole must have a common link other than the racketeering activity. Thus, in assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist were the predicate acts removed from the equation.

*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 40-01 (S.D.N.Y. 2000) (cleaned up).

A RICO claim should be dismissed where "[t]here is no allegation …of what activity, if any, the alleged enterprise ever engaged in *other than* the alleged predicate acts." *Id.* at 401 (emphasis added).

Plaintiffs here "have not alleged an ascertainable structure distinct from that inherent in the alleged pattern of racketeering." *Black Radio Network*, 44 F. Supp. 2d at 581. Instead, they allege only that "Defendants, together with others known and unknown, for their financial benefit, orchestrated a widespread fraud to defraud Plaintiffs and others …" FAC ¶ 56. Since this "alleged enterprise…would not still exist were the predicate acts removed from the equation", the FAC is fatally defective. *Goldfine*, 118 F. Supp. at 401 (no enterprise where plaintiff "unequivocally stated" that "[t]he purpose of the enterprise was to obtain monies from Plaintiffs under false pretenses").

### D.      Plaintiffs Fail to Allege a RICO Conspiracy.

"[A] RICO conspiracy claim will not survive a motion to dismiss where the pleading alleges no facts to show specifically that the defendants had any meeting of the minds in the alleged violations." *JGIAP RH 160 LLC v. CRI Holding Corp.*, No. 21-CV-02489 (DG) (JRC), 2023 WL 5979125, at *16 (E.D.N.Y. Aug. 16, 2023) (citations omitted). "Conclusory allegations that defendants agreed among themselves to violate RICO" are insufficient. *Id.* at *50. Instead, the plaintiff must plead allegations of "knowledge and agreement," supported by particularized facts. *See id.*

Here, Plaintiffs' RICO conspiracy claim must be dismissed, as they fail to plead specific facts about the Defendants' knowing agreement to engage in a conspiracy. *See Aghaeepour v. Northern Leasing Sys., Inc.*, 763 F. Supp. 3d 580, 593 (S.D.N.Y. 2025) (dismissing fraud-based RICO conspiracy claim because there were insufficient allegations regarding the formation of the conspiracy or how it would be executed). There is no allegation of coordinated conduct nor any factual support for a plausible inference of conspiratorial intent. Instead, Plaintiffs rely on threadbare, boilerplate allegations, which courts routinely reject as insufficient to support a RICO conspiracy claim.

Plaintiffs allege that Defendants "knowingly profited" from reimbursements and/or referrals. *See* FAC ¶¶ 300, 308, 317-18, 324-25, 331-32, 339-40, 346-47, 354-55, 364-65, 371-72, 378-79, 385-86, 393-94, 400-01, 407-08. But as the Second Circuit has made clear, to survive a motion to dismiss a RICO conspiracy requires plaintiffs to allege a conscious agreement to pursue a shared, unlawful objective. *See Burke v. Dowling*, 944 F. Supp. 1036, 1068 (E.D.N.Y. 1995). A desire to earn income is not sufficient. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d

41

406, 423 (E.D.N.Y. 2017) (holding "allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)") (citation omitted).

### E.    Plaintiffs' RICO Claims are Barred by the Statute of Limitations.

A plaintiff must bring a civil RICO claim within four years from when the claim accrued, regardless of when the predicate acts that form the basis of the claim occurred. *Agency Holding Corp.*, 483 U.S. at 150-51. The Supreme Court in *Agency Holding Corp.* did not determine when the four-year period begins to accrue, and thus, different approaches have emerged among the circuits.

The Second Circuit applies a "discovery accrual rule" to determine when the limitation period starts to run. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013). Pursuant to the discovery accrual rule, the limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury. *Id.*

In determining when the plaintiff should have discovered the RICO injury, the Court may consider evidence of "storm warnings," which are circumstances that would suggest to a person of ordinary intelligence that he or she has been defrauded. *Rosenshein v. Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017); *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012); *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994).

Here, Plaintiffs commenced this action on June 16, 2025. ECF 1. Accordingly, as a matter of law, Plaintiffs can only allege RICO claims that accrued after June 16, 2021. However, Plaintiffs' allegations evidence "storm warnings" dating as far back as 2018—meaning, Plaintiffs' RICO claims are time-barred in their entirety. *See, e.g., In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (affirming dismissal of RICO claims based on, among other things, statute of limitations due to inquiry notice).

First, Plaintiffs allege that the Schwitzer Defendants, which were "coordinat[ing] and pursu[ing] fraudulent claims with the other Defendants since at least 2018," were sued in 2018 for, among other things, civil RICO, conspiracy and unjust enrichment. FAC ¶¶ 95, 128; *see In re Integrated Res., Inc. v. Integrated Res. Equity Corp.*, 851 F. Supp. 556, 567 (S.D.N.Y. 1994) (stating that storm warnings may come in the form of "other lawsuits alleging fraud committed by the defendant").

Second, Plaintiffs allege that, in 2018, as part of a different action involving allegations of fraudulent medical billing, Dr. Lerman (a defendant in this action) gave sworn testimony confirming the "interrelated connection" between two Medical Provider Defendants. FAC ¶ 77; *see Nathel v. Siegal*, 592 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) ("storm warnings" include court filings).

Third, Plaintiffs allege that, beginning in 2018, Roosevelt began to incur "progressively rising" general liability claim adjustment expenses due to the alleged fraud, which required it to "hire and retain additional personnel specifically to address fraudulent claims beyond the normal scope of business." FAC ¶ 518.

While any of these storm warnings should have caused Plaintiffs to discover the alleged injury, collectively they indisputably compelled further investigation into the alleged fraud. This is especially true as to the impact the alleged fraud had on Plaintiffs' businesses, which Plaintiffs themselves allege reflected a rise in costs. *See Lorber v. Winston*, 962 F. Supp. 2d 419, 443 (E.D.N.Y. 2013) (reasonable person would have begun to inquire about the state of her finances, as person she entrusted to oversee them had just been convicted of fraud); *see also Dodds*, 12 F.3d at 347 (holding that investor was on inquiry notice for purpose of triggering statute of limitations when provided prospectuses that disclosed that certain investments were "risky" and "illiquid").

43

Plaintiffs were on inquiry notice within weeks of Claimants' filing their workers compensation claims. To explain, an employer must report any workplace injuries to its carrier within ten days if the accident required medical treatment beyond first aid or loss of work beyond one day. *See* N.Y. Workers' Comp. Bd., Understanding the Claims Process, available at https://tinyurl.com/4c5cynua (last visited October 28, 2025). The insurer is then required to begin the payment of benefits within eighteen days from the employer's report if the worker experiences more than seven days of lost time—a requirement that would have been triggered in the exemplar cases involving significant medical treatments. *Id.* Moreover, by Plaintiffs' own admission, claims must be paid or objected to within 45 days, which obviously required them to investigate the claims. *See* N.Y. Work. Comp. L § 13-G(1); FAC ¶ 499. Because Plaintiffs should have known of, or at least investigated, any alleged fraud when the workers' compensation claims were commenced, any claims filed more than four years ago before this action commenced are time-barred and must be dismissed.

## POINT III

### THE COURT SHOULD DISMISS
### PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF

Count VII of the FAC seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. FAC ¶¶ 582-85. Specifically, Plaintiffs request a declaration that: (i) Defendants "have submitted claims and bills to Plaintiffs for staged accidents and unnecessary healthcare services in violation of New York law"; (ii) Defendants' alleged "activities are unlawful"; and (iii) "Plaintiffs have no obligation to pay any pending, previously denied, and/or future workers' compensation or general liability insurance claims submitted by the [Defendants]." *Id.* This catchall claim should be dismissed as a matter of law.

The Declaratory Judgment Act vests the Court with broad discretion to adjudicate—or decline to adjudicate—such claims. The Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added). The Second Circuit has long recognized that dismissal is appropriate where a declaratory judgment "will [not] serve a useful purpose in clarifying or settling the legal issues involved." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

That is the case here. Plaintiffs' declaratory judgment claim merely alleges that Defendants are not entitled to payment because of the "fraudulent conduct" alleged in the FAC—*i.e.*, because of their alleged participation in the conduct underlying the RICO claims. FAC ¶ 585. Thus, Plaintiffs' declaratory judgment claim is wholly duplicative of the RICO claims, serves no useful purpose, and should be dismissed. *Tang Cap. Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 77 (S.D.N.Y. 2023) ("Courts frequently find that a declaratory judgment will not serve a useful purpose when the claim is duplicative of another claim in the same action"); *Koch v. Rodenstock*, No. 06-CV-6586 (BSJ) (DF), 2012 WL 5844187, at *13 (S.D.N.Y. May 9, 2012) (dismissing declaratory judgment claim as duplicative of fraud claim). Separately, the declaratory judgment claim should be dismissed because, once Plaintiffs' RICO claims fail, this Court lacks jurisdiction. *See Subin*, 2025 WL 1713109, at *8 (dismissing claim for declaratory relief following dismissal of RICO claims because "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction") (quoting *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006)).

45

## POINT IV

**THE COURT SHOULD DECLINE TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**

The Court should dismiss Counts III, IV, V, and VI of the FAC, asserting claims for fraud, aiding and abetting fraud, unjust enrichment, and violations of GBL § 349, respectively. Because Plaintiffs have no viable state law claims (*see* Point V, *infra*, the Court need not reach supplemental jurisdiction at all. But even assuming Plaintiffs' state law claims could survive the pleading stage, the Court should dismiss them for lack of subject matter jurisdiction once Plaintiffs' federal claims are dismissed. *See First Capital*, 385 F.3d at 182-83 (affirming decision to decline supplemental jurisdiction after dismissal of RICO claims).

Supplemental jurisdiction depends entirely on the viability of Plaintiffs' federal claims—namely, Counts I and II. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (district court abused its discretion by exercising supplemental jurisdiction over state-law claims for breach of contract and violation of GBL § 349); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (dismissing state claims once federal claims were dismissed). Once all federal claims are dismissed, federal courts will retain jurisdiction over the pendent state law claims only under "exceptional circumstances." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("'[T]he Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction'") (cleaned up)). This is an exceedingly high standard, requiring—at the very least—"a clearly articulated federal interest" in resolving the state law claims. *Kolari*, 455 F.3d at 123. There is no such interest here, because the claims in question are run-of-the-mill, common-law fraud and unjust enrichment claims, along with a tack-on claim arising under a state statute. *See* FAC ¶¶ 546-81. Plaintiffs can

46

point to no "exceptional circumstances," and all four relevant factors—judicial economy, convenience, fairness, and comity—weigh heavily against retaining jurisdiction. *See Cohill*, 484 U.S. at 350 n.7. On similar facts, courts routinely decline supplemental jurisdiction over state law claims after dismissing RICO claims. *See Zuhovitzky v. UBS AG*, No. 23-CV-1184, 2024 WL 2130838, at *2 (2d Cir. May 13, 2024) (affirming lower court "declining to exercise supplemental jurisdiction over the state law claims after the RICO claims had been dismissed."); *Satinwood*, 385 F.3d at 182-83 (similar); *Merrill Lynch*, 154 F.3d at 61 (similar); *Subin I*, 2025 WL 1713109, at *8 (similar).

## POINT V

## PLAINTIFFS' STATE LAW CLAIMS MUST FAIL

Even if this Court were to entertain supplemental jurisdiction over Plaintiffs' state law claims, those claims are not sufficiently pleaded and should be dismissed.

### A. Plaintiffs Fail to Plead the Requisite Elements of Common Law Fraud.

Claim III of the FAC alleges that the Schwitzer Defendants and Medical Provider Defendants committed common law fraud by making misrepresentations "in connection with their claims for compensation and/or payment under New York law" by "asserting the legitimacy of accidents, the existence of injuries and the necessity of treatment." (FAC ¶¶ 547, 548). Claim IV alleges that all defendants are liable for aiding and abetting the fraud alleged in Claim III. (FAC ¶ 559). Plaintiffs are thus basing their common law fraud claim upon purportedly false statements that were made not to the Plaintiffs, but rather to third parties (namely, to various courts, litigants and the WC Board). Such a claim does not adequately allege fraud under New York law.

To plead a claim for fraud in New York, the plaintiff must sufficiently plead five elements: (1) a misrepresentation or a material omission of fact; (2) which was false and was known to be

47

false by the defendant; (3) made for the purpose of inducing the other party to rely upon it; (4) justifiable reliance of the other party on the misrepresentation or material omission; and (5) injury. *See Pasternack v. Laboratory Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016); *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). The third and fourth elements are not met where, as here, plaintiffs base their claim upon representations that were made to third parties with the intention of inducing action by those third parties. Third-party reliance does not meet the test for common law fraud in New York.

In *Pasternack*, the New York Court of Appeals answered in the negative a certified question (from the Second Circuit) whether the element of reliance is satisfied by a plaintiff alleging an injury that was caused by a defendant making false statements to a third party. *Pasternack*, 27 N.Y.3d at 828-29. The Court determined that fraud directed toward a third party, and intending to induce that third party to take some action, did not constitute fraud that is actionable by the plaintiff, even if it resulted in harm to the plaintiff, because the element of reliance had not been satisfied. *Id.* Even before *Pasternack*, lower courts in New York had similarly refused to permit fraud claims that were based upon misstatements seeking to induce action by a third party. *See, e.g., Pope v. Saget*, 29 A.D.3d 437, 442 (1st Dep't 2006) ("plaintiffs fail to show that these misrepresentations were made to them or their agents"); *Wildenstein v. 5H&Co. Inc.*, 97 A.D.3d 488, 490 (1st Dep't 2012) (a plaintiff "[g]enerally…cannot claim reliance on misrepresentations a defendant made to third parties" to establish a fraud claim); *Mid Atl. Framing, LLC v. Varish Const., Inc.*, 117 F. Supp. 3d 145, 152-54 (N.D.N.Y. 2015) ("Plaintiff has not sufficiently stated a claim for common law fraud by pleading damages resulting from the

reliance of a third party"). So, the very theory of fraud that underlies Claim III has been rejected by New York's highest court.[13]

Because both New York and federal courts impose the same heightened pleading requirement for fraud (compare N.Y. CPLR 3016 with Rule 9(b)), the common law fraud claim must be pleaded with the same specificity as the RICO claims. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). Plaintiffs' failure to plead the RICO fraud predicates with particularity, as discussed above (*see* Point II(A)(1), *supra*), is equally fatal to their common law fraud claim.

And, in New York, an aiding and abetting claim does not stand alone. It cannot survive as an independent cause of action where, as here, the substantive fraud claim, on which it is based, fails. *See Alliance Network, LLC v. Sidley Austin LLP*, 987 N.Y.S. 2d 794 (Sup. Ct., N.Y. Cnty. 2014). Thus, Count IV should be dismissed too.

### B. Plaintiffs Fail to Allege a Cognizable GBL 349 Claim.

Claim VI, a consumer protection claim asserted under General Business Law § 349, is subject to dismissal for at least two reasons.

First, the claim is time-barred. Claims brought under GBL § 349 are subject to a three-year statute of limitations, accruing "when [a] plaintiff has been injured by a deceptive act or practice." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001); *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 228 (E.D.N.Y. 2011). Therefore, unless this GBL § 349

---

[13] Where a defendant has made a false statement to a third party, merely intending to use that party as a conduit to communicate the statement directly to the plaintiff, a cause of action in fraud may be recognized in favor of the plaintiff. *Red Mt. Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 174 (S.D.N.Y. 2021). That very limited exception does not apply here, where Plaintiffs allege false statements (made to the WC Board and in court proceedings) made not as mere conduits to Plaintiffs, but rather for the purpose of obtaining favorable outcomes in those proceedings. *See* FAC ¶56. Moreover, Plaintiffs allege that the nature of those proceedings did not permit Tradesman to review individual court documents before making underwriting decisions, and that Tradesman merely assumed the validity of all documentation "regardless of truth, falsity or any descriptor along that spectrum." FAC ¶¶ 509, 510. Thus, the FAC itself undermines any claim of reliance by Plaintiffs.

claim was brought within three years of the date Plaintiffs were first injured, it is untimely. According to the FAC, the Defendants' alleged fraud scheme has been ongoing "[f]rom at least 2018 to the present." FAC ¶ 56. This means that a claim under GBL § 349 should have been brought some time in 2021, within three years of Plaintiffs suffering the effects of the first adjudication of an allegedly bogus accident case. Instead, the claim was filed on June 16, 2025—four years too late.

Second, the allegations in the FAC fail to satisfy all of the elements of a GBL § 349 claim. Those elements are: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or conduct was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception. *Himmelstein, McConnell, Gribben, Donohue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021). The conduct alleged in the FAC is not "consumer-oriented," and did not impact "consumers" as those terms are used in the General Business Law.

The type of consumer deception that is remediable by GBL § 349 "requires a probability that a significant proportion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024). Here, the FAC does not identify any "consumers" at all who were targeted by the alleged deceptions. Certainly, the clients and patients of the Schwitzer Defendants and Medical Provider Defendants are not deceived consumers; the FAC accuses those client/patients of being complicit in the alleged scheme. The WC Board is not a consumer, and neither are the parties or court officials in the various courts in which accident claims were litigated. Nor can the plaintiff reinsurer and managing agent credibly call themselves "consumers." *See Benetech, Inc. v. Omni Fin. Group, Inc.*, 116 A.D.3d 1190, 1191 (3d Dep't 2014) ("consumers" are "those who purchase goods and services for personal, family or household use").

Furthermore, making misrepresentations about medical treatment is not regarded as "consumer-oriented" conduct under New York law. *Nadler v. Samadi*, 188 A.D.3d 537, 538 (1st Dep't 2020) ("misrepresentations…made to plaintiff…and similarly situated patients about who would or did operate on them do not describe consumer-oriented conduct"); *Heisler v. Advanced Dermatology of N.Y., P.C.*, No. 805326/2017, 2023 WL 1795729, at *4 (Sup. Ct., N.Y. Cnty. 2023) (making false claims of professional competence to multiple patients does not violate GBL § 349). To qualify as "consumer-oriented conduct," medical treatment "must demonstrate an impact on consumers at large – something that a physician's treatment of an individual patient typically does not have." *Karlin v. IVF Am. Inc.*, 93 N.Y.2d 282, 294 (1999). This is why actionable claims against medical providers under GBL § 349 generally involve accusations of false advertising or deceptive mass marketing to the public. *See id.* at 293 ("multi-media dissemination of information to the public"); *see also Himmelstein*, 37 N.Y.3d at 169 (manual marketed to the public). No such claim is asserted here.

The GBL § 349 claim must be dismissed.

### C. The Unjust Enrichment Claim Must be Dismissed.

In Count V, Plaintiffs assert a claim for unjust enrichment against the Schwitzer and Medical Provider Defendants, based upon fraud allegations incorporated by reference from their earlier claims. FAC ¶ 564. No additional facts are alleged to support this claim, beyond what is alleged to support the fraud-based claims. For this reason, Claim V is subject to dismissal under New York law as duplicative.

To sustain an unjust enrichment claim, a plaintiff must establish three elements: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448

F.3d 573, 586 (2d Cir. 2006). Such a claim is "available only in unusual cases" and "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y. 3d 777, 790 (2012). It is not available when it "simply duplicates, or replaces, a conventional contract or tort claim." *Id.*

Here, Count V is entirely based upon the allegations of wrongdoing that have been asserted in the RICO and common law fraud claims, and which are incorporated by reference into the unjust enrichment claim. Indeed, Plaintiffs allege that the very enrichment they seek to recapture from the Defendants occurred "as a proximate result of the unlawful conduct detailed above." FAC ¶ 569.

This is a quintessential example of duplicative pleading. This claim should be dismissed.

## POINT VI

### THE McCARRAN-FERGUSON ACT REQUIRES DISMISSAL OF ALL RICO COUNTS

The McCarran-Ferguson Act ("MFA") compels dismissal of FAC Counts I, II and VII since Plaintiffs' RICO claims undermine the comprehensive insurance coverage regime of the WCL.[14] The MFA preempts a federal statute's application to a state's comprehensive insurance statutory regime if, (1) the federal statute does not specifically relate to the business of insurance, (2) the challenged conduct constitutes the business of insurance, (3) the state has enacted laws to regulate the same aspect of its insurance industry that the federal law would implicate, and (4) the federal statute would invalidate, impair, or supersede the state statute. The MFA compels

---

[14] The MFA provides that, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

preclusion here, since Plaintiffs seek relief that undermines the WCL and nullifies its comprehensive statutory regime.

The first element of MFA preclusion is clearly met since the Supreme Court has already held that "RICO is not a law that "specifically relates to the business of insurance." *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999). The second element of MFA preclusion is also met since the challenged conduct involves the business of insurance, which is firmly established upon review of the Plaintiff reinsurer's allegations that payments were made under insurance and reinsurance policies as the result of allegedly manufactured workplace accidents and non-existent or exaggerated injuries. *See, e.g.*, FAC ¶¶ 56-149.

The third element of MFA preclusion is met since Plaintiffs seek to undermine the jurisdiction of the established, comprehensive and autonomous regulatory regime of the WCL. All workers' compensation insurance carriers operating in the state of New York must operate their businesses within the comprehensive, self-contained no-fault insurance system created under the WCL. However, the FAC's RICO claims seek to invalidate and supersede virtually every aspect of New York's workers' compensation insurance system, and as such those claims are precluded by the MFA. New York's comprehensive regulatory scheme establishes the WC Board as an agency within the New York State Department of Labor. With primary jurisdiction, the WC Board has exclusive authority to: (1) operate an administrative adjudicatory facility to determine the value and coverage of claims made by injured workers (WCL §§ 20, 140-142); (2) enforce every employer's legal requirement to purchase workers compensation insurance from an approved insurer (*id.* §§ 50, 52, 131); (3) set insurance premium rates and coverage terms (*id.* §§ 89, 108, 135); (4) determine the necessity of patient treatment (*id.* §§ 141-142); (5) determine which medical professionals can provide care to injured workers, determine non-surgical and surgical

53

care for each claimant, and the fee schedule for all medical services (*id.* §§ 13-15; 12 NYCRR §§ 300, 325, 328 and 329); (6) determine whether workplace injuries will be covered (WCL § 18); (7) investigate employers who do not purchase coverage from authorized insurers, issue penalties and stop-work orders for non-compliant employers and refer such employers for criminal prosecution for failing to purchase coverage or pay the premiums (*id.* § 52); (8) penalize insurers that fail to comply with WC Board decisions (*id.* § 25); (9) punish medical providers for certain conduct (*id.* §§ 13(b), 142, 142(a)); (10) determine disability classifications and insurance valuation methods (*id.* §§ 2(9),10, 15, 16, 17, 20, 37-39; 12 NYCRR §§ 300, 325, 329 and 332); and (11) operate a comprehensive state agency with staff that include insurance specialists, physicians, administrative judges, a special investigations unit, attorneys, auditors, and a Fraud Inspector General's office with authority to make a direct referral to the Attorney General for any violation of the New York State Penal Law. WCL §§ 141-142. Moreover, insurers have an opportunity to challenge the legitimacy of claims, contest the necessity of the treatments, and withhold payments. *Id.* § 25(2)(b). Insurers can further request an independent medical examination by a different doctor. *Id.* §§ 13-a(4)(b), 137. Lastly, New York State established a multi-tiered appeal process for workers' compensation claims where litigants can appeal any administrative judge's decision to the WC Board before seeking judicial review in the Third Department, which is deemed an appellate court with "specific expertise to deal with the complexity" of the WCL. *Empire Ins. Co. v. Workers' Comp. Bd*, 607 N.Y.S. 2d 675, 676 (1st Dep't. 1994); *see also* WCL § 23.

Fourth, Plaintiffs' RICO claims would invalidate the purpose and operation of the streamlined claims adjudication of the WCL, by the introduction of protracted and highly complex federal litigation. In *Humana,* the Supreme Court held, "the term "invalidate" ordinarily means to

"render ineffective, generally without providing a replacement rule or law"; the term "supersede" ordinarily means to "displace (and thus render ineffective) while providing a substitute rule"; and the term "impair" means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." *Humana,* 525 U.S. at 307.

The streamlined, self-contained and autonomous system created by the WCL binds all workers compensation insurers and was enacted to impose substantial compromises in the compensation paid to injured workers, and thereby limit the insurers' liabilities under this administrative no-fault insurance regime. "A cornerstone of the workers' compensation framework is a tradeoff: the employee is afforded swift and sure compensation and the employer is assured that its workers' compensation liability to its employee shall be exclusive and in place of any other liability whatsoever." *Dumervil v. Port Auth. of N.Y. & N.J.*, 163 A.D.3d 628, 629 (2d Dep't 2018) (internal quotations omitted). "In exchange for the security of knowing that fixed benefits will be paid without the need to resort to expensive and sometimes risky litigation...the employee has been asked to pay a price in the form of the loss of his common-law right to sue his employer in tort and perhaps to enjoy a more substantial recovery through a jury award." *Id.*

The New York Court of Appeals recognized the WC Board's primary jurisdiction when considering a lower court's order that would have had the effect of circumventing the WC Board's authority. The court held that "primary jurisdiction with respect to determinations as to the applicability of the Workers Compensation Law has been vested in the Workers Compensation Board and...it is therefore inappropriate for the courts to express views with respect thereto pending determination by the board." *Botwinick v. Ogden*, 59 N.Y.2d 909, 911 (1983); *see also Matter of Kigin v. State of N.Y. Workers' Compensation Bd.*, 24 N.Y.3d 459 (2014) (providing in-depth overview and analysis of WC Board's rulemaking powers with regard to determinations of medical

necessity and reimbursement rates); WCL §13-a(3); (outlining the procedures by which an employer may seek to have an employee treated by a different physician, as well as the procedures by which the original physician may challenge the transfer directive). Moreover, the N.Y. Workers' Comp. Law substantially controls the insurers' duty to indemnify through its "scheduled loss" means of valuing injuries. *See Burlew v. American Mut. Ins. Co.,* 63 N.Y.2d 412, 415 (1984) (explaining that insurance carriers are protected from litigation arising from alleged delays in processing workers compensation claims because the New York Workers' Compensation Law is the exclusive remedy for such damages); *see also Kirkup v. American Int'l Adjustment Co*., 160 A.D.2d 676 (2d Dep't 1990) (same, with regard to the denials of workers compensation claims).

Plaintiffs' efforts to re-adjudicate facts and determinations that were subjected to multi-tiered layers of investigation, fact-finding, claims administration, administrative adjudication, independent medical review and appeals would invalidate the facilities and jurisdiction of the WC Board and substitute the WC Board's primary jurisdiction. It would, in effect, circumvent the WC Board's authority.

Plaintiffs' allegations make clear that their RICO theory is premised on relitigating the findings of the WC Board and its Administrative Law Judges. However Plaintiffs already had the opportunity to investigate and challenge each claim within the extensive Workers Compensation Board process. For example, Plaintiffs assert that insurance payments were made based on "fraudulent claim documents" regarding medical records and workplace accidents in the underlying proceedings (FAC ¶¶ 175-177, 203-206, 242–245, 266-267)—the same evidence considered in the workers' compensation cases. To permit Plaintiffs to relitigate those same facts in a federal RICO action would effectively create a new layer of judicial review and a new appellate venue, beyond what the N.Y. Workers' Comp. Law provides. The FAC's RICO claims

would supersede (not supplement) New York's comprehensive and autonomous control of the insurance coverage, medical care and claimant compensation regime for workplace injuries.

In *Stephens v. American International Insurance Co.*, 66 F.3d 41 (2d Cir. 1995), the court confronted insurers that had been declared insolvent under the Kentucky Insurers Rehabilitation and Liquidation Law, which was a comprehensive and self-contained statutory and regulatory body of law which prohibited arbitration of claims incident to an insolvency. Nevertheless, based on the mandatory arbitration clauses in their reinsurance contracts, certain creditor reinsurers commenced actions to compel arbitration of unpaid insurance claims and uncredited premiums under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* (1994), and despite each subject insurance contract's inclusion of a mandatory arbitration provision, the court found the existence of the comprehensive framework of the Kentucky Insurers Rehabilitation and Liquidation Law to be fatal when applying the MFA. *See Nat'l Union Fire Ins. Co. v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 486 (S.D.N.Y. 2017) (declining to apply certain provisions of the Federal Arbitration Act, noting that those provisions invalidated, superseded, or impaired the pertinent state statutes governing arbitration of claims for workers compensation); *see also Sabo v. Met. Life Ins. Co.*, 137 F.3d 185 (3d Cir. 1998) (court dismissed RICO claims, finding that Pennsylvania's Unfair Insurance Practices Act was comprehensive and empowered the state's insurance commissioner with sufficient authority to address the facts underlying the precluded RICO claims under those state laws). As in *Stephens*, *Nat'l Union* and *Sabo*, the MFA precludes the use of RICO to essentially displace the comprehensive statutory and regulatory regime of the WCL.

The FAC's RICO claims attribute all damages to the conduct of these Defendants, without disclosing that Plaintiffs made almost identical claims for the same damages in at least two other

cases in this district.[15]   So, not only do these insurers seek to be relieved of the laws and regulations that control the claims administration that was had with the Defendants, but they will require the Court to parse, trace and isolate the damages alleged in the FAC from the RICO claims in two other matters. This is exactly the "expensive and sometimes risky litigation" that the WCL was enacted to preclude insurers from doing. If the FAC's RICO claims are not precluded by the MFA, the Plaintiff insurers would have the Court preside over the same multiple years'-worth of fact-finding and determinations as the WC Board, applying RICO instead of the WCL, thus rendering its application a nullity as to all insurance claims implicated by causes of action pleaded in the FAC.  The Defendants have, within the scope of their respective professions, prosecuted claims, treated patients, attended multiple administrative proceedings, participated in the WC Board's medical reviews, attended numerous depositions and participated in peer medical reviews – all pursuant to the WCL, with the expectation that the insurers would be bound to the same laws. The MFA precludes Plaintiffs from subverting that process.

Preclusion of Count VII (seeking a declaratory judgment) under the MFA is even more compelling.  Not only should Count VII be dismissed upon dismissal of the RICO claims, but Plaintiffs seek declaratory relief from claims that are pending before the WC Board, which portends a nullification of the WC Board's primary jurisdiction with the palpable substitution of this Court's jurisdiction over claims that are presently subject to the WCL.

Therefore, Counts I, II and VII should be dismissed as to all Defendants with prejudice.

---

[15] *Roosevelt Road Re, Ltd. et al. v. Liakas Law, P.C. et al.*, 1:25-cv-0300 (Vitaliano, J.) (ECF 63); *Roosevelt Road Re, Ltd. et al. v. Hajjar et al.*, 24-cv-01549-NG-LB (ECF 79).

## POINT VII

### THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION BASED ON THE *BURFORD* DOCTRINE

The Court should decline to exercise jurisdiction over this action pursuant to the *Burford* abstention doctrine, as articulated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

While federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them," the Supreme Court has recognized several exceptions to this rule and fashioned several "abstention doctrines" in the process. *See Bethpage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1242 (2d Cir. 1992) (internal citations omitted). One of these well-established "abstention doctrines" was announced by the Supreme Court in *Burford*. The *Burford* abstention doctrine "permits a federal court, in the exercise of its discretion, to relinquish jurisdiction where necessary to avoid needless conflict with the administration by a state of its own affairs." *Surowitz v. N.Y.C Emp. Ret. Sys.*, 376 F. Supp. 369, 376 (S.D.N.Y. 1974).

The purpose of *Burford* abstention is to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988); *see Bethpage*, 965 F.2d at 1242 (*Burford* abstention applies where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern").

The Court here should abstain from exercising jurisdiction under *Burford* because the WCL is a highly comprehensive and complex state regulatory system governing the matters implicated by this action. Indeed, in *Liberty Mutual Insurance Company v. Hurlbut*, the Second Circuit, in affirming the District Court's abstention under *Burford*, emphasized that, "[t]he WCL is a

59

reticulated statute that governs a complex system designed to benefit the interests of employer and employee in the State of New York … [t]he WCL establishes an integrated system … [i]t is a statute with a high level of specificity … federal court intervention [would] be disruptive of a carefully established state system ….” 585 F.3d 639, 650-51 (2d Cir. 2009).

Moreover, the Court should apply the *Burford* abstention doctrine because the WCL affords insurance companies alternative methods through a forum to review and challenge submitted claims in front an administrative judge, with options to appeal those decisions to the WCB which has continuing jurisdiction to review “former findings, awards, decisions or orders ….” *See* N.Y. WCL §§ 19-20, 25(2), 123. Additionally, to the extent that fraud is suspected, the WCL provides authority to both the New York Attorney General and the Workers’ Compensation Fraud Inspector General to investigate and pursue those claims. *See id.* §§ 132, 136.

Accordingly, this Court should abstain from exercising jurisdiction pursuant to the *Burford* abstention doctrine.

## CONCLUSION

For all the foregoing reasons, the FAC should be dismissed, with prejudice and without leave to replead.


RUSKIN MOSCOU FALTISCHEK P.C.

*/s/ Norman Cerullo*
Norman Cerullo
Rachel Morgenstern
Matthew Finegan
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556
(516) 663-6600

*Counsel for Interventional Pain Management & Rehab., P.C. and Vadim Abramov, M.D.*

PETRILLO KLEIN + BOXER LLP

*/s/ Guy Petrillo*
Guy Petrillo
Christina Karam
David Hoffman
655 Third Avenue, 12th Floor
New York, New York 10017
(212) 370-0330

*Counsel for Thomas M. Kolb, MD and Kolb Radiology P.C*

60

COVINGTON & BURLING, LLP

/s/ Alan Vinegrad
Alan Vinegrad
Megan Mers
30 Hudson Yards
New York, New York 10001
(212) 841-1000

*Counsel for Defendants Mehrdad Golzad and NYC Medical & Neurological Offices, P.C.*

GARFUNKEL WILD, P.C.

/s/ Justin Vogel
Justin Vogel
Joshua M. Zarcone
Michael J. Keane Jr.
Vasilios D. Lolis
Alexandra Wolff
900 Stewart Avenue, 4th Floor
Garden City, New York 11530
(516) 392-2200

*Counsel for Defendants BL Pain Management, P.L.L.C., Pain Physicians NY PLLC, LR Medical, P.L.L.C., Boleslav Kosharskyy, M.D., Demetrious Koutsospyrous, M.D., Orthopaedics Spine & Sports Medicine LLC d/b/a Total Orthopaedics & Sports Medicine, Vadim Lerman, D.O., Katzman Orthopedics P.C., and Barry Katzman, M.D.*

PETER BIRZON & ASSOCIATES, P.C.

/s/ Peter Birzon
Peter Birzon
400 Jericho Turnpike, Ste. 100
Jericho, New York 11753
(516) 942-9100

*Counsel for McCulloch Orthopaedic Surgical Services, P.L.L.C. and Kevin Wright, M.D.*

GARY TSIRELMAN P.C.

/s/ James Moss
James A. Moss
129 Livingston St., 2nd Fl.
Brooklyn, New York 11201
(718) 438-1200

*Counsel for Brooklyn Medical Practice, P.C., Todd Lawrence Lebson, D.C., North Shore Family Chiropractic, P.C., Sayeedus S. Salehin, M.D., Unicorn Acupuncture, P.C., Dekun Wang, L.Ac., Richard Apple, M.D. and Big Apple Pain Management P.L.L.C.*

WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP

*/s/  Jessica Baquet*
Jessica Baquet
Phil Campisi
Annie Kubic
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

*Counsel for Defendants Alexandre B. de Moura, M.D., P.C. d/b/a New York Spine Institute and Alexandre B. de Moura, M.D.*


LAW OFFICE OF MICHAEL L. SOSHNICK

*/s/   Michael Soshnick*
Michael L. Soshnick
170 Old Country Rd, Suite 307
Mineola, NY 11105
(516) 294-1111

*Counsel for Defendants All County Foot and Ankle LLP  and Gianni Persich M.D.*

THE CARMAN LAW OFFICE

*/s/  John Carman*
John Carman
666 Old Country Road, Ste. 501
Garden City, New York 11530
(516) 683-3600

*Counsel for William Schwitzer & Associates, P.C., William Schwitzer, and Giovanni "John" C. Merlino*

## <u>WORD COUNT CERTIFICATION</u>

I, Rachel Morgenstern, an attorney admitted to practice before the United States District Court for the Eastern District of New York, certify, in accordance with and pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, as supplemented by the Court's October 10, 2025, October 24, 2025 and November 3, 2025 Orders, that the foregoing Joint Brief in Support of Defendants' Motions to Dismiss, dated November 14, 2025, contains 19,345 words, exclusive of the table of contents, table of authorities, caption and signature block, and the certification as to the foregoing relies upon the word count feature of the word-processing system used to prepare the document, Microsoft Word.

Dated:  November 14, 2025                              */s/  Rachel Morgenstern*____
                                                                          Rachel Morgenstern

## PART II: INDIVIDUAL DEFENDANTS' SUPPLEMENTAL ARGUMENTS

### INDIVIDUAL SECTION I – THE KOLB DEFENDANTS

**A.    The RICO Counts Against the Kolb Defendants Are Implausibly Pleaded and Should Be Dismissed.**

      **1.    The FAC Does Not Sufficiently Plead that the Kolb Defendants Participated in the "Operation or Management" of the Alleged RICO Enterprise.**

RICO liability is limited to those who "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). That is, a defendant must play "*some* part in directing the enterprise's affairs." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 306 (E.D.N.Y. 2017) (emphasis in original). A defendant who "merely . . . engag[es] in wrongful conduct that assists the enterprise" is not liable under RICO—even if that conduct was necessary to the enterprise, and even if the aid was intentional. *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4, 2017). Nor may a defendant be held liable for merely "providing goods and services that ultimately benefit the enterprise," "even when the defendant is aware of the enterprise's unlawful activity." *Moss*, 258 F. Supp. 3d at 306-07.

Even if the FAC sufficiently pleaded a RICO enterprise, which it does not, *see supra,* its RICO allegations against the Kolb Defendants would fail because it pleads no facts showing or from which the Court could reasonably infer that they "operated or managed" the alleged enterprise. Initially, the FAC contains no non-conclusory allegations that the Kolb Defendants engaged in any wrongful conduct or knew of the alleged enterprise's unlawful activity. Ordinary course MRI report requests and transmissions aside, the FAC does not allege that the Kolb Defendants ever met or communicated with any of the other Defendants, much less with the

Schwitzer Firm, which allegedly "orchestrated, coordinated[,] and led" the RICO enterprise. FAC ¶ 536. Rather, the FAC, at most, pleads that the Kolb Defendants provided imaging services and reports that were necessary to the alleged enterprise. *See* FAC ¶¶ 294, 299 (Kolb Defendants rendered imaging and diagnostic services "as a necessary step for the execution of the Fraud Scheme"). But the absence in the FAC of allegations "showing the cooperation or coordination" of the Kolb Defendants with the other Defendants in the alleged enterprise means that such alleged conduct does not qualify as "directing" the alleged enterprise's affairs. *Abbott Lab'ys*, 2017 WL 57802, at \*7 (dismissing RICO claim for failure to allege that defendants engaged in the conduct of an enterprise).

The FAC's wholesale failure to allege "operation or management" of the alleged RICO enterprise on the part of the Kolb Defendants is not surprising considering the radiologist's limited role in the medical system. Radiologists do not (i) decide which imaging procedures to conduct, (ii) analyze injury causation, or (iii) determine or recommend subsequent treatment. Rather, the radiologist's "only role" is to provide imaging at the request of the "prescribing physician" and to issue a report. *Mann v. Okere*, 195 A.D.3d 910, 912 (2d Dep't 2021); *see also see also Lopez v. Micalizzi*, 232 A.D.3d 779, 780 (2d Dep't 2024) (radiologist's role was to perform MRI ordered by "treating physician" with no duty to "independently diagnose"). The application of medical judgment as to the steps that follow radiology is the duty of the treating physician.[16] Accordingly, stripped of its wholly conclusory allegations, the FAC does no more than plead that the Kolb

---

[16] *See* Position Stmt., *In-Office Diagnostic Imaging Studies by Orthopaedic Surgeons*, Am. Acad. of Orthopaedic Surg. (Feb. 2012), *available at*: https://www.aaos.org/globalassets/about/position-statements/1132-in-office-diagnostic-imaging-studies-by-orthopaedic-surgeons.pdf ("Radiologists are trained to interpret plain radiographs and other images in descriptive terms, whereas orthopaedic surgeons add functional, anatomical, and clinical assessments resulting in patient-specific information not typically available to or provided by the radiologist. It is the orthopaedic interpretation of the imaging studies, in concert with the history and physical examination[,] that determines the course of treatment . . . .").

Defendants provided ordinary-course imaging services to Claimants, conduct that fails to satisfy the "operation or management" standard. *See Moss*, 258 F. Supp. 3d at 306-07.

### 2. The Kolb Defendants' Alleged Mail "Or" Wire Fraud Predicate Acts Are Not Pleaded with Particularity.

The FAC alleges seven predicate acts of mail "or" wire fraud against the Kolb Defendants between September 2022 and October 2024, based on the alleged transmission of health insurance claim forms and MRI reports to the New York Workers' Compensation Board ("WCB") relating to Claimants A and C. *See* FAC ¶¶ 418-20, 476-79. The pleaded predicate acts fall far short of satisfying Rule 9(b).

### a. The FAC Does Not Sufficiently Allege Any "Falsity."

The FAC alleges that the Kolb *MRI* report findings conflicted with *X-rays* or *CT scans* administered by emergency room ("ER") personnel shortly after Claimants' accidents. For example, following an alleged construction accident in October 2021, Claimant C went to the ER, where a "physical examination revealed full neck range of motion" and a "cervical spine CT revealed no acute traumatic fractures or subluxation of the cervical spine." FAC ¶¶ 210, 214, 216. Eleven months later, in September 2022, the Kolb Defendants performed a cervical spine MRI and reported a "disc herniation." FAC ¶ 230. The FAC alleges that the Kolb Defendants' transmission of a health insurance claim form in connection with this MRI to the WCB constitutes mail "or" wire fraud because "[s]uch reports were submitted as if Claimant C's injuries were causally connected to [the alleged] accident and that treatment for such was warranted and necessary," and "no such injuries existed" as reflected in Claimant C's ER records. FAC ¶ 476; *see also, e.g.*, AC ¶¶ 150, 155-56, 165, 418 (alleging mail "or" wire fraud in connection with head MRI performed on Claimant A because, although Claimant A did not "complain[] of head trauma" after his injury

and "CT scans of his head and neck" yielded "unremarkable results," two months later, the Kolb Defendants "reported increased signal in the right frontal white matter").

These allegations do not provide a basis to claim fraud. Disagreements in radiological findings, or even the alleged identification of medical error, do not plausibly plead fraud or state a predicate for a RICO claim. *See Allstate Ins. Co. v. Passaro-Henry*, 660 F. Supp. 2d 317, 324 (D. Conn. 2009) (dismissing insurer's RICO claim for not explaining why the alleged misstatements are not matters on which "reasonable minds can disagree"); *Allstate Ins. Co. v. Advanced Health Pros.*, P.C., 256 F.R.D. 59-60 (D. Conn. 2008) (no fraud or RICO claim based on "challenges to choice and proficiency of medical treatment rendered"). But even were the law otherwise, the FAC would not plausibly allege that the Kolb Defendants' and the ERs' findings conflict. The ERs employed X-rays and CT scans, not MRIs. The FAC makes no attempt to plead the comparability of the technologies, and the former are less effective than MRIs at imaging soft tissue.[17] Additionally, the Kolb Defendants at times performed MRIs months after the initial accident date, *see, e.g., supra*, and on different body parts than were examined in the ER. *Compare, e.g.*, FAC ¶ 155 (ER x-ray "confirmed no acute fracture in [Claimant A's] *left shoulder*"), *with* FAC ¶ 160 (Kolb MRI report indicated tear in Claimant A's *right shoulder*). Accordingly, stripped of its misleading and flawed "comparisons," the FAC fails to present a plausible allegation of fraud.

---

[17] *See* Laura M. Fayad, MD MS, *CT Scan Versus MRI Versus X-Ray: What Type of Imaging Do I Need?*, Johns Hopkins Med. (last visited Nov. 5, 2025), *available at:* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/ct-vs-mri-vs-xray ("CT scans are fast and detailed. . . . CT scans create images of bones and soft tissues. However, they aren't as effective as MRIs at exposing subtle differences between types of tissue.").

### b. The FAC Does Not Plead a Strong Inference of Fraudulent Intent.

The FAC also fails to raise any inference of fraudulent intent—let alone a strong one—on the part of the Kolb Defendants.

The FAC alleges that the Kolb Defendants provided "unnecessary" testing to Claimants. *See, e.g.*, FAC ¶ 296. But, as radiologists, the Kolb Defendants do not determine an imaging prescription; they perform imaging as prescribed by the treating physician. Under WCB, Medicare, and Medicaid regulations, representations of medical necessity for imaging are made by the prescribing physician, not the radiologist seeking reimbursement. *See* 12 CRR-NY 324.3 ("treating medical provider" must "submit[] a prior approval request" if a "test is not recommended by the medical treatment guidelines" but is "appropriate for the claimant and medically necessary"); 42 C.F.R. § 410.32(2)(i) (physician "[o]rdering the service" "must maintain documentation of medical necessity" for Medicare and Medicaid). The FAC pleads nothing to suggest (nor is there any basis to infer) that the Kolb Defendants acted other than pursuant to these medical industry standards.

Additionally, the FAC's assertions that Dr. Kolb "knowingly" authored "false" MRI reports at the behest of the Schwitzer Firm, *see* FAC ¶ 157, and "knew" that other Defendants would rely on his reports to provide "unnecessary" treatment, *see* FAC ¶ 297, are entirely conclusory. The FAC does not anywhere allege that the Kolb Defendants ever communicated with the Schwitzer Firm or the other Medical Provider Defendants, apart from ordinary course MRI report requests and transmissions. And the FAC's unsupported allegations that the Kolb Defendants knowingly "profited" from reimbursements for "unnecessary" medical services and increased patient referrals, FAC ¶¶ 299-300, are insufficient to allege *scienter*. *See supra*.

### 3. The FAC Does Not Plead a "Pattern" of RICO Activity by the Kolb Defendants.

Despite alleging that the Kolb Defendants have "treat[ed] numerous Claimants" since 2018 in furtherance of the "Fraud Scheme," FAC ¶ 294, the FAC describes predicate activity over a two-year period (September 2022 - October 2024) related to the imaging of only two Claimants. *See supra*. These allegations are insufficient to plead a close-ended pattern. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 182 (2d Cir. 2004) (predicate acts over two-and-a-half years did not satisfy closed-ended continuity because the complaint "alleged that [defendant] engaged in a single scheme to defraud two creditors"); *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605-06 (2d Cir. 2019) (29-month scheme involving "few victims" did not satisfy close-ended continuity).

### B. The Fraud Count Fails Because It Does Not Plead First-Party Reliance.

In addition to the reasons set forth above, the FAC's fraud claim against the Kolb Defendants fails because the FAC does not plead first-party reliance on the Kolb Defendants' alleged misstatements and at best pleads third-party reliance that is insufficient as a matter of law. *See supra* (discussing *Pasternack*). The FAC does not allege that the Kolb Defendants communicated directly with or submitted a claim to either Plaintiff. Nor does the FAC allege that the Kolb Defendants transmitted any "false" MRI reports to either Plaintiff (as opposed to the WCB).[18] And no basis is pleaded to suggest that the Kolb Defendants intended that their imaging reports would reach Plaintiffs through the WCB or the Schwitzer Firm; for example, the FAC does not allege that the Kolb Defendants ever either invoiced or received payments from Plaintiffs or were even aware of Plaintiffs' existence. Consequently, the Kolb Defendants could not have

---

[18] While the FAC alleges that the Kolb Defendants "intentionally submitted or caused the submission of fraudulent medical documentation . . . to Tradesman," the WCB, and unspecified "others," FAC ¶ 296, it pleads allegations concerning submissions to the WCB only. *See supra.*

intended that any of the MRIs would be reviewed by Plaintiffs. *Cf. Puchtler v. Barclays PLC, et al.*, No. 24-CV-1872, 2025 WL 887502, at *14 (S.D.N.Y. Mar. 21, 2025) (alleged motive that "defies common sense or economic reason does not yield a reasonable inference of fraudulent intent"). Accordingly, the fraud claim against the Kolb Defendants should be dismissed. *See, e.g.*, *Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 23-CV-2915, 2024 WL 4266278, at *4 (E.D.N.Y. Sept. 23, 2024) (plaintiff failed to plead first-person reliance based on alleged misstatements in defendant's submissions to federal regulator).

## INDIVIDUAL SECTION II – THE NYC MNO DEFENDANTS

Defendants Dr. Mehrdad Golzad and NYC Medical & Neurological Offices, P.C. ("NYC MNO," and together, "NYC MNO Defendants") move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).[19]

## STATEMENT OF FACTS

The FAC attempts to characterize ordinary professional medical services as a grand scheme to defraud a reinsurance company and its managing agent. Dr. Golzad was allegedly one of several treating physicians for just one patient, Claimant A, over a nine-month period. FAC ¶ 171. Plaintiffs concede that on May 27, 2022, the day after his accident, Claimant A reported to a doctor and emergency room staff that he was suffering from a head injury and a headache. FAC ¶ 156. Then, in July 2022, prior to Dr. Golzad ever treating Claimant A, the patient was given a head MRI by a different provider that appeared "posttraumatic." FAC ¶ 165. It was not until two months after this MRI, and four months after Claimant A reported a head injury and pain, that Dr. Golzad began treating Claimant A for head trauma. Despite the records documenting Claimant A's head injury, Plaintiffs leap to the unsupported conclusion that Dr. Golzad' s services somehow rose to the level of fraud.

For the reasons below, Plaintiffs' claims against the NYC MNO Defendants are legally defective and should be dismissed, with prejudice.

---

[19] The NYC MNO Defendants adopt all arguments in the joint section of this brief and, to the extent applicable, the arguments of each Defendant group.

**ARGUMENT**

A.    **Plaintiffs Fail to Allege Several RICO Elements Against the NYC MNO Defendants.**

1.    **Plaintiffs Fail to Allege the Existence of, or the NYC MNO Defendants' Participation in, The Alleged RICO Enterprise.**

The FAC contains no legally sufficient allegation that the NYC MNO Defendants participated in any RICO enterprise. Crucially, there is no allegation of any meeting or communication between Dr. Golzad and any other Defendant. *See Cont. Transp. Servs., Inc. v. New Era Lending LLC*, 2018 WL 11226077, at *4 (S.D.N.Y. Oct. 26, 2018) (no enterprise absent allegation that defendants "met or communicated"). Even though alleging a RICO enterprise requires pleading "interpersonal relationships" between its members, *Boyle v. United States*, 556 U.S. 938, 946 (2009), the FAC contains no description of "how [Dr. Golzad] knew" the other Defendants, or how he "came to an agreement to act together" with them. *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010).

Plaintiffs are also unable to describe an association-in-fact enterprise, beyond the alleged racketeering acts themselves. The FAC does not provide so much as an allegation that Dr. Golzad associated with the other Defendants outside of the supposed racketeering activity. This is insufficient as a matter of law. *Boyle*, 556 U.S. at 945–46 (must show "relationships among those associated with the enterprise").

Finally, Plaintiffs fail to plead that the NYC MNO Defendants played any role in the "operation or management" of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). The FAC alleges that Dr. Golzad treated one patient and processed paperwork documenting that treatment. This cannot plausibly constitute management of a RICO enterprise. *See Kaczmarek v. Int'l Bus. Machs. Corp.*, 30 F. Supp. 2d 626, 630 (S.D.N.Y. 1998) (no operation or management

alleged where defendant was conducting ordinary professional affairs); *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 71 (E.D.N.Y. 2025) ("drafting of statements based on misinformation . . . did not rise to the level of directing the enterprise's affairs") (internal citation omitted). Dr. Golzad is not alleged to have given any direction to any other Defendant. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (some "directing [of] the enterprise's affairs is required" to establish operation and management). To the contrary, the FAC explicitly states that Claimant A's supposed deception was "[u]nder the direction of" others, with only the doctors' "agreement," FAC ¶ 172, and that Claimant A's treatment was "directed" by others, FAC ¶ 157. An individual not alleged to have communicated with anyone else in an enterprise, and who is operating at the direction of others, cannot possibly be "managing" the enterprise.

### 2. Plaintiffs Fail to Allege That the NYC MNO Defendants Participated in the Requisite "Pattern" of Racketeering Activity.

Plaintiffs also fail to establish that the NYC MNO Defendants engaged in a "pattern" of racketeering activity. They fail to sufficiently plead either "relatedness" or "continuity" of their alleged conduct. *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant.").

Plaintiffs fail to establish vertical relatedness. There is nothing in the FAC alleging that the alleged scheme uniquely enabled the NYC MNO Defendants to provide medically unnecessary treatment for higher reimbursements. Rather, the alleged conduct is entirely self-reliant—the treating of patients, submission of paperwork, and receipt of payment all occur in the regular course of a medical practice. It does not require lawyers or other doctors orchestrating a broader alleged conspiracy. *See Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017) (defendant must be able to commit predicate acts "solely" because of his role in the enterprise).

Plaintiffs also fail to establish continuity. The FAC's claim against the NYC MNO Defendants relies entirely upon Claimant A's treatment. Alleging fraud in the treatment of a single patient is patently insufficient to either threaten future criminality or show NYC MNO regularly committed fraud throughout its ongoing, legitimate business. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014) (where alleged RICO enterprise involves a legitimate business, predicate acts must be "the regular way of operating that business" or show "a threat of continued criminal activity"). Plaintiffs also fail to establish closed-ended continuity, given the short timeline and lacking "number and variety of" predicate acts. *Bayside Wellness*, 2025 WL 458224, at *4. The supposed mailings address a single course of treatment administered over mere months. The FAC's claim against the NYC MNO Defendants is a poor "attempt to fragment [an] . . . isolated act into a pattern of separate acts." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 79 (E.D.N.Y. 2020) (citation omitted). Purported injury arising from a doctor's brief treatment of a single patient is plainly insufficient to establish a "pattern" under RICO.

### 3.    Plaintiffs Fail to Allege that the NYC MNO Defendants Engaged in Any Predicate Acts.

#### a.    Plaintiffs' Mail and Wire Fraud Claim is Insufficiently Particularized and Fails to Establish Fraudulent Intent.

The FAC fails to allege that the NYC MNO Defendants committed mail fraud and wire fraud. Plaintiffs allege only that Claimant A visited NYC MNO for a neurological examination following multiple reports of head injuries and associated pain. NYC MNO received customary compensation for medical services and processed the ordinary paperwork associated with such services. None of this ordinary medical treatment gives rise to an inference of fraudulent intent, much less the requisite *strong* inference needed to establish a predicate act under RICO. At best, Plaintiffs assert that Dr. Golzad should have realized Claimant A lied about his head trauma

because one of his two sets of emergency room records did not reflect brain injury. Plaintiffs provide no explanation for why this creates the requisite strong inference of fraud.

### b.  Plaintiffs Fail to Allege the NYC MNO Defendants Committed Bribery under N.Y. Penal Law § 215.

The FAC does not contain a single fact indicating that the NYC MNO Defendants participated in bribery. There is no allegation that Dr. Golzad testified, received payment for testimony, or paid for testimony. Plaintiffs simply cite N.Y. Penal Law § 215 without connecting their claim to any facts related to the NYC MNO Defendants.

### c.  Plaintiffs Fail to Allege the NYC MNO Defendants Violated the Travel Act.

Similarly, Plaintiffs fail to state any facts suggesting the NYC MNO Defendants violated the Travel Act. Plaintiffs do not reference any out-of-state treatment or travel arranged by the NYC MNO Defendants. Nor do they specify any "unlawful activity," as required by the statute. *See* 18 U.S.C. § 1952(a). In fact, the FAC does not allege a single fact related to the NYC MNO Defendants' supposed Travel Act violation.

### d.  Plaintiffs' RICO Conspiracy Claim Is Legally Insufficient.

Plaintiffs' RICO conspiracy claim against the NYC MNO Defendants fails on two fronts. First, because Plaintiffs do not sufficiently allege a substantive RICO violation, the conspiracy claim cannot stand. *See First Cap.*, 385 F.3d at 182 (dismissing RICO conspiracy where substantive RICO claim was not alleged). Moreover, even if Plaintiffs had validly stated a RICO claim, the FAC does not adequately allege that the NYC MNO Defendants made a "knowing agreement" to join a RICO conspiracy. *See Com–Tech Assocs. v. Comput. Assocs. Int'l Inc.*, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) ("knowing agreement" especially necessary where predicate

acts are fraud). Instead, it recites only boilerplate language, never stating what Dr. Golzad

supposedly agreed to, or who he came to an agreement with, or when, or where, or how.

    **B.**    **Plaintiffs' State Law Claims Against the NYC MNO Defendants Should Be Dismissed.**

        **1.**    **Plaintiffs' N.Y. GBL § 349 Claim Is Legally Unfounded.**

N.Y. GBL § 349 is inaptly applied. The FAC does not allege that the NYC MNO

Defendants engaged in any "consumer-oriented" deceptive behavior. *See Oswego Laborers' Local

214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). The only "consumer"

of the alleged treatment was a single Claimant—who Plaintiffs allege was a co-conspirator, rather

than a member of the public. Administering medical treatment to this lone patient is not alleged to

have had any identifiable impact on "consumers at large." *Id.*

        **2.**    **The FAC Does Not Allege with Particularity that the NYC MNO Defendants Committed Common Law Fraud.**

The FAC also fails to plead common law fraud. Plaintiffs fail to allege fraudulent conduct

by the NYC MNO Defendants with the requisite particularity. Instead, Plaintiffs merely allege that

Dr. Golzad knew or should have known one Claimant was not actually injured to the extent

claimed. But the allegation that Dr. Golzad *should* have known something is patently insufficient

to demonstrate fraudulent intent with particularity, and therefore is fatally defective.

        **3.**    **Plaintiffs Do Not State a Claim for Unjust Enrichment.**

The FAC does not allege how the NYC MNO Defendants were enriched, much less

beyond the scope of Plaintiffs' common law fraud claim. The FAC contains no specifics about

any payments made, or benefits provided, to the NYC MNO Defendants. Plaintiffs do not even

allege how they received the "settlement values" that the FAC references. *See, e.g.,* FAC ¶ 61.

Moreover, an unjust enrichment claim does not lie where, as here, it is duplicative of Plaintiffs'

common law fraud claim. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing unjust enrichment claim as duplicative of fraud claim).

> **4.     Plaintiffs' RICO and GBL § 349 Claims are Barred by the Statute of Limitations**

Plaintiffs' four-year RICO statute of limitations began to run when they should have discovered their earliest injury in relation to the alleged scheme. *See Campos v. Lavinsky*, 2022 WL 16950054, at *3 (E.D.N.Y. Nov. 14, 2022) (dismissing untimely civil RICO claim because "the statute of limitations does not start again each time Plaintiff learns of . . . a new defendant") (citation omitted). Plaintiffs were on notice of injuries stemming from the alleged scheme in 2018, when the earliest related lawsuits commenced. *See* FAC ¶ 274; *see also Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, No. 13-CV-291 (CM), 2014 WL 3728591, at *11 (S.D.N.Y. July 28, 2014) (RICO statute of limitations begins when plaintiffs are on notice of "facts which should arouse suspicion") (internal citation omitted). Their lawsuit, filed seven years later, is untimely.

Plaintiffs' GBL § 349 claim is similarly untimely. Its three-year statute of limitations began when Plaintiffs were allegedly first injured—and Plaintiffs claim the purported scheme has been operating since 2018. In any event, even measuring by Claimant A alone, whose workers' compensation action was filed May 27, 2022, the three-year time limit passed before the filing of this action in June 2025.

## INDIVIDUAL SECTION III – KATZMAN ORTHO

Defendants Katzman Orthopedics, P.C., and Barry Katzman, M.D. (collectively "Katzman Ortho") respectfully submit the following in further support of their motion to dismiss Plaintiffs' Amended Complaint (ECF 68) (the "FAC").[20]

### A.    Plaintiffs Lack Standing to Assert Their Claims Against Katzman Ortho.

RICO standing requires a concrete injury to the Plaintiffs' business or property, along with clear, definite damages stemming directly from that injury.  *See Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir. 1990).  Here, Plaintiffs failed to allege any direct or quantifiable damages—much less any "clear and definite" injury from any predicate act allegedly committed by Katzman Ortho.  *See* FAC ¶¶ 232, 237, 367, 371-372, 462-465.  Instead, Plaintiffs vaguely allege Katzman Ortho rendered unnecessary medical treatments and transmitted "fraudulent" medical documents to the WCB and/or to certain co-Defendants.  Even if the Court accepts these allegations as true, the FAC does not specify how *Plaintiffs themselves* were directly harmed by any of Katzman Ortho's alleged acts.  In fact, Plaintiffs do not allege they made any payment directly related to any medical procedure performed by Katzman Ortho.  Consequently, even assuming the Court accepts Plaintiffs' legally defective "primary insurer" theory (*see* Point I, *supra*, Plaintiffs have failed to allege they paid anything because of Katzman Ortho's allegedly medically unnecessary treatment.  Similarly, Plaintiffs do not allege that they directly funded any portion of Claimant C's underlying workers compensation claims or personal injury lawsuit.

Plaintiffs' alleged harms are entirely contingent upon predicate injuries to third parties, including various non-party construction employers, the WCB, and the *actual* primary insurers.

---

[20]    Katzman Ortho adopts and incorporates by reference all arguments set forth in the joint sections of this brief that apply to all Defendants. To the extent applicable, Katzman Ortho also adopts and incorporates by reference the arguments made in the various subsections prepared by each Defendant group.

Because such "contingent" harms are insufficient for RICO standing, Plaintiffs' claims should be dismissed. *See Subin*, 2025 WL 1713109, at \*6 (dismissing RICO claims because the alleged injuries were "definitionally multiple steps away from the alleged fraud"); *Id.* at \*4 (dismissing RICO claims because the alleged injuries were "contingent on harms suffered by insurers, which are themselves contingent on the harms suffered by the construction employers.").

### B. Plaintiffs Fail to Adequately Plead RICO Claims Against Katzman Ortho.

#### 1. Plaintiffs Fail to Adequately Plead Predicate Acts Against Katzman Ortho.

Plaintiffs must adequately plead that Katzman Ortho engaged in two or more acts of "racketeering activity." 18 U.S.C. § 1961(1). The FAC alleges predicate acts of mail and/or wire fraud, but fails to plead either.[21] Fraud-based RICO claims are heavily scrutinized "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014). For this reason, such claims are also governed by the heightened pleading standards of Federal Rule 9(b), which requires plaintiffs to "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

To satisfy this requirement, Plaintiffs must provide "the factual basis which gives rise to a strong inference of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (emphasis added); *see also, In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 51 (2d Cir. 2025) ("an inference of scienter must be more than merely plausible or reasonable—it must be cogent

---

[21]    The FAC also alleges bribery, but not by Katzman Ortho. Still, in an abundance of caution, we respectfully refer the Court to the joint section of this brief addressing Plaintiffs' failure to adequately plead bribery.

and at least as compelling as any opposing inference of nonfraudulent intent."). Plaintiffs fail to do so with respect to Katzman Ortho.

As an initial matter, Plaintiffs fail to specify whether each alleged predicate act by Katzman Ortho constitutes mail or wire fraud. Such non-specific allegations fail to satisfy Rule 9(b). But even if Plaintiffs specified whether they are alleging mail or wire fraud, they fail to sufficiently plead either one. Plaintiffs allege Katzman Ortho committed mail and/or wire fraud: (a) by rendering excessive or unnecessary medical treatments; (b) by transmitting documents concerning such treatment; and (c) because Katzman Ortho "knew or should have known that the treatments were neither necessary nor causally connected to the alleged [workplace] accident." *See, e.g.*, FAC ¶¶ 462-465. But these allegations rest entirely on (i) purported inconsistencies between Katzman Ortho diagnoses and the preliminary diagnoses made by non-specialist emergency room personnel; and (ii) Plaintiffs' self-serving interpretations of the Claimants' emergency room records. *See id.* In other words, Plaintiffs seek to substitute their own medical judgements for those of Katzman Ortho. Plaintiffs are clearly unqualified to do so, and there is nothing fraudulent about mere differences in medical opinion. *Allstate Ins. Co. v. Advanced Health Pros., P.C.*, 256 F.R.D. 49 (D. Conn. 2008) (Plaintiffs "[do] not explain why the treatment was unnecessary . . . or why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered[.]").

Plaintiffs also allege Katzman Ortho transmitted certain medical documents to the WCB "by mail, facsimile, or email." FAC ¶¶ 464-465. Based on their own review of Claimant C's emergency room records, Plaintiffs self-servingly conclude that each of Katzman Ortho's transmissions were somehow "false." *Id.* These bare, conclusory allegations are deficient for several reasons, including Plaintiffs' failure to identify: (i) the exact date the transmissions were

made; (ii) what specific documents or statements within each transmission were fraudulent; (iii) what specific facts rendered those documents or statements fraudulent (apart from Plaintiffs' own, unqualified medical judgments); (iv) how much Katzman Ortho was paid; and (v) how each alleged transmission contributed to the larger, so-called "fraud scheme." Absent these specifics, the FAC fails to adequately plead the predicate acts of mail or wire fraud against Katzman Ortho. *See e.g. Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546, at *8 (S.D. Tex. July 3, 2012) (dismissing "conclusory, vague, and non-specific [RICO] allegations" against doctors that lacked details such as "what facts [led] the plaintiffs to believe that any . . . statements [were] fraudulent misrepresentations.")

### 2. Plaintiffs Fail to Allege A "Pattern" of Racketeering Activity by Katzman Ortho.

A RICO "pattern" requires "both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). As to the first element of "continuity," Plaintiffs offer nothing more than a conclusory, speculative claim that the alleged fraud scheme "will continue into the future unless stopped [.]" FAC, ¶ 498. The FAC contains no allegation of "continuity" specific to Katzman Ortho,[22] and thus Plaintiffs have failed to meet their burden of pleading a "continuous threat." Plaintiffs also fail to allege "relatedness." Instead, Plaintiffs rely on the treatment of a single Claimant to connect Katzman Ortho to the larger fraudulent scheme. *See* FAC ¶¶ 428–32, 474–75. Such isolated allegations related to a single patient cannot, without more, satisfy the "pattern" requirement. *Reich*, 858 F.3d at 60 (the "pattern" element aims to prevent the application of RICO to "isolated or sporadic" acts). Plaintiffs cannot overcome these failures by attempting to group the Defendants

---

[22]    The FAC is self-contradictory on this point—alleging Katzman Ortho's actions date back to "at least 2018," but failing to provide any specifics before August 2022. *See* FAC ¶¶ 232, 237, 462.

together to give the appearance of *partial* overlap among the alleged participants in the "fraud scheme." *See Reich*, 858 F.3d at 63 (holding that overlap among participants is insufficient to satisfy "relatedness"); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established <u>as to each individual defendant</u>.") (emphasis added).

### 3.    Plaintiffs Fail To Allege Katzman Ortho's Participation in a RICO Conspiracy.[23]

At minimum, a RICO conspiracy claim requires each that Defendant: (i) enter into an agreement to join the conspiracy; (ii) knowingly participate in that agreement; and (iii) take acts in furtherance of the conspiracy. *Black v. Ganieva*, 619 F.Supp.3d 309, 348 (S.D.N.Y. 2022). Mere allegations of routine business operations or parallel conduct are insufficient. *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) ("[P]laintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud."). Here, Plaintiffs fail to allege that Katzman Ortho entered into an agreement with any other Defendant. Instead, Plaintiffs' conspiracy claim rests entirely on the conclusory allegation that the so-called "Medical Provider Defendants" each "understood and agreed" that, in return for providing allegedly fraudulent medical documentation, the Schwitzer Defendants would "continue to funnel patients to their office." FAC ¶¶ 72, 117, 278. These allegations are nothing more than bare conclusions. Plaintiffs fail to specifically and adequately plead, (i) which specific co-Defendants Katzman Ortho entered into agreements with; (ii) when or where Katzman Ortho entered into such agreements; (iii) how such agreements were made and formed; and (iv) whether/how Katzman Ortho and each co-Defendant knew they were

---

[23]    Plaintiffs' RICO conspiracy claim must also be dismissed because Plaintiffs fail to state a viable substantive RICO claim. *See ITG Brands, LLC v. Yellowstone Cap., LLC*, 2024 WL 4008230, at *10 (S.D.N.Y. Aug. 29, 2924) ("If a complaint fails to state a substantive RICO claim, it does not state a claim for RICO conspiracy."); *Subin*, 2025 WL 1713109, at *7 (similar).

entering into a racketeering conspiracy.  Absent these details, Plaintiffs claims lack the required specificity and must be dismissed. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 109 (D. Conn. 2014).

## INDIVIDUAL SECTION IV – THE PAIN DEFENDANTS

Defendants BL Pain Management, P.L.L.C. ("BL Pain"), Pain Physicians NY P.L.L.C. ("PPNY"), LR Medical, P.L.L.C. ("LR"), Boleslav Kosharskyy, M.D. ("Dr. Kosharskyy"), and Demetrios Koutsospyrous, M.D. ("Dr. Koutsospyrous") (collectively, the "Pain Defendants") respectfully submit the following in further support of their motion to dismiss the FAC.[24]

## ARGUMENT

### A.    Plaintiffs Rely on Time-Barred Allegations.

Claims under New York General Business Law ("GBL") § 349 are governed by a three-year statute of limitations.  CPLR § 214(2); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (N.Y. 2001).  Plaintiffs filed this action on June 16, 2025 (ECF 1).  Thus, to be timely, Plaintiffs' GBL claims against the Pain Defendants must have accrued on or after June 16, 2022. But Plaintiffs' claims against the Pain Defendants rely, in part, on acts that allegedly occurred on January 26, 2022 (FAC ¶ 229) and February 14, 2022. (FAC ¶ 474).  Both are several months beyond the GBL § 349 limitations period, and, to the extent Plaintiffs' claims rely on such time-barred allegations, they should be dismissed.[25]

### B.    Plaintiffs Lack Standing to Assert Their Claims Against the Pain Defendants.

RICO standing requires a concrete injury to the Plaintiffs' business or property, along with clear, definite damages stemming directly from that injury.  *See Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir. 1990).  Plaintiffs here do not allege to have suffered any direct or quantifiable—much less "clear and definite"—injury from any predicate act allegedly committed by the Pain Defendants.  *See* FAC ¶¶ 157, 160–62, 165, 168, 228–29, 359–60, 364–65, 429–32,

---

[24]    The Pain Defendants adopt all arguments set forth in the joint sections of this brief applicable to all Defendants.  The Pain Defendants also adopt, to the extent applicable, the arguments made in the various subsections prepared by each Defendant group.

[25]    All remaining allegations against the Pain Defendants—while arguably timely—are nevertheless deficient.

474–75.  Rather, Plaintiffs vaguely allege the Pain Defendants rendered unnecessary medical treatments and transmitted "fraudulent" medical documents to the WCB and/or to certain co-Defendants.  Even if the Court accepts these allegations as true, the FAC does not specify how *Plaintiffs themselves* were directly harmed by any of the Pain Defendants' alleged acts.  In other words, Plaintiffs do not allege to have made any payment on any claim directly related to any medical procedure performed by any of the Pain Defendants.  Thus, even assuming the Court accepts Plaintiffs' legally defective "primary insurer" theory (*see* Point I, *supra*), they have not alleged to have paid out a single dollar because of any allegedly-unnecessary medical treatment rendered by the Pain Defendants.  Nor do Plaintiffs allege to have directly funded any portion of the Claimants' underlying workers compensation claims or personal injury lawsuits.  Plaintiffs' purported "harms" are wholly contingent upon predicate injuries to (among others) the various non-party construction employers and the WCB (not to mention the *actual* primary insurers, which Plaintiffs are not).  Because such "contingent" harms are insufficient for RICO standing, Plaintiffs' claims should be dismissed.  *See Subin*, 2025 WL 1713109, at *6 (dismissing RICO claims because the alleged injuries were "definitionally multiple steps away from the alleged fraud"); *id.* at *4 (dismissing RICO claims because the alleged injuries were "contingent on harms suffered by insurers, which are themselves contingent on the harms suffered by the construction employers.").

### C.      Plaintiffs Fail to Adequately Allege RICO Claims Against the Pain Defendants.

#### 1.      Plaintiffs Fail to Adequately Plead Predicate Acts Against the Pain Defendants.

Plaintiffs must adequately plead that the Pain Defendants engaged in two or more acts of "racketeering activity."  18 U.S.C. § 1961(1).  The FAC relies on alleged predicate acts of mail

and/or wire fraud, but Plaintiffs fail to plead either.[26]    Fraud-based RICO claims are heavily scrutinized "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014). Such claims are also governed by the heightened pleading standards of Federal Rule 9(b), which requires plaintiffs to "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

To sufficiently plead fraud under RICO, Plaintiffs must provide "the factual basis which gives rise to a <u>strong inference</u> of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (emphasis added). *See also In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 51 (2d Cir. 2025) ("an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."). Plaintiffs fail to do so.

Preliminarily, Plaintiffs fail to specify whether each alleged predicate act by the Pain Defendants constitutes mail or wire fraud, instead lumping those two theories together and hoping for the best. Such non-specific allegations fail to satisfy Rule 9(b). Even if Plaintiffs had specified a predicate act by the Pain Defendants, *i.e.* mail or wire fraud, they fail to sufficiently plead either. The FAC alleges the Pain Defendants committed mail and/or wire fraud: (a) by rendering excessive or unnecessary medical treatments; (b) by transmitting documents concerning such treatment; and (c) because the Pain Defendants "knew or should have known that the treatments were neither necessary nor causally connected to the alleged [workplace] accident." *See, e.g.*,

---

[26]    The FAC also alleges bribery, but not by the Pain Defendants. Still, in an abundance of caution, we respectfully refer the Court to the joint section of this brief addressing Plaintiffs' failure to adequately plead bribery.

FAC ¶¶ 428–32, 474–75.  But these allegations rest entirely on (i) purported inconsistencies between the Pain Defendants' diagnoses and the preliminary diagnoses made by non-specialist emergency room personnel; and (ii) Plaintiffs' self-serving interpretations of the Claimants' emergency room records.  *See id*.  Stated differently, Plaintiffs seek to substitute their own medical judgements for those of the Pain Defendants.  Plaintiffs are clearly unqualified to do so, and, in any event, there is nothing fraudulent about mere differences of medical opinion.  *Allstate Ins. Co. v. Advanced Health Pros., P.C.*, 256 F.R.D. 49 (D. Conn. 2008) (Plaintiffs "[do] not explain why the treatment was unnecessary . . . or why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered[.]").

Separately, Plaintiffs allege the Pain Defendants transmitted certain medical documents to the WCB "by mail, facsimile, or email."  FAC ¶¶ 428–32, 474–75.  Based on their own review of the Claimants' emergency room records, Plaintiffs then brazenly conclude each of the Pain Defendants' transmissions were somehow "false."  *Id*.  These bare, conclusory allegations are deficient for several reasons, including Plaintiffs' failure to identify: (i) the exact date on which the transmissions were made (despite the specificity required by both  RICO and Rule 9(b)); (ii) what specific documents or statements within each transmission were fraudulent; (iii) what specific facts rendered those documents or statements fraudulent (apart from Plaintiffs' own, unqualified medical judgments); (iv) when, how, and from whom the Pain Defendants received payment for the allegedly-unnecessary medical treatments; (v) how much the Pain Defendants were paid for each allegedly-unnecessary medical treatment; and (vi) how, specifically, each alleged transmission contributed to the larger, so-called "fraud scheme."  Absent these specifics, the FAC fails to adequately plead the predicate acts of mail or wire fraud against the Pain

Defendants. *See e.g. Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546, at

*8 (S.D. Tex. July 3, 2012) (dismissing "conclusory, vague, and non-specific [RICO] allegations"

against doctors that lacked details such as "what facts [led] the plaintiffs to believe that any . . .

statements [were] fraudulent misrepresentations.")

<h3 style="text-align:center">2.    Plaintiffs Fail to Allege A "Pattern" of Racketeering Activity by the<br>Pain Defendants.</h3>

A RICO "pattern" requires "both that the RICO predicates pose a threat of continuous

criminal activity and that they be related to each other."  *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir.

2017).  Here, on the first element of "continuity," Plaintiffs offer nothing more than a conclusory,

speculative claim that the alleged fraud scheme "will continue into the future unless stopped [.]"

FAC, ¶ 498. The FAC contains no allegation of "continuity" specific to the Pain Defendants,[27] and

Plaintiffs have clearly failed to sustain their burden of pleading a "continuous threat."  On the

second element of "relatedness," Plaintiffs rely on a series of discrete, isolated acts—some of

which are time-barred—related to the treatment of two different individual patients.  *See* FAC ¶¶

428–32, 474–75.  Such unrelated acts cannot, as a matter of law, meet the "pattern" requirement.

*Reich*, 858 F.3d at 60 (the "pattern" element aims to prevent the application of RICO to "isolated

or sporadic" acts).   Plaintiffs cannot remedy these shortcomings by simply grouping the

Defendants together to give the appearance of *partial* overlap among the alleged participants in

the "fraud scheme."  *See Reich*, 858 F.3d at 63 (holding that overlap among participants is

insufficient to satisfy "relatedness"); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The

requirements of section 1962(c) must be established <u>as to each individual defendant</u>.") (emphasis

added).

---

[27]    The FAC is self-contradictory on this point—alleging the Pain Defendants' actions date back to "at least
2018," but failing to provide any specifics before January 2022.  *See* FAC ¶¶ 229, 356.

At bottom, Plaintiffs do nothing more than challenge the Pain Defendants' diagnoses and routine medical treatment decisions.  Plaintiffs have not established a link between the sporadic, unrelated predicate acts allegedly committed by the Pain Defendants, nor have they credibly pled any threat of "continuous criminal activity" by the Pain Defendants.

### 3.  Plaintiffs Fail To Allege the Pain Defendants' Participation in a RICO Conspiracy.[28]

A RICO conspiracy claim requires, at minimum, each of the following, as to each individual Defendant: (i) an agreement to join the conspiracy; (ii) knowing participation in that agreement; and (iii) acts taken in furtherance of the conspiracy.  *Black v. Ganieva*, 619 F.Supp.3d 309, 348 (S.D.N.Y. 2022).  Mere allegations of routine business operations or parallel conduct are insufficient.  *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) ("[P]laintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud.").  Here, Plaintiffs fail to even plead that the Pain Defendants entered into an agreement with any co-Defendant—let alone with all co-Defendants.  Instead, Plaintiffs' conspiracy claim rests on the conclusory allegation that the so-called "Medical Provider Defendants" each "understood and agreed" that, in return for providing medical documentation that Plaintiffs deem fraudulent, the Schwitzer Defendants would "continue to funnel patients to their office."  FAC ¶¶ 72, 117, 278.  This allegation is nothing more than a soundbite.  Plaintiffs fail to specifically and adequately plead, among other things, (i) which specific co-Defendants the Pain Defendants entered into agreements with; (ii) when or where the Pain Defendants entered into such agreements; (iii) how such agreements were made and formed;

---

[28]    Plaintiffs' RICO conspiracy claim must also be dismissed because Plaintiffs fail to state a viable substantive RICO claim.  *See ITG Brands, LLC v. Yellowstone Cap., LLC*, 2024 WL 4008230, at *10 (S.D.N.Y. Aug. 29, 2924) ("If a complaint fails to state a substantive RICO claim, it does not state a claim for RICO conspiracy."); *Subin*, 2025 WL 1713109, at *7 (similar).

and (iv) whether/how the Pain Defendants and each co-Defendant knew they were entering into a racketeering conspiracy.  Absent these details, Plaintiffs claims lack the required specificity and must be dismissed. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 109 (D. Conn. 2014).

## INDIVIDUAL SECTION V – THE SCHWITZER DEFENDANTS

Defendants William Schwitzer & Associates, P.C., William Schwitzer, and Giovanni "John" C. Merlino (collectively "the Schwitzer Defendants") respectfully state as follows in support of their motion to dismiss the Plaintiffs' Amended Complaint (ECF 68) ("FAC").

The Schwitzer Defendants adopt and incorporate by reference the Statement of Facts in the joint section of this brief insofar as such statement applies to them, and also adopt and incorporate by reference (i) all arguments set forth in the joint section of this brief that apply to all defendants, and (ii) all arguments made by other individual defendants and/or groups of defendants to the extent such arguments apply to them.

## ARGUMENT

### A.    Plaintiffs Lack Standing to Sue the Schwitzer Defendants.

As stated in the joint brief, which the Schwitzer Defendants adopt in full, plaintiffs lack standing to assert their RICO claims for the reasons set forth in *Roosevelt Road Re, Ltd. v. Subin*, 2025 WL 1713109 (E.D.N.Y. 2025), *leave to amend denied,* 2025 WL 3049937 (E.D.N.Y. 2025).

The Schwitzer Defendants additionally point out that the FAC contains no allegations that plaintiffs actually paid any of the claims at issue in this case. It does not allege that plaintiffs wrote any checks, made any electronic funds transfers, or otherwise made payments to any of the claimants, their providers, and/or their counsel that correspond to the claims. There is not a single allegation of a funds transfer that has "Roosevelt Road" or "Tradesman" as the payor and one of the defendants or their clients as the payee.

At most, plaintiffs allege that they and the primary carrier had a "Quota Sharing Reinsurance Agreement" under which they would receive a percentage of Accredited's premiums and be responsible for a percentage of Accredited's losses. Contrary to plaintiffs' contention, a

QSRA does not make a reinsurer into a primary insurer. *See Quota Share Treaty Explained*, https://www.investopedia.com/terms/q/quota-share-treaty.asp (visited Nov. 11, 2025).  Thus, the claims in this case, at most, reduced plaintiffs' bottom-line profits by reducing Accredited's profits and therefore plaintiffs' share thereof, which remains the kind of attenuated injury that the *Subin* court found inadequate. This lawsuit must be dismissed for lack of standing.

**B.    Plaintiffs Fail to Adequately Plead Civil RICO Claims Against the Schwitzer Defendants.**

Second, in addition to the deficiencies in RICO pleading discussed in the joint brief (which the Schwitzer Defendants again adopt in full), the FAC fails to sufficiently plead falsity and/or fraudulent intent against the Schwitzer Defendants. Essentially, the position taken by plaintiffs in the FAC is that if there are any discrepancies in an injured person's description of the accident, any disagreement between such person's emergency room records and treatment records, and/or if the person's care is subsequently deemed unnecessary by the insurance carrier's hired-gun physician, then it is fraudulent for a lawyer to represent that person, and if the lawyer represents a sufficient number of such plaintiffs, then he is liable under RICO. The courts, however, have rejected such claims.

In *Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49 (D. Conn. 2008), the plaintiff, as here, alleged fraud on the basis of "exemplar claims" in which patients received treatment that the carrier and its physicians believed excessive and unnecessary. The court, however, dismissed such claims with prejudice, finding that a fraud claim does not lie "when reasonable minds can disagree regarding whether the service was properly billed." *Id.* at 66-67, *reargument denied, Allstate Ins. Co. v. Passaro-Henry*, 660 F. Supp. 2d 317, 328-29 (D. Conn. 1999). Simply put, the fact that plaintiffs might disagree with the happening and/or seriousness of the injuries suffered by the Schwitzer Defendants' clients, and.or the course of treatment they

received, does not a RICO claim make.

Indeed, if anything, the claims against the Schwitzer Defendants are even more attenuated than the claims in *Advanced Health, supra*. The defendants in *Advanced Health*, who were medical providers, were at least in a position to directly examine and evaluate their patients and, through use of medical expertise, determine what treatment was necessary and what treatment, in contrast, might be excessive. The Schwitzer Defendants, as lawyers, must necessarily rely upon the expertise of their clients' treating providers. And, as lawyers whose duty is to advocate for their clients, they are entitled to believe their clients and their clients' treating physicians. The fact that they present claims that insurance carriers dispute is not RICO – it is just the stuff of which lawsuits are made, and the obvious intent of this lawsuit and other similar suits lodged by these plaintiffs is obviously to chill the personal injury bar.

Nor can plaintiffs bridge this gap by alleging that the Schwitzer Defendants referred clients to health care providers, because this is something insurance carriers also do – as was aptly stated in *Nunes Oliveira v. 5462 125th Realty LLC*, Index No. 150949/2020 (Sup. Ct., N.Y. Co.), "a plaintiff's law firm (without more) purportedly referring a client to a particular doctor is no more problematic than an insurer limiting the performance of independent medical examinations to a discrete list of preferred doctors."

In sum, fraud-based RICO claims are heavily scrutinized "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Frankin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014). This Court should be particularly skeptical of such claims where, as here, they seek to "mold a RICO pattern" from nothing more than aggressive lawyering and advocacy, and to classify as fraud any assertion of a position with which an insurance company disagrees.

94

Furthermore, the FAC does not allege RICO conspiracy with sufficient specificity, as it does not detail what "knowing agreement" the Schwitzer Defendants made with their putative co-conspirators, instead reciting only boilerplate language concerning the existence of such agreement or agreements. *See Com-TechAssocs. v. Comput. Assocs. Int'! Inc.*, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) ("knowing agreement" especially necessary where predicate acts sound in fraud). This Court should therefore dismiss the RICO claims against the Schwitzer Defendants with prejudice.

### C. This Court Should Dismiss or Decline to Exercise Jurisdiction Over Plaintiff's State-Law Claims Against the Schwitzer Defendants.

The FAC raises four (4) claims against the Schwitzer Defendants under New York State law: common-law fraud, aiding and abetting fraud, unjust enrichment, and deceptive practices under Section 349 of the New York General Business Law. None of these are sufficiently pled.

As to common-law fraud, New York courts have repeatedly held that a cause of action may not be based upon statements made by adverse counsel in the context of litigation, because such statements are inherently not made with the intent that the opposing party rely upon them and because any reliance by the opposing party is by definition not justifiable. There can be no fraud claim where, as here, "[t]he record makes clear that defendant has not, in fact, relied on plaintiff's alleged misrepresentations, but instead has denied them in his answer and throughout this litigation." *Breton v. Dishi*, 234 A.D.3d 432, 432 (1st Dep't 2025); *see also Anguisaca-Morales v. St. Paul & St. Andrew United Methodist Church*, 238 A.D.3d 439, 440 (1st Dep't 2025); *Broughton v. 553 Marcy Avenue Owners, LLC*, 238 A.D.3d 536. 537 (1st Dep't 2025); *Sammy v. Haupel*, 170 A.D.3d 1224, 1227 (2d Dep't 2019); *accord Seaz v. Excellent Bus Service, Inc.*, No. 21-CV-6967 (TAM), 2025 WL 990247, *8 (E.D.N.Y. 2025) (citing *Breton*).

Claims of aiding and abetting fraud under New York law also require justifiable reliance,

and therefore, such claims against the Schwitzer Defendants must fail for the same reason as the substantive fraud claims. *See Goldberg v. KSDL Building Group, LLC*, 236 A.D.3d 995, 997 (2d Dep't 2025) (dismissing claim of aiding and abetting fraud where justifiable reliance was not pled); *see also Franklin D. Nastasi Trust v. Bloomberg, L.P.*, 224 A.D.3d 804, 808 (2d Dep't 2024) (same); *Roumi v. Guardian Life Ins. Co.*, 191 A.D.3d 911, 913 (2d Dep't 2021) (same).

Moreover, as to both substantive fraud and aiding and abetting fraud, the courts have held that the expense of defending lawsuits is not a cognizable item of damages. *See Breton*, 234 A.D.3d at 433, *citing Makhnevitch v. Board of Mgrs.*, 217 A.D.3d 630, 632 (1st Dep't 2023).

Turning to unjust enrichment, such a claim will not lie where, as here, it is duplicative of the claim for common-law fraud. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Furthermore, the FAC contains no specifics about any payments made or benefits provided by the plaintiffs to the Schwitzer Defendants and thus does not plead that the Schwitzer Defendants were enriched at the plaintiffs' expense.

Finally, the claim under GBL § 349 must fail because claims under this statute are limited to consumer-oriented conduct, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24-25 (1995), and exclude alleged deception which is conducted in the course of private disputes unique to the parties as opposed to deception aimed at consumers at large, *see Katsorhis v. 718 West Beech Street, LLC*, 234 A.D.3d 744, 748-49 (2d Dep't 2025). Moreover, courts have specifically held that "plaintiff insurers, who [are] the sellers of policies, [are] clearly not 'consumers' as contemplated by § 349." *State Farm Mut. Auto Ins. Co. v. Malella*, 175 F. Supp. 2d 401, 421 (E.D.N.Y. 2001); *accord State Farm Mut. Ins. Co. v. Metro Pain Specialists, P.C.*, 2025 WL 1166982, *8-10 (E.D.N.Y. 2025) (dismissing GBL § 349 claim in the context of a dispute over denial of no-fault payments).

96

This Court should therefore dismiss all state-law claims against the Schwitzer Defendants. Alternatively, if any state-law claims remain after dismissal of the RICO claims, this Court should decline to exercise supplemental jurisdiction over them in light of the early stage of this litigation and should relegate plaintiffs to pursuing such claims in state court. *See United States v. McKesson Corp.*, 2024 WL 4635494 (S.D.N.Y. 2024), *citing Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2021).

## CONCLUSION

For the foregoing reasons, the Schwitzer Defendants respectfully request that the Court dismiss the FAC with prejudice.

## INDIVIDUAL SECTION VI – THE McCULLOCH DEFENDANTS

Defendants McCulloch Orthopaedic Services, PLLC and Kevin Wright, M.D. (the "McCulloch Defendants") respectfully submit the following in further support of their motion to dismiss Plaintiffs' Amended Complaint (the "FAC").[29]

### A.    Plaintiffs Lack Standing to Assert Their RICO Claims.

Plaintiffs cannot establish RICO standing against the McCulloch Defendants since they failed to allege causation of any "clear and definite" injury from any predicate act alleged against them. *See Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir. 1990).  *See* FAC ¶¶ 169, 175, 176, 390-392, 410, 424, 425, 472, 473.  Instead, Plaintiffs allege the McCulloch Defendants rendered 2 "unnecessary" medical treatments and transmitted "fraudulent" documents to the Worker's Compensation Board, (the, "WCB").  Even if the Court accepts these allegations as true, Plaintiffs fail to establish a direct harm, since they do not allege they made any payment directly related to any act of the McCulloch Defendants.  Plaintiffs' alleged harms are entirely contingent upon predicate injuries to third parties, including non-party construction employers, the WCB, and the actual primary insurers. Because such attenuated harms are insufficient for RICO standing, Plaintiffs' claims should be dismissed.  *See Subin*, 2025 WL 1713109, at *6 (dismissing RICO claims because the alleged injuries were "definitionally multiple steps away from the alleged fraud"); *Id.* at *4 (dismissing RICO claims because the alleged injuries were "contingent on harms suffered by insurers, which are themselves contingent on the harms suffered by the construction employers.")

---

[29]    The McCulloch Defendants adopt and incorporate by reference all arguments set forth in the joint sections of this brief that apply to all Defendants and the arguments made in the various subsections prepared by each Co-Defendant, as applicable.

B.    **Plaintiffs Inadequately Plead Participation in the Operation or Management of the Alleged RICO Enterprise.**

To plead a sufficient RICO claim Plaintiffs must allege that the McCulloch Defendants are members of a RICO enterprise consisting of an "ongoing organization" that functions as a "continuing unit," with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose." *Boyle v. United States, 556 U.S. 938, 945 (2009).* Moreover, Plaintiffs must plead how the McCulloch Defendants played some part in directing the enterprise's affairs. *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 306 (E.D.N.Y. 2017). The mere delivery of services that may benefit an enterprise is insufficient to plead membership in the enterprise, nor may a defendant be held liable for merely "providing goods and services that ultimately benefit the enterprise," "even when the defendant is aware of the enterprise's unlawful activity." *Moss*, 258 F. Supp., 306-307.  "Indeed, it is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself." *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* 955 F. Supp. 248, 254 (S.D.N.Y. 1997*); See, also Kriss v. Bayrock Grp. LLC,* No. 10-cv-3959, 2016 WL 7046816, at *17 (S.D.N.Y. Dec. 2, 2016) ("The TAC makes more allegations against the Salomon Defendants— including that they became involved in the Enterprise in 2003 and prepared financial documents in connection with many alleged fraudulent schemes—but still fails to show that the Salomon Defendants directed the Enterprise in any way.").

The FAC fails to sufficiently allege that the McCulloch Defendants are members of "an ongoing organization" or a functioning unit as required under *Boyle,* 556 U.S.at 945.  First, the FAC fails to plead facts which demonstrate that the McCulloch Defendants "operated or managed"

the alleged enterprise.  Second, Plaintiffs rely solely on conclusory allegations that the McCulloch Defendants engaged in wrongful conduct and knew of the alleged enterprise's unlawful activity. Third, the FAC fails to allege that the McCulloch Defendants ever met or communicated with any other Defendant, and particularly the Schwitzer Firm. FAC ¶¶ 536, 537, 538.  While the FAC generally asserts that the Schwitzer firm "regularly monitors the Medical Provider Defendants…" and that the McCulloch Defendants' medical care was "part of their ordinary course of business…" these vague conclusory assertions are the only pleaded links to the alleged enterprise.  FAC ¶¶ 178, 497, 498.  Moreover, the FAC is barren of any factual assertion that the McCulloch Defendants had any control or authority within the alleged enterprise. Instead the FAC asserts facts that plead their routine patient care as an independent medical practice.  The failure to allege facts showing "coordination" with the other Defendants in the alleged enterprise is fatal. *BMO Harris Bank,* 258 F. Supp. 3d 289 at 306 (dismissing RICO claim for failure to adequately assert facts showing knowing coordination among defendants to operate an enterprise).

### C.    The Mail and Wire Fraud Predicate Act Allegations Are Conclusory, Speculative and Insufficient.

The FAC alleges four predicate acts of mail or wire fraud against the McCulloch Defendants between December 2021 and October 2024, based on the alleged conveyance of insurance claim forms and medical reports to the WCB concerning 2 patient - Claimants.  *See* FAC ¶¶ 175, 176, 424, 425.  This pleading does not satisfy Rule 9(b).

### 1.    Plaintiffs Rely on Unsupported Lay Medical Opinions to Allege Predicate Acts Against the McCulloch Defendants.

Plaintiffs rely on their own lay medical opinions when alleging fraud in the McCulloch Defendants' records.  First, following a construction accident in May, 2022, Claimant A presented to an emergency room with no documented complaint of injury to his right wrist, but in December

of 2023, he presented with complaints of this long-standing injury, and explained it had been caused by his construction accident. The FAC reveals that right wrist surgery was not aggressively performed, but was performed eleven months later in September 2024 by Kevin Wright, M.D., with a single post-operative evaluation in December of 2024. *Id.* ¶¶ 154, 155, 169, 424, 425. The FAC alleges that the McCulloch Defendants' transmission of related insurance claim forms and records to the WCB constituted mail or wire fraud because "[s]uch reports were submitted as if Claimant A's injuries were causally connected to [the alleged] accident and that treatment for such was warranted and necessary," and "no such injuries existed" as reflected in Claimant A's ER records. *Id.* ¶ 424, 425.

The other alleged unnecessary treatment concerns Claimant C, who fell in October 2021 and reported pain in the right ankle to an emergency room physician, who documented the complaint. *Id*. at ¶ 210 - 214. Claimant C then sought care for a left ankle injury from McCulloch employee Siddhartha Sharma, DPM in December of 2021. *Id.* ¶ 223. Claimant C related his ankle injury to the workplace incident and was referred to a nonparty radiology practice for an imaging study. No further treatment was provided by any McCulloch Defendant. The medical record and invoice for the December 2021 evaluation was sent to the WCB. *Id.* 472-473.

Even with the quizzical allegation that Dr. Sharma provided minimal care, Plaintiffs incomprehensively allege that Drs. Sharma and Wright should have examined their patients, delayed final preparation of their examination documentations, obtained the emergency room and other records connected with each patient's injuries, nullified their patient's account of their injuries, adopted the emergency record's contents as their own, and send *those* reports to the WCB. That Drs. Wright and Sharma did not adopt Plaintiffs' alternate universe of medical practice,

101

underlies the asserted predicate acts of mail or wire fraud, however, adherence to Plaintiffs' medical documentation paradigm would constitute palpable professional misconduct. [30]

Moreover, these same fraud allegations do not meet the heightened standard of Rule 9(b); this, because fraud allegations which are merely based on matters of professional judgement, clinical assessment, or differences of medical opinion do not adequately plead fraud. In *Allstate Ins. Co. v. Advanced Health Pros., P.C.*, 256 F.R.D. 49, 59–60 (D. Conn. 2008) (the court rejected Allstate's RICO claim since it failed to "explain why the treatment was unnecessary" or "why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered"). "[The] difference of opinion in the medical community regarding the efficacy of the procedures utilized by petitioner, thereby negat[es] an inference of fraud… [Plaintiff's] allegations failed to explain why Defendants' reimbursement claim forms, which demonstrate this conduct by Defendants, were fraudulent in the manner required under Rule 9(b)"); *Allstate Ins. Co. v. Passaro-Henry*, 660 F. Supp. 2d 317, 324 (D. Conn. 2009).

### 2.    The FAC Does Not Plead a Strong Inference of Fraudulent Intent.

The FAC alleges that the McCulloch Defendants provided "unnecessary" orthopedic services and committed fraud by knowingly creating and delivering inaccurate medical records and invoices to the WCB. FAC ¶¶ 424, 425. On the one hand, Plaintiffs allege a fraudulent intent *because* the McCulloch defendants relied on their patients' physical examination complaints and their narration of their own history.  On the other hand, Plaintiff cites no regulation or recognized standard of practice that creates the duty to investigate the patient's medical history when the

---

[30] 8 NYCRR § 29.2(a)(3) —The Rules of the Board of Regents defines "unprofessional conduct" for licensed physicians, which includes failing to maintain adequate records constitutes unprofessional conduct. Adequate records include information which includes "the patient's condition and complaints, and the evaluation and treatment provided."

patient is able to articulate his history and complaints, and participate in a physical examination that productively yields a working diagnosis. Therefore, the Court should not attribute a fraudulent intent to the McCulloch Defendants' adherence to conduct which conforms to the requirements of Regents Rule 29.2(a)(3).

Additionally, the FAC's assertions concerning Patient C's care strongly militates against a fraudulent intent. That, Dr. Sharma did not feel treatment was warranted to Claimant C, and discontinued care after his initial visit cannot suggest an inclination to excessively treat or bill for medical services. In connection with Claimant A, the Plaintiff reinsurer alleges a lay opinion concerning his right wrist surgery, merely speculates about the mechanism of this patient's injury and asserts that Dr. Wright was duty-bound to ignore his patient examination findings and the patient's description of the injury's history. Plaintiffs do not allege *facts* to support an inference that the McCulloch Defendants ever communicated with the Schwitzer Firm or any other Medical Provider Defendant concerning any patient's care.

Therefore, the FAC's unsupported allegations that the McCulloch Defendants knowingly "profited" from reimbursements for "unnecessary" medical services and increased patient referrals, FAC ¶¶ 393, 394, does not plead a fraudulent intent.

### D.    The Fraud Count Fails Because It Does Not Plead Direct Reliance.

In addition to the reasons set forth above, the FAC's fraud claims fail because Plaintiffs do not plead direct reliance on the McCulloch Defendants' alleged fraudulent documents. Rather, Plaintiffs plead indirect reliance, which is insufficient as a matter of law. First, the FAC does not allege that the McCulloch Defendants submitted any documents to Plaintiffs. Second, the FAC fails to assert – and cannot assert that the McCulloch Defendants intended that their records would reach Plaintiffs through the WCB or the Schwitzer Firm. Third, the FAC does not allege that the

103

McCulloch Defendants received any payments from Plaintiffs. Fourth the FAC cannot assert that the McCulloch Defendants were even aware of Plaintiffs' existence.  Recalling Plaintiffs' reinsurer-ceding-fronting subrogating insurer assertions, the McCulloch Defendants could not have intended that Plaintiffs would rely on any of their records or invoices. See *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194 (2d Cir. 1998). ("We hold that a plaintiff does not establish the reliance element of fraud … by showing only that a third party relied on a defendant's false statements.")  See, e.g., *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008) (… allegations of third-party reliance … are insufficient to make out a common law fraud claim under New York law).     Accordingly, the fraud claim against the McCulloch Defendants should be dismissed.

Therefore, Counts I – VII should be dismissed as to the McCulloch Defendants.

104

## INDIVIDUAL SECTION VII – THE NYSI DEFENDANTS

**A.    The FAC Should Be Dismissed as Against the NYSI Defendants.**

**1.    Plaintiffs Lack Standing to Bring RICO Claims Against the NYSI Defendants.**

Even if Plaintiffs are "primary insurers" (they are not), the FAC still fails to establish that they have standing to assert a RICO claim against the NYSI Defendants.

Under 18 U.S.C. §1964, a plaintiff must demonstrate an injury to their "business or property" to establish standing under RICO. "[A] cause of action does not accrue…until the amount of damages becomes clear and definite" (*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)), and the plaintiff must allege "*actual*, quantifiable injury" to state a claim. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) (emphasis in original).

The FAC fails to allege that Plaintiffs sustained a quantifiable injury resulting from the NYSI Defendants' conduct. While Plaintiffs attack the necessity of surgeries Dr. de Moura performed on Claimants A and C, Plaintiffs do not explain how their business was injured because of those operations. Plaintiffs ***do not*** allege that they paid any insurance claim made by the NYSI Defendants. (FAC ¶¶157, 167, 173-174, 233-236, 395, 426-427, 480-481). In fact, with respect to Claimant A, the FAC suggests that the NYSI Defendants' claim was not approved and, therefore, not paid. (*Id.* ¶¶173-174). Count I should be dismissed as against the NYSI Defendants for this reason alone.

**2.    The FAC Fails to Plead the Elements of a RICO Claim Against the NYSI Defendants.**

To state a RICO claim, a plaintiff must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).

As to the second element, the FAC fails to allege that the NYSI Defendants are part of an association-in-fact enterprise. It does not allege the existence of a relationship between the NYSI Defendants and any other defendant and, in fact, ***does not allege that the NYSI Defendants ever even spoke to the other defendants***. Count I cannot survive this motion as a result. *See, e.g.*, *Malek v. AXA Equitable Life Ins. Co.*, 2023 WL 2682408 (E.D.N.Y. Mar. 29, 2023) (plaintiff failed to plead how defendants "communicated with one another, coordinated with one another, or maintained interpersonal relationships"); *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021) (no allegation that defendants "were even aware of each other's existence, let alone that they agreed to participate with each other in a criminal enterprise").

Plaintiffs also failed to plead a "pattern" of racketeering activity, *i.e.*, a threat of continuous criminal activity that is "closed-ended" or "open-ended." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The FAC does not allege closed-ended continuity since it claims that the NYSI Defendants engaged in predicate acts of mail and wire fraud for only seventeen months. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (closed-ended continuity requires criminal conduct for more than two years). Plaintiffs also failed to plead open-ended continuity because the NYSI Defendants' business is not inherently unlawful and there are no allegations suggesting that submitting fraudulent insurance claims was their "usual way" of conducting business. *Id.* at 184; *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999).

Finally, the FAC fails to adequately plead acts of racketeering by the NYSI Defendants. "Racketeering activity" requires predicate acts "indictable under various specified federal statutes", and all the elements of such crimes must be pled. *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

Plaintiffs assert that the NYSI Defendants committed mail and wire fraud. "The elements of those crimes are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). The elements must be pled with particularity pursuant to Federal Rule 9(b), which requires the plaintiff to "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* The plaintiff must also allege "knowing or intentional participation" by "each defendant." *Hagigi v. Yukhananov*, 2024 WL 4028333, at *4 (E.D.N.Y. Sept. 3, 2024).

The FAC fails to plead the elements of mail and wire fraud because Plaintiffs failed to allege that the NYSI Defendants ever spoke to, much less formed a fraudulent plan with, the other defendants. And, while Plaintiffs claim that the NYSI Defendants submitted false insurance claims, they fail to explain ***how*** the claims were false. Plaintiffs allege only that Dr. de Moura knew or should have known, based on emergency room records, that the claimants were not injured in work-related accidents. (FAC ¶¶426-427, 480). However, elsewhere in the FAC, Plaintiffs ***admit*** that claimants' emergency room records reflect that they were injured at work. (FAC ¶¶154, 213-214). Therefore, if Dr. de Moura could have gleaned anything from these records, it is that Claimants A and C ***were*** injured at work.

That the emergency room may not have diagnosed the same injuries Dr. de Moura later identified does not amount to fraud; at most, it reflects a difference in medical opinion. *See Allstate Ins. Co. v. Advanced Health Pros., P.C.*, 256 F.R.D. 49, 60 (D. Conn. 2008) (Plaintiffs "[do] not explain why the treatment was unnecessary…or why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical

treatment rendered"). To conclude otherwise would effectively mean that, unless an injury is detected in a busy emergency room, it does not exist. Common sense dictates that this is not true.

As to Plaintiffs' claims of witness bribery, the FAC fails to plead facts suggesting that the NYSI Defendants violated Penal Law § 215 by offering to confer a benefit upon a person about to be called as a witness in order to influence that witness's testimony. Nor does the FAC establish that the NYSI Defendants violated the Travel Act, 18 U.S.C. §1952. as there are no allegations that they "arrang[ed] and coordinat[ed] out of state surgeries." (FAC ¶538).

The RICO conspiracy claim (Count II) stands and falls with Count I. Even if Count I were viable (it is not), the conspiracy claim fails because the complaint is devoid of any "factual basis for a finding of a conscious agreement among the defendants" (*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990)) or that the NYSI Defendants had knowledge that predicate acts would be committed by members of [the] enterprise." *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 481 (S.D.N.Y. 2015).

### 3.    State Law Claims

Plaintiffs' remaining state law claims should be dismissed because there is no basis for the exercise of supplemental jurisdiction. *See Nat'l Union Fire Ins. Co. v. Archway Ins.*, 2012 U.S. Dist. LEXIS 48735, at *17-18 (S.D.N.Y. Mar. 23, 2012) ("[i]t is well settled that where federal claims are dismissed in the early stages of litigation, courts should generally decline to exercise jurisdiction over remaining state claims that do not implicate preemption issues").

These claims are also legally insufficient. The common law fraud claim (Count III) requires allegations: (1) of a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam*

108

*Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015). The FAC is insufficient because, among other things: (1) Plaintiffs allege that the NYSI Defendants misrepresented that the injuries of Claimants A and C were work-related, but they fail to allege that the NYSI Defendants knew such statements were false or that they acted with an intent to defraud; (2) the FAC admits that the claimants' emergency room records reflect that they were injured at work; (3) neither Plaintiff "relied" upon any alleged misrepresentation—the Workers' Compensation Board decided insurance claims based on the forms submitted; and (4) Plaintiffs have not shown that any injuries they sustained were caused *by* the NYSI Defendants.

Count IV claims that the NYSI Defendants aided and abetted fraud. Because an aiding and abetting claim stands or falls with the underlying tort, Count IV fails since Count III is deficient. *See William Doyle Galleries, Inc. v. Stettner*, 167 A.D.3d 501, 505 (1st Dep't 2018). Additionally, "[a]n aiding and abetting cause of action must allege facts giving rise to a strong inference that the defendant actually knew of the underlying harm or was willfully blind to it, and rendered substantial assistance, including concealing, or failing to act when required to do so, enabling the harm to proceed." *Sayles v. Ferone*, 137 A.D.3d 486, 486 (1st Dep't 2016). The FAC pleads none of these elements.

Plaintiffs' unjust enrichment claim (Count V) fails because it "simply duplicates or replaces" the fraud and RICO claims insofar as all three are based on identical allegations. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).

Plaintiffs' GBL § 349 claim (Count VI) is particularly meritless. The statute provides that it is unlawful to perform "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state…." N.Y. Gen. Bus. Law §349(a). A plaintiff "must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's

act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.,* 37 N.Y.3d 169, 176 (2021).

As to the first element, GBL § 349 has limited application to providers of medical services, because "plaintiffs must demonstrate an impact on consumers at large--something that a physician's treatment of an individual patient typically does not have…." *Karlin v. IVF Am., Inc.,* 93 N.Y.2d 282, 294 (1999) (medical providers subject themselves to GBL § 349(a) only when they "choose to reach out to the consuming public at large…."). A complaint alleging that a physician made misrepresentations to a single person or entity—like the FAC—fails to state a claim under GBL § 349(a). *See Nadler v. Samadi*, 188 A.D.3d 537, 537-38 (1st Dep't 2020).

As to the third element, Plaintiffs fail to plead a direct injury—the only type of injury for which damages are recoverable under GBL § 349—as was true of their RICO claims. *See Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.,* 3 N.Y.3d 200, 207 (2004) (recovery may not be had under GBL § 349 for indirect or derivative injuries); *see also New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 623 (2009) (plaintiff cannot "avoid the derivative injury bar by merely alleging that its suit would somehow benefit the public").

Finally, as to the claim for declaratory relief (Count VII), the Declaratory Judgment Act vests a district court with discretion to adjudicate—or to decline to adjudicate—such a claim. Where, as here, a plaintiff attempts to utilize a declaratory judgment claim to have the court declare the substance of his fraud allegation, the declaratory judgment claim should be dismissed. *See Koch v. Rodenstock*, 2012 WL 5844187, at *45 (S.D.N.Y. May 9, 2012); *see also Charles Schwab & Co. v. Retrophin, Inc.*, 14-CV-4294 (ER), 2015 WL 5729498, at *15 (S.D.N.Y. Sept. 30, 2015)

110

(dismissing declaratory judgment claim where Plaintiff essentially sought a declaration stating that the allegations proffered in support of their substantive claims are true).

For all these reasons, the FAC should be dismissed in its entirety as against the NYSI Defendants.

## INDIVIDUAL SECTION VIII – THE INTERVENTIONAL DEFENDANTS

Defendants Interventional Pain Management & Rehab., P.C. and Vadim Abramov, M.D. (together, the "Interventional Defendants") respectfully submit the following in further support of their motion to dismiss the FAC.

## STATEMENT OF FACTS

Plaintiffs allege that the Interventional Defendants furthered the "fraudulent scheme" by providing claimants with "unnecessary" steroid injections and "excessive" physical therapy. FAC ¶¶ 222, 403. The Interventional Defendants also allegedly documented this treatment, knowing all along that said documentation would be used to "falsely bolster and add value" to personal injury lawsuits. *Id.* at ¶ 406. Interestingly, however, according to Plaintiffs' own allegations, their purported case study for said fraudulent conduct – "Claimant C" – received neither unnecessary injections nor excessive physical therapy. *See id.* at ¶¶ 221-225.

Claimant C is supposedly a construction worker who was struck in the head by a large, falling object and rendered unconscious while working. *See id.* Plaintiffs allege that the Interventional Defendants treated Claimant C by providing him with physical therapy and referring him to other physicians, including a neurologist, for further evaluation. *Id.* at ¶¶ 221-222. Plaintiffs do not clearly allege how this scenario supports an inference of fraudulent conduct on the part of the Interventional Defendants. At most, Plaintiffs merely imply that Claimant C must have been lying to the Interventional Defendants because records reflect (1) that he was wearing a hard hat at the time of the incident, and (2) he has a spotty recollection of what object struck him and how long he may have been unconscious. *See id.* at ¶¶ 221-225. They do not, however, allege any factual basis from which to infer that the Interventional Defendants knew that Claimant C was lying or that their reports would be used in allegedly fraudulent lawsuits. *See generally id.*

Nonetheless, Plaintiffs allege that, on four separate dates in 2022 and 2023, the Interventional Defendants engaged in a RICO predicate act when they "transmitted by mail, facsimile or email" a health insurance claim form and report of Claimant C's examination to the WC Board, knowing that said forms and reports would be used to further a fraudulent scheme based on litigation activities. *Id.* at ¶¶ 468-471.

## A.    Plaintiffs Lack Standing to Bring RICO Claims Against the Interventional Defendants.

The Court should disregard Roosevelt's allegations that it acted as "primary insurer" in place of Accredited, as these allegations run contrary to basic factual allegations in Plaintiffs' original complaint. *See Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d 470, 491 (S.D.N.Y. 2025). Such allegations serve only to avoid the necessary conclusion that Plaintiffs, as a reinsurer and its managing agent, are too far removed from the alleged injury to sustain their claims against the Interventional Defendants. *See Roosevelt Rd. Re, Ltd. et al. v. Subin, et al.*, No. 24-cv-05033 (HG), 2025 WL 1713109 (E.D.N.Y. June 19, 2025).

Even assuming, *arguendo*, Plaintiffs have been acting as "primary insurers," their RICO claims against the Interventional Defendants nonetheless fail. As set forth in Point I(A), Plaintiffs are not licensed to act as primary insurers, meaning their alleged conduct is illegal and they cannot assert any rights derived therefrom. *See In re Colonial Realty Co.*, 209 B.R. 819, 823 (Bankr. D. Conn. 1997) (citing *Gibbs & Sterrett Mfg. Co. v. Brucker*, 111 U.S. 597, 501 (1884)).

## B.    Plaintiffs are Estopped from Bringing Claims Against the Interventional Defendants.

Plaintiffs are collaterally estopped from arguing the issue of standing based on *Subin II*, wherein the Court incorporated by reference its decision from *Subin I* and dismissed Plaintiffs' claims with prejudice. There are two requirements for invocation of collateral estoppel. *Buechel v.*

*Bain*, 97 N.Y.2d 295, 303–04 (2001). First, there must be an identity of issue necessarily decided in the prior action and decisive of the current action. *Id.* Second, there must have been a full and fair opportunity to contest the decision said to be controlling. *Id.* As relevant here, the doctrine may be invoked against a party from the prior action, or one in privity with that party. *Id.* at 308.

Here, there can be no question that *Subin I* and, by virtue of incorporation, *Subin II*, decided the issue of standing against Plaintiffs, and that the issue of standing is decisive in this action. Further, based on the FAC, Plaintiffs and Accredited were in privity with each other when *Subin II* was decided, as Plaintiffs were (and are) Accredited's subrogee. FAC ¶¶ 148, 499. Accordingly, Plaintiffs could have argued standing in their capacity as subrogee in the original *Subin I* complaint, or even in the first amended *Subin I* complaint, but chose not to do so. In other words, the full and fair opportunity to assert the issue of standing existed, both before and after defendants in *Subin I* had filed pre-motion conference letters challenging the pleading on standing grounds.

Instead, Plaintiffs amended to assert their rights as subrogees in their second amended complaint, which was rejected by the Court. *See generally Subin II*, No. 24-CV-05033 (HG) (E.D.N.Y. Sept. 16, 2025) (ECF 68). Fairness does not require that Roosevelt now be permitted to relitigate this issue as against the Interventional Defendants. *See, e.g.*, *CP III Rincon Towers, LLC v. Cohen*, No. 10-cv-4638 (JMF), 2021 WL 5771878, at *3 (S.D.N.Y. Dec. 6, 2021) (applying collateral estoppel where plaintiffs were in privity with plaintiffs in prior California action).

In the alternative, Plaintiffs are estopped from bringing this action as a whole based on the doctrine of res judicata. The doctrine of res judicata provides that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024). Here, identical claims asserted by

114

Plaintiff in the FAC have been resolved by this Court in *Subin II*. Accordingly, Plaintiffs' claims should be dismissed in their entirety. *See Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 291 (E.D.N.Y. 2024) (lack of standing claims dismissed on res judicata and collateral estoppel grounds).

### C.    Plaintiffs Have Failed to Plead Any RICO Claims Against the Interventional Defendants.

As a matter of law, none of the facts alleged as to the Interventional Defendants suffice to support a RICO claim. *Id.* at ¶¶ 221-225.

First, when the predicate act is wire fraud, there must be a communication in interstate or foreign commerce in furtherance of the scheme. *United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 70 (S.D.N.Y. 2015). Accordingly, to the extent the alleged predicate acts consist of the Interventional Defendants either emailing or faxing documents to the WC Board, they are insufficient on their face, as they consist solely of intrastate activity, i.e., New York medical providers sending documents to a New York organization. *See also United States v. Muni*, 668 F.2d 87, 89 (2d Cir. 1981) (email was "interstate" depending on location of computers where it was sent and/or received).

Second, "the overwhelming weight of authority bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate racketeering acts. . . ." *Carroll v. U.S. Equities Corp.*, No. 118-CV-667 (TJM) (CFH), 2019 WL 4643786, at *12 (N.D.N.Y. Sept. 24, 2019) (emphasis added). Here, the gravamen of Plaintiffs' allegations is that the Interventional Defendants falsified and transmitted claims forms and reports knowing that they would be used to inflate the value of personal injury lawsuits. FAC ¶ 406. Accordingly, these alleged "predicate acts" amount to litigation activities, which cannot sustain a RICO claim. *See Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y.

2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011) (granting dismissal where gravamen of complaint and theory underlying fraudulent scheme was based on litigation activities).

Even assuming, *arguendo,* that the conduct alleged can suffice as a RICO predicate act as a matter of law (it cannot), Plaintiffs' RICO claims nonetheless fail for lack of particularity. "Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved and where and when they took place, and should explain why they were fraudulent." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 412 (S.D.N.Y. 2013). They must also demonstrate that the defendant harbored a fraudulent intent at the time the alleged predicate acts occurred. *See id.* at 413.

Here, Plaintiffs allege that the Interventional Defendants furthered the scheme by treating patients with unnecessary injections and excessive physical therapy. FAC ¶¶ 222, 403. They allege that Claimant C received physical therapy from the Interventional Defendants before his lawsuit was commenced and imply that Claimant C did not have injuries requiring referrals to other physicians including, for instance, a neurologist. *Id.* ¶¶ 221-222.

From these facts, Plaintiffs then infer that, by transmitting claims forms and reports to Tradesman and the WC Board, the Interventional Defendants engaged in fraud. *Id.* ¶¶ 468-471. Plaintiffs do not, however, plead the exact words involved in the alleged fraudulent misrepresentation. Nor do they even make clear the general content of the misrepresentation, i.e., whether the Interventional Defendant misrepresented that Claimant C was injured at all, that physical therapy was necessary, that a certain amount of physical therapy was necessary etc. Absent these details, the FAC is deficient and must be dismissed as to the Interventional Defendants for failure to satisfy Rule 9(b). *See, e.g., Colony at Holbrook, Inc. v. Strata G.C., Inc.*,

928 F. Supp. 1224, 1232 (E.D.N.Y. 1996) (amended complaint did not include statement alleging defendants' exact words or general content of misrepresentation).

**D.      The Interventional Defendants Adopt the Remaining Arguments Set Forth in the Joint Brief.**

In addition to the above, the Interventional Defendants hereby adopt the remaining arguments set forth in the Joint Brief in Support of Defendants' Motion to Dismiss the First Amended Complaint.

## CONCLUSION

For these reasons, the FAC should be dismissed as against the Interventional Defendants in its entirety.

## INDIVIDUAL SECTION IX – THE TOTAL ORTHO DEFENDANTS

Defendants Orthopaedics Spine & Sports Medicine, LLC d/b/a Total Orthopaedics & Sports Medicine and Vadim Lerman, D.O., (collectively "Total Ortho") respectfully submit the following in further support of their motion to dismiss the FAC.[31]

In addition to the arguments set forth below, Total Ortho fully adopts and incorporates by reference the supplemental sections of this brief submitted by the Pain Defendants and by Katzman Ortho.

## ARGUMENT[32]

### A.    Plaintiffs Rely on Time-Barred Allegations.

Plaintiffs filed this action on June 16, 2025 (ECF 1).  To be timely, Plaintiffs' RICO and General Business Law ("GBL") claims against Total Ortho must have accrued on or after June 16, 2021 and June 16, 2022, respectively. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) ("RICO claims are subject to a four-year statute of limitations"); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (N.Y. 2001) (applying three-year statute of limitations to GBL claims).  But Plaintiffs' claims against Total Ortho rely, in part, on acts that allegedly occurred on November 14, 2020 and April 7, 2021. *See* FAC, ¶¶ 448, 487.  To the extent Plaintiffs' claims against Total Ortho rely on these time-barred allegations, they are facially improper and should be dismissed.

---

[31]    In addition to Dr. Lerman, the FAC also alleges Defendant Abishek Kumar, M.D. performed certain predicate acts, as an employee of Total Ortho, in furtherance of the purported scheme. *See, e.g.*, FAC ¶¶ 21, 255, 264, 350, 355, 492, 493. Dr. Kumar is represented by separate counsel and is submitting a separate supplemental section of this brief.

[32]    Total Ortho adopts all arguments set forth in the joint sections of this brief applicable to all Defendants. Total Ortho also adopts, to the extent applicable, the arguments made in the various subsections prepared by each Defendant group.

**B.  Plaintiffs Lack Standing to Assert Their Claims Against Total Ortho.**

RICO standing requires a concrete injury to the Plaintiffs' business or property, along with clear, definite damages stemming directly from that injury.  *See Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir. 1990).  Here, Plaintiffs fail to allege any direct or quantifiable damages—much less any "clear and definite" injury from any predicate act allegedly committed by Total Ortho.  *See* FAC ¶¶ 194, 255, 258, 263, 344, 354, 355, 446, 448, 487.  Even assuming the Court accepts their legally defective "primary insurer" theory (*see* Point I(B), *supra*), Plaintiffs do not allege to have paid out single dollar because of any allegedly-unnecessary medical treatment rendered by Total Ortho. Plaintiffs' alleged harms are wholly contingent upon predicate injuries to (among others) the various non-party construction employers and the WCB, and thus insufficient for RICO standing.  *See Subin*, 2025 WL 1713109, at *4–6.

**C.  Plaintiffs Fail to Adequately Allege RICO Claims Against Total Ortho.**

**1.  Plaintiffs Fail to Adequately Plead Predicate Acts Against Total Ortho.**

Plaintiffs must adequately plead that Total Ortho engaged in two or more acts of "racketeering activity."  18 U.S.C. § 1961(1).  The FAC relies on alleged predicate acts of mail and/or wire fraud, but Plaintiffs fail to plead either.[33]

Fraud-based RICO claims are heavily scrutinized "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).  For this reason, such claims are also governed by the heightened pleading standards of Federal Rule 9(b), which requires plaintiffs to "detail the specific statements that are false or fraudulent, identify the speaker, state

---

[33]    The FAC also alleges bribery, but not by Total Ortho.  Nevertheless, we respectfully refer the Court to the joint section of this brief addressing Plaintiffs' failure to adequately plead bribery.

119

when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Thus, to sufficiently plead fraud under RICO, Plaintiffs must provide "the factual basis which gives rise to a <u>strong inference</u> of fraudulent intent." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (emphasis added). Further, where a RICO plaintiff alleges racketeering activity based on the predicate acts of mail or wire fraud, they must prove, among other things, a "scheme to defraud, including proof of intent." *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526 (S.D.N.Y. 2005)(citing *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996). Here, Plaintiffs fail to do so.

The FAC merely asserts that Total Ortho provided "excessive" or "unnecessary" medical treatment to two Claimants (namely Claimants B and D). *See, e.g.*, FAC ¶¶ 448, 487. These allegations are based primarily on alleged inconsistencies between Total Ortho's treatment decisions and preliminary diagnoses made by emergency room staff. But Plaintiffs are in no position to substitute their own medical judgment for that of the licensed orthopedic specialists who examined and treated the patients in question. Courts have been clear that mere differences of medical opinion do not amount to fraud. *Allstate Ins. Co. v. Advanced Health Pros., P.C.,* 256 F.R.D. 49, 59–60 (D. Conn. 2008) (rejecting RICO claim where plaintiff failed to "explain why the treatment was unnecessary" or "why Defendants' submission of bills listing such treatment constitutes fraud, as distinguished from challenges to choice and proficiency of medical treatment rendered"). [34]

---

[34] To the extent Plaintiffs also rely on the WCB's unfounded decision not to renew Dr. Lerman's privileges, such reliance is misplaced. The WCB's erroneous actions are the subject of a pending Article 78 proceeding. *Vadim Lerman DO v. New York Workers Compensation Board et al.*, Supreme Court, Schenectady County, Index No. 2025/2039. Further, the WCB's decision—though incorrect and unfounded—was based on mere, alleged non-compliance with certain guidelines, <u>not fraud</u>. (*see* FAC ¶ 81).

Further, Plaintiffs allege that Total Ortho evinced intent to defraud because it "knowingly profited" from reimbursement for services and an "increased number of patients referred to them." FAC ¶¶ 354-355. But a generalized profit motive does not establish fraud, and courts consistently reject the notion that compensation for routine professional services may support an strong inference of fraudulent intent. *See, e.g.*, *Dinome,* 86 F.3d at 283; *Negrete v. Citibank, N.A.,* 187 F. Supp. 3d 454, 464–65 (S.D.N.Y. 2016); *Friedman v. Ariz. World Nurseries Ltd. P'ship,* 730 F. Supp. 521, 532 (S.D.N.Y. 1990), aff'd, 927 F.2d 594 (2d Cir. 1991) ("It would defy common sense" to find fraudulent intent "satisfied merely by alleging the receipt of normal compensation for professional services rendered").

### 2.    Plaintiffs Fail to Plead a RICO "Enterprise" Involving Total Ortho.

"For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 173 (2d Cir. 2004). Here, Plaintiffs do not sufficiently allege that Total Ortho shared any interaction with the other Defendants that would constitute "work[ing] together" and "function[ing] as a continuing unit … to achieve [the] purposes of" the alleged RICO enterprise. *Id.* at 174. Indeed, Plaintiffs fail to identify any specific communications or concrete examples of coordination between Total Ortho and the other alleged participants that sufficiently suggests interpersonal relationships. *Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826CBALB, 2017 WL 57802, at *4 (E.D.N.Y. Jan. 4, 2017) ("Without factual allegations showing these 300 defendants had an interpersonal relationship in which they worked together for a common illicit interest, Abbott's pleadings constitute nothing more than the "conclusory naming of a string of entities" combined with legal conclusions"). Plainly, "[w]ithout factual allegations that [these defendants] cooperated to form a

121

continuing unit working toward a common purpose, their mere independent, uncoordinated participation . . . does not create a RICO enterprise." *Id.* at 301.

At most, Plaintiffs plead that Total Ortho occasionally referred and/or were referred Claimants to/from other Defendants. *See*, *e.g.* FAC., ¶¶ 80. But mere referrals or routine business interactions do not establish a RICO enterprise. *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 305 (E.D.N.Y. 2017). Worse, Plaintiff's allegations are at odds with their own theory of enterprise. For example, Plaintiffs allege Dr. Salehin of Brooklyn Med has a financial interest in Total Ortho, and refers patients to Dr. Lerman, purportedly in violation of 42 U.S.C. § 1395nn. *See* FAC ¶¶ 76-80. Even if true—which Total Ortho does not concede—this allegation suggests a financial motive wholly independent of the alleged fraud scheme, undermining Plaintiffs' allegations of an "enterprise." Last, Plaintiffs fail to adequately plead that Total Ortho acted on behalf of any alleged enterprise rather than in pursuit of their own independent interests. *See Moss.*, 258 F. Supp. 3d at 301.

### 3. Plaintiffs Fail to Allege A "Pattern" of Racketeering Activity by Total Ortho.

A RICO "pattern" requires "both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). Here, on the first element of "continuity," Plaintiffs offer nothing more than a conclusory, speculative claim that the alleged fraud scheme "will continue into the future unless stopped [.]" FAC, ¶ 498. The FAC contains no allegation of "continuity" specific to Total Ortho, and Plaintiffs have clearly failed to sustain their burden of pleading a "continuous threat." Nor do Plaintiffs' allegations establish that the predicate acts occurred over more than two years. *See, e.g., Weizmann Inst. of Sci. v. Neschis,* 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (rejecting closed-ended

continuity despite alleged scheme lasting nearly seven years when the predicate acts by the specific defendant spanned less than two years).

On the second element of "relatedness," Plaintiffs rely on a series of discrete, isolated acts—some of which are time-barred—related to the treatment of two different individual patients. *See* FAC ¶¶ 446, 448, 487.  Such unrelated acts cannot, as a matter of law, meet the "pattern" requirement.  *Reich*, 858 F.3d at 60 (the "pattern" element aims to prevent the application of RICO to "isolated or sporadic" acts).  Plaintiffs cannot remedy these shortcomings by simply grouping Defendants together to give the appearance of *partial* overlap among the alleged participants in the "fraud scheme."  *See Reich*, 858 F.3d at 63 (holding that overlap among participants is insufficient to satisfy "relatedness").

Plaintiffs do nothing more than challenge Total Ortho's diagnoses and routine medical treatment decisions.  Plaintiffs have not established a link between the sporadic, unrelated predicate acts allegedly committed by Total Ortho, nor have they credibly pled any threat of "continuous criminal activity" by Total Ortho.

### 4.    Plaintiffs Fail To Allege Total Ortho's Participation in a RICO Conspiracy.[35]

A RICO conspiracy claim requires, at minimum, each of the following, as to each individual Defendant: (i) an agreement to join the conspiracy; (ii) knowing participation in that agreement; and (iii) acts taken in furtherance of the conspiracy.  *Black v. Ganieva*, 619 F.Supp.3d 309, 348 (S.D.N.Y. 2022).  Mere allegations of routine business operations or parallel conduct are insufficient.  *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F. Supp. 1078, 1092 (E.D.N.Y.

---

[35]    Plaintiffs' RICO conspiracy claim must also be dismissed because Plaintiffs fail to state a viable substantive RICO claim.  *See ITG Brands, LLC v. Yellowstone Cap., LLC*, 2024 WL 4008230, at *10 (S.D.N.Y. Aug. 29, 2924) ("If a complaint fails to state a substantive RICO claim, it does not state a claim for RICO conspiracy."); *Subin*, 2025 WL 1713109, at *7 (similar).

1990).  Here, Plaintiffs fail to even plead that Total Ortho entered into an agreement with any co-Defendant—let alone with all co-Defendants—and fail to adequately plead the specifics of any such alleged agreement(s).  Plaintiffs claims therefore lack the required specificity and must be dismissed. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 109 (D. Conn. 2014).

## INDIVIDUAL SECTION X – THE PERSICH DEFENDANTS

Defendants All County Foot and Ankle LLP ("All County"), and Gianni Persich M.D. ("Persich"), (collectively, the "Persich Defendants") respectfully submit the following in further support of their motion to dismiss the FAC.[36]

In addition to the arguments set forth below, the Persich Defendants fully adopts and incorporates by reference the supplemental sections of this brief submitted by the Persich Defendants.

### A. Plaintiffs Lack Standing under the RICO statute and the United States Constitution.

Plaintiffs lack both constitutional and statutory standing to assert their RICO claims. Plaintiffs alleged injuries are too remote and attenuated to satisfy the requisite causation standard, as none of the asserted injuries were proximately caused by the Persich Defendants.

The "irreducible constitutional minimum of [Article III] standing" requires that the establish (1) that it suffered an injury in fact, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In addition to showing injury-in-fact, Plaintiffs must also trace a "causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) *See also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Here, as discussed *supra* the Plaintiffs failed to establish that they actually suffered a true injury in fact which is in any way traceable to the Persich Defendants alleged conduct.

An even "more rigorous" standard applies to establish statutory standing under RICO.

---

[36] The Persich Defendants adopt all arguments set forth in the joint sections of this brief applicable to all Defendants. The Persich Defendants also adopt, to the extent applicable, the arguments made in the various subsections prepared by each Defendant group.

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *Edmonson v. Raniere*, 751 F. Supp.3d 136, 173 (E.D.N.Y. 2024). In April 2025, the Supreme Court reemphasized the fundamental prerequisite of RICO standing that there must be a "direct relationship" between the injury asserted and the injurious conduct alleged. *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 945 (2025) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). Plaintiffs must establish that the alleged RICO predicate offense "not only was a 'but for' cause of [its] injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Group*, 559 U.S. at 9 (citing *Holmes*, 503 U.S. at 271, 274); *see also Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006).

In the present case, the Plaintiffs Roosevelt and Tradesmen are a reinsurer and its general managing agent . The Persich Defendants are medical professionals/health care providers who have no direct relationship with either of the Plaintiffs and cannot cause them injury. The Plaintiffs have suffered no direct injury from the Persich Defendants alleged conduct because as a reinsurer is "neither the target of the racketeering enterprise…nor the customer [] of the racketeers". *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (internal citation omitted). If the outrageous accusations against the Persich Defendants were true which they are not, the Plaintiffs would not be the intended fraud target. In this hypothetical conspiracy the Persich Defendants victims would be the defendants in the alleged fraudulent construction/labor lawsuits and possibly their direct paper insurer, not the barely present connection the Persich Defendants have with the Plaintiffs.  ("a [RICO} plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts…stand[s] at too remote a distance to recover."); *Med. Marijuana, Inc. v. Horn*, 145 S.Ct.931, 945 (2025)  ("[W]henever the plaintiff's

theory of causation requires moving well beyond the first step, it cannot meet RICO's direct relations requirement.") (internal quotation marks and citations omitted).  Plaintiffs have not alleged any direct harm caused to them as a result of the Persich Defendants' providing medical treatment injured persons such as Claimant A.  Any purported connection is too remote and attenuated to sustain the pleading.

Finally, the Plaintiffs have failed to allege the presence of any actual injury/damages attributable to the Persich Defendants provision of allegedly unnecessary medical treatment. The Second Circuit Court of Appeals has long held that, "…no civil RICO cause of action for treble damages accrues "until the amount of damages becomes clear and definite." *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018) *quoting First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994). Here, the Plaintiffs baselessly assert in the FAC that the Persich Defendants provided to Claimant A "treatments were neither necessary nor causally connected to the alleged accident." However, the Plaintiffs do not allege that they paid for these unnecessary treatments or that Claimant A received an exorbitant settlement based upon the Persich Defendants conduct. The Plaintiffs have failed to demonstrate standing and the motion to dismiss their action must be granted.

**B.      Plaintiffs Have Failed to Allege the Elements of a RICO Claim Against the Persich Defendants.**

The Plaintiffs pleading is insufficient in alleging the specific allegations as to how the Persich Defendants participated in any RICO scheme/conspiracy. "To establish a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) *See also Curtis v. Greenberg*, 2023 WL 6324324, at *1 (2d Cir. 2023)  Further, any predicate acts of fraud are subject

to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See, Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).  The FAC simply asserts "conclusory allegations of fraud," which "are insufficient to survive a motion to dismiss RICO claims."  *McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-392(FB)(CLP), 2009 WL 2132439, at *5(E.D.N.Y. Jul. 10, 2009). Additionally, to sustain a RICO conspiracy, Plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions*".  Williams v. Affinion Group, LLC*, 889 F.3d 116, 24 (2d Cir. 2018). *See also Butcher v. Wendt,* 975 F.3d 236, 241 (2d Cir. 2020) Here, no agreement between the disparate parties whose activities are entirely uncoordinated has ever been alleged and/or plead.

As to second element, the Plaintiffs' FAC fails to plead that the Persich Defendants are part of an association in fact enterprise. A plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise*." First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (citation omitted)*See also Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335,. Plaintiff fails to establish an enterprise where Defendants functioned together as a "continuing unit with a common purpose".  *Curtis v. Greenberg,* 2023 WL6324324, at *2(2d Cir. Sept. 29, 2023) (internal quotations and citations omitted).  Here, the allegations regarding the relationship among enterprise members are conclusory, vague, indirect and unsupported by specific factual allegations.  This FAC does not describe specific agreements between the Persich Defendants and other Defendandants, how these Defendants knew each other, how referrals were made or specifically how the Persich Defendants' activities differed from their legitimate medical practice. Indeed, the FAC lacks non-conclusory allegations of actual coordination or communication among any of the purported enterprise participants and fails to make any concrete factual assertions as to the mechanics of the interactions among the defendants.  *See, Black v.*

*Ganieva*, 619 F. Supp. 3d 309, 332 (S.D.N.Y. 2022) aff'd, No. 22-1524-CV, 2023 WL.2317173 (2d Cir. Mar. 2, 2023) ("there is no allegation of any meeting or communication among all three enterprise members."); *Dynarex Corp. v. Farah*, No. 18-CV-7072, 2019 WL2269838 at *3 (S.D.N.Y. May 28, 2019) (dismissing RICO claims where Plaintiffs failed to please that Defendants were even "aware of each other's existence").  In short, the FAC fails to articulate the Persich Defendants' involvement in or "articulate any cognizable structure to the RICO enterprise*." Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 189 (E.D.N.Y. 2022).

Third, the FAC should be dismissed because of the inadequacy of the allegations of RICO predicate acts.  The FAC utterly fails to plead, with the required specificity, the predicate acts of mail fraud and wire fraud, as well as the common law claim of aiding and abetting.  Rule 9(b)'s particularity requirements apply to a common law claim for aiding and abetting fraud, just as it applies to the RICO predicate acts of fraud.  *Santana v. Adler*, No. 17-CV-06147, 2018 WL 2172699, *5-6 (S.D.N.Y. Mar. 26, 2018).

Here, the allegations contained in the FAC are the quintessential conclusory, speculative, non-particularized allegations that fail Rule 9. *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, *1-3 (2d Cir. Apr. 4, 2023).  Finally, the facially deficient paragraphs that specifically reference actions taken by the Persich Defendants only plead the acts of fraud upon "information and belief".  FAC at ¶173.  Allegations of fraud based only on "information and belief", without more, do not suffice to satisfy Rule 9 or survive a motion to dismiss.  *Gutterman v. Herzog*, No. 20-CV-1081, 2020 WL 6728787, *3 (E.D.N.Y. Nov. 16, 2020).

Furthermore, because Plaintiff has failed to make a claim under §1962(a)-(c), its RICO conspiracy claim under § 1962(d) also must be dismissed.  *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 212 (E.D.N.Y. 2006).

Finally, because the FAC fails to adequately plead the federal RICO claims, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. §1367(c)(3). *Sehgal v. Aggarwal*, No. 20-CV-4577, 2021 WL3617479, at *6 (E.D.N.Y. Aug. 18, 2021) (dismissing plaintiffs' federal RICO claim and declining to exercise supplemental jurisdiction over the remaining state law claims).

For all these reasons, the FAC should be dismissed in its entirety as against the NYSI Defendants.

## <u>WORD COUNT CERTIFICATION</u>

I, Rachel Morgenstern, an attorney admitted to practice before the United States District Court for the Eastern District of New York, certify, in accordance with and pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, as supplemented by the Court's October 10, 2025, October 24, 2025 and November 3, 2025 Orders, that the foregoing Individual Subsections in Support of Defendants' Motions to Dismiss, dated November 14, 2025, each contain 2,000 or fewer words, exclusive of the table of contents, table of authorities, caption and signature block, and the certification as to the foregoing relies upon the word count feature of the word-processing system used to prepare the document, Microsoft Word.

Dated:  November 14, 2025                        */s/  Rachel Morgenstern*
                                                  Rachel Morgenstern