```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
 ROOSEVELT ROAD RE, LTD., and                              :
 TRADESMAN PROGRAM MANAGERS,                               :
 LLC,                                                      :
                                                           :
                              Plaintiffs,                  :   MEMORANDUM DECISION AND
                                                           :   ORDER
              -against-                                    :
                                                           :   25-cv-3386 (BMC)
 WILLIAM SCHWITZER & ASSOCIATES,                           :
 P.C., et al.,                                             :
                                                           :
                              Defendants.                  :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and several state law theories of liability. Defendants move to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) and the doctrine of collateral estoppel. For the reasons that follow, the motion is granted.

## BACKGROUND

In several cases in this district, plaintiffs, represented by the same counsel, have alleged virtually identical racketeering schemes.[1] In each instance, plaintiffs describe a scheme orchestrated by a law firm to fabricate or inflate construction-related injuries to defraud the insurance companies responsible for the claims. According to plaintiffs, the law firm directs "Runners" to recruit "Claimants," who are mostly non-English speaking construction workers. The Runners coax the Claimants to stage or exaggerate on-site injuries in exchange for pay, the

---

[1] See Roosevelt Road Re, Ltd. v. Hajjar, 24-cv-1549 (E.D.N.Y. Mar. 1, 2024); Roosevelt Road Re, Ltd. v. Subin, No. 24-cv-5033 (E.D.N.Y. July 19, 2024); Roosevelt Road Re, Ltd. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP, No. 24-cv-6259 (E.D.N.Y. Sept. 6, 2024); Roosevelt Road Re, Ltd. v. Liakas Law. P.C., No. 25-cv-300 (E.D.N.Y. Jan. 1, 2025); Roosevelt Road Re, Ltd. v. William Schwitzer & Associates, P.C., No. 25-cv-3386 (E.D.N.Y. Jun. 6, 2025).

value of which would increase *pro rata* with the intensity of the treatment. The Claimants get immediate medical attention from a hospital or emergency room, and the Runners thereafter connect the Claimants with the law firm. The law firm initiates civil suits against the construction companies and files claims with the New York State Workers' Compensation Board for the Claimants. In order to increase settlement leverage, the law firm directs the Claimants to seek further medical attention from various "Medical Professional Defendants" who either provide unnecessary treatment or document treatment that never occurred.

All but one case remains pending. The dismissed case is Roosevelt Rd. Re, Ltd. v. Subin, No. 24-cv-5033, 2025 WL 1713109 (E.D.N.Y. June 19, 2025) ("Subin I"). That case was dismissed because, due to "[p]laintiffs' commercial positions vis-à-vis [d]efendants," their "theory of causation require[d] moving 'well beyond the first step' [and thus could not] 'meet RICO's direct relationship requirement." Id. at *8 (quoting Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 612 (2025)). The court granted plaintiffs leave to amend "out of an abundance of caution," but noted that the infirmities did "not appear to stem from mere pleading deficiencies that can be fixed with additional facts." Id. at *6. And indeed, the next complaint fared no better. See Roosevelt Rd. Re, Ltd. v. Subin, 2025 WL 3049937 (E.D.N.Y. Sept. 16, 2025) ("Subin II").

The dispositive issue in Subin I was plaintiffs' lack of RICO standing,[2] *i.e.*, "[a]s a reinsurer, its injuries are definitionally '[m]ultiple steps' away from the alleged fraud" and thus "Roosevelt's alleged RICO injuries are too attenuated to survive dismissal." See Subin I, 2025 WL 1713109, at *8 (quoting Hemi Grp., LLC v. City of N.Y., 559 U.S. 1, 3 (2010)); see also

---

[2] "RICO standing" is a term of art that refers to a form of statutory standing distinct from Article III standing. See Edmonson v. Raniere, 751 F. Supp. 3d 136, 173 (E.D.N.Y. 2024) ("RICO standing is not jurisdictional, but it is a more rigorous matter than standing under Article III.").

Unigard Sec. Ins. Co. v. N. River Ins. Co., 4 F.3d 1049, 1054 (2d Cir. 1993) ("Reinsurers do not examine risks, receive notice of loss from the original insured, or investigate claims . . . In practice, the reinsurer has no contact with the insured.").

The facts alleged in this case, at least as to plaintiffs' commercial relationships, are practically indistinguishable. See Subin I, 2025 WL 1713109, at *1 ("Roosevelt is a Bermudian reinsurer," not licensed in New York, and "Tradesman is a New York company that acts as a 'management general agency' providing services to various insurers and reinsurers, including Roosevelt."). The only difference is that plaintiffs have creatively repackaged the factual allegations to appear as if they are not as far removed from the alleged fraud.

Because Roosevelt is not a licensed insurer in New York, it cannot operate as an insurance provider here. See N.Y. Ins. L. § 1102(a). Roosevelt attempts to sidestep this law by through its participation in a "fronting" contract with a licensed insurer, Accredited Casualty and Surety Company ("Accredited").[3] According to Roosevelt, "the policies were issued in Accredited's name [but] Accredited did not assume the obligations and liabilities of a primary carrier such as issuing policies, administering claims, posting reserves, defending claims or

---

[3] Defendants contend that this fronting arrangement is illegal and, consequently, Roosevelt's cannot seek judicial intervention. See Eastman Kodak Co. v. Blackmore, 277 F. 694, 698 (2d Cir. 1921) ("Courts of justice will not assist a person who has participated in a transaction forbidden by statute to assert rights growing out of it, or to relieve himself from the consequences of his own illegal act"); BAT, LLC v. TD Bank, N.A., No. 15-cv-5839, 2018 WL 4693644, at *12 (E.D.N.Y. Sept. 28, 2018) ("It is the settled law of New York (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object.").

The Court also questions the legality of the fronting arrangement. See N.Y. OGC Op. No. 06-01-05 (Expressing "concern[] about the issue of fronting" because "[a]ny arrangement or activity that would constitute the aiding of an unauthorized insurer would violate [N.Y. Ins. L. § 2117]."); N.Y. OGC Op. No. 05-12-17 (A "reinsurer may not assume any obligation directly to the underlying insured, through a cut-through or other method because such an obligation would be contrary to the public policy of New York as expressed by the courts."). However, this is a complex question of state law, unnecessary to resolving this motion, and so the Court declines to reach it.

payment expenses leading up and resolving claims [because] Roosevelt and Tradesman assumed them instead."

Based on this arrangement, plaintiffs believe that "Roosevelt [must] step into the shoes of the primary insurer" and therefore has RICO standing. See State Farm v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 71–72 (2d Cir. 2024) (Primary insurer had RICO standing to challenge alleged fraudulent medical billing); GEICO v. Mayzenberg, No. 22-2537, 2024 WL 6292404, at *2 (2d Cir. Nov. 12, 2024) (same). At the same time, however, plaintiffs tellingly admit that "Accredited . . . is unconditionally responsible for payment of [the] claims," reinforcing their true status as reinsurers. See Unigard, 4 F.3d at 1054 (Reinsurers are "not directly liable to the original insured" because "[r]einsurance involves contracts of indemnity, not liability.").

According to defendants, plaintiffs are collaterally estopped from relitigating whether they have RICO standing under these circumstances because the court in Subin I already determined they did not.

## DISCUSSION

"A party may raise a defense of *res judicata*, collateral estoppel, or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record." Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). To resolve the question, the Court must decide whether

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Indagro S.A. v. Bauche S.A., 652 F. Supp. 2d 482, 486 (S.D.N.Y. 2009) (citing Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002)). This doctrine "generally places

4

termination of litigation ahead of a correct result[.]" See SEC v. Monarch Funding Corp., 192 F.3d 295, 304 (2d Cir. 1999).

I. **Identical Issue**

There is no serious dispute that the issue – whether plaintiffs have RICO standing – is identical. Again, a party has RICO standing if the predicate offense was "not only was a 'but for' cause of [the] injury, but was the proximate cause as well." See Hemi Grp., 559 U.S. at 9 (If plaintiff's "theory of causation requires [] mov[ing] well beyond the first step, that theory cannot meet RICO's direct relationship requirement.").

In both cases, the issue is whether Roosevelt and Tradesman, as a reinsurer and its agent, were too far removed from the alleged fraud to have RICO standing. Plaintiffs reject this conclusion by pointing to the factual differences between this case and Subin I, specifically, that this case "name[s] different defendants . . . has different claimants, predicate acts, and a different association-in-fact enterprise." None of that makes any difference.

Collateral estoppel applies where a plaintiff "seeks to repeatedly litigate the same issue by means of more specific pleadings, by repackaging the same factual allegations under different causes of action, or by filing identical actions against different defendants." Zherka v. City of N.Y., 459 F. App'x 10, 13 (2d Cir. 2012) (citing Hickerson v. City of N.Y., 146 F.3d 99, 109-10 (2d Cir. 1998)). Moreover, none of the factual differences described by plaintiffs bear on their RICO standing because what matters is "[p]laintiff's commercial positions vis-à-vis [d]efendants," Subin I, 2025 WL 1713109, at *8, which is unchanged.

II. **Actually Litigated & Necessary**

Likewise, there is no serious dispute that this issue was actually litigated and necessary to the Subin I court's disposition of the case. In Subin I, the defendants filed a pre-motion letter in

advance of moving to dismiss the original complaint on RICO standing grounds. See Subin I, ECF Nos. 17, 18.

In response, plaintiffs filed their own letter, vigorously arguing that they did have RICO standing. See id., ECF No. 21 ("Plaintiffs, however, are not nearly so attenuated as Hemli [sic] . . . Defendants' systemic submissions of false information were . . . proximate causes of [p]laintiffs' losses").

Plaintiffs nonetheless amended their complaint, ostensibly in an effort to plug the holes in their RICO standing theory identified by the defendants, and the defendants moved to dismiss it on virtually the same grounds. Plaintiffs' memorandum in opposition to the motion to dismiss dedicated about nine pages to arguing why plaintiffs "have standing under RICO." See id., ECF No. 46.

But there's more. When the court later dismissed the first amended complaint, it recognized that the issue of RICO standing was actually litigated. See id. at *8 (Noting that "these exact issues regarding injury and causation were raised at the pre-motion stage, after which [p]laintiffs amended."); see also Brandon v. NPG Records, Inc., 840 F. App'x 605, 607-08 (2d Cir. 2020) ("[I]t is clear that the . . . issue was actually litigated and decided in the [prior] litigation [because plaintiff] filed three amended complaints alleging [the issue, and] the parties in that action briefed that issue extensively in connection with defendants' motions to dismiss.").

Finally, plaintiffs' RICO standing was the sole issue in the prior case. See Subin I, 2025 WL 1713109, at *3 ("Defendants raises challenges on several fronts, but their first contention . . . that [p]laintiffs 'lack standing to assert a RICO cause of action'" "is dispositive."). It was therefore necessary to support the judgment. See Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC, 23 F. Supp. 3d 344, 363 (S.D.N.Y. 2014) (Prior court's decision that "[p]laintiff

6

lacked standing" was "necessary to support a valid and final judgment on the merits [because it was] the basis on which that court dismissed [plaintiff's] claim.").

III. **Full and Fair Opportunity**

Plaintiffs find their best argument here, but fall short. When their first amended complaint was dismissed in Subin I, plaintiffs filed a second amended complaint, recharacterizing their position, as they do now, as "stepping in the shoes of a primary insurer." See Subin II, 2025 WL 3049937, at *2 ("the [second amended complaint] newly alleges that [p]laintiffs suffered damages as 'primary carriers' rather than reinsurers by 'substituting for Accredited,' a 'fronting company' absent from the [first amended complaint].").

In Subin II, the court essentially struck the second amended complaint as exceeding the scope of the court's grant of leave to amend, deemed the first amended complaint the operative complaint, and dismissed it on the merits. See id. at *3 ("Leave to amend was not a license to recast the case."). So, plaintiffs argue, they never had a full and fair opportunity to litigate this "stepping into the shoes of a primary insurer" theory.

Whether a party asserts one of two (or any number of) legal theories in a prior case is irrelevant when the facts underlying the theories are the same. See Karamoko v. N.Y.C. Hous. Auth., 170 F. Supp. 2d 372, 378 (S.D.N.Y. 2001) (For "collateral estoppel . . . like *res judicata*, it is the underlying factual issue – not the legal theory – that determines whether a subsequent claim is barred."); Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative").

The underlying factual issue in this case and in Subin I are the same: Whether a plaintiff-reinsurer's damages, connected to allegedly fraudulent insurance claims, satisfies RICO's direct-

7

relationship requirement when the plaintiff-reinsurer did not issue the insurance claims and was not unconditionally responsible for the claims.

Plaintiffs litigated that issue extensively before and lost. See Subin I, 2025 WL 1713109, at *8. None of the facts surrounding "[p]laintiffs' commercial positions vis-à-vis [d]efendants" are any different now. See id. In other words, plaintiffs had a full and fair opportunity to put forth their "stepping into the shoes of a primary insurer" legal theory in Subin I, and their decision to not do so has a preclusive effect here.

Accordingly, plaintiffs are estopped from relitigating this issue, and the Court therefore dismisses the RICO claims with prejudice. See 63rd St. Realty II LLC v. Phila. Indem. Ins. Co., No. 22-cv-0973, 2024 WL 3966097, at *1 (E.D.N.Y. Aug. 28, 2024) ("Because the plaintiff's claims are dismissed based on collateral estoppel, the[y are] dismissed . . . with prejudice.").

Having no actionable federal claims remaining, the Court "concludes that retaining jurisdiction over any declaratory judgment claim or state law claims is unwarranted." See Sky Med. Supply Inc. v. SCS Support Claims Servs., 17 F. Supp. 3d 207, 236 (E.D.N.Y. 2014); First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) (Affirming district court's declination to exercise supplemental jurisdiction after RICO claims were dismissed).

## CONCLUSION

Defendants' joint motion to dismiss is granted. Plaintiffs' federal claims are dismissed with prejudice, and their state law claims are dismissed without prejudice.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
      February 18, 2026